UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOES 1, 2 and 3, individually and on
behalf of all others similarly situated,

      Plaintiffs,                    Case No.  17-cv-

-vs-

THE COLISEUM, INC., d.b.a. The Coliseum, a
Michigan corporation; ABCDE OPERATING, LLC,
d.b.a. The Penthouse Club, a Michigan Limited
Liability Company and ALAN MARKOVITZ, an individual,

      Jointly and severally,

      Defendants.

_____/

Jennifer L. McManus (P65976)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com

_____/

**CLASS ACTION AND COLLECTIVE ACTION
COMPLAINT AND DEMAND FOR JURY**

Plaintiffs, Jane Does 1 -3, on behalf of themselves and all others similarly

situated, by and through their attorneys, for their Class Action and Collective

Action Complaint and Demand for Jury against Defendants, allege as follows:

## INTRODUCTION

This case is about Defendants adult nightclubs The Coliseum, The Penthouse Club, and their owners Defendants Alan Markovitz (hereinafter "Markovitz"), who (1) intentionally misclassify Plaintiffs and all other members of the putative Class as independent contractors; (2) willfully refuse to pay a minimum wage; (3) unlawfully request, demand, and receive wages from employees; (4) unlawfully demand gratuities and retain a portion of gratuities; and (5) unlawfully deduct employee wages through rents, fines, and penalties for lateness and misconduct.

Plaintiffs, Jane Does 1 -3, on behalf of themselves and others similarly situated are current and former dancers/entertainers and bouncers of Defendants and bring this Collective action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq*. ("FLSA") for failure to pay a minimum wage.  Plaintiffs as Class Representatives, also bring this Rule 23 Class Action on behalf of themselves and all members of the proposed Class against Defendants, pursuant to FRCP 23 of the Federal Rules of Civil Procedure, to remedy violations of Michigan State Law, including but not limited to Michigan Minimum Wage Law, MCL §408.382 *et seq.* ("MWL").

Defendants willfully engaged in a pattern, policy and practice of unlawful conduct for the actions alleged in this Complaint.   Defendants

2

willfully fail to pay Plaintiffs, and all others similarly situated within the Class, minimum wages and other benefits that they are entitled to under applicable federal laws. Additionally, Defendants engage in unlawful tip splitting by requiring dancers and other members of the Class to split and share gratuities given to them by patrons with Defendants and their non-tipped employees, including bouncers, housemothers and Disc Jockeys.  During the past three years, Defendant Markovitz owned and operated Defendant The Coliseum nightclub in Detroit.  Defendant Markovitz currently owns and operates at least three adult entertainment nightclubs in Michigan, each representing to the public that they are part of the Markovitz national brand, and each of the Nightclubs' employment policies and pay practices are uniform, just as it would be at any chain restaurant.

Plaintiffs bring this class action seeking damages, back pay, restitution, liquidated damages, and declaratory relief, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## JURISDICTION & VENUE

1.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

2.     This Court has jurisdiction over this FLSA Collective Action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.     Defendants' annual sales exceed $500,000, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis.   Defendants' employees engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

4.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## THE PARTIES

6.     Plaintiff Jane Doe 1 ("Doe 1") is a resident of the City of Flint, Michigan. At all relevant times, Doe 1 was an employees of Defendant Nightclubs, as defined in 29 U.S.C. §201 *et seq*. and the Michigan Minimum Wage Law, working on various dates as an exotic dancer at The Penthouse Club.  Doe 1 has executed her consent to join form.

4

7.     Plaintiff Jane Doe 2 ("Doe 2") is a resident of the City of Roseville, Macomb County, Michigan. At all relevant times, Doe 2 was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq*. and the Michigan Minimum Wage Law, working as an exotic dancer at the Coliseum and Penthouse on various dates from 2008 until 2016. Doe 2 has executed her consent to join form.

8.     Plaintiff Jane Doe 3 ("Doe 3") is a resident of the City of Southfield, Oakland County, Michigan. At all relevant times, Doe 3 was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq*. and the Michigan Minimum Wage Law, working as an exotic dancer at the Penthouse on various dates from 2008 until December 3, 2013. Doe 3 has executed her consent to join form.

9.     Like other Class members, Does 1 - 3 were: (1) misclassified as independent contractors and as a result, were not paid the wages which they were entitled to as an employee; (2) required to split tip income with Defendants and their non-tipped employees as described more fully below.

10.     Pursuant to the principles set forth in *Doe v Bodwin*, 119 Mich. App. 264, 326 N.W.2d 473 (Mich. App., 1982), Does 1 - 3, file this action under a fictitious name and seek to proceed anonymously because: (a) They fear retaliation by Defendants; (b)They wish *to pr*eserve their right to privacy; (c)

5

there is a significant social stigma attached to their occupation as exotic dancers; (d) there is an inherent amount of risk associated with Does' profession and they fear that disclosure of their legal name and address may subject them to risk of injury by current and former patrons; and (e) in addition to the fear of retaliation by Defendants, they would be hesitant to maintain this action enforcing fundamental employment rights if their names were to be forever associated with Defendants.

11. There is no prejudice to Defendants if Does 1 - 3 file this action under fictitious names and proceed anonymously. In the ordinary course of business, Defendants themselves identify the exotic dancers they employ through stage names.

12. The identities of Does 1 - 3 will be disclosed to Defendants privately in order to allow them to assess and defend their claims. As a result, there are no due process concerns if Does proceed anonymously.

13. Defendant The Coliseum, Inc., is a Michigan corporation, with its principal place of business located in Detroit, Michigan.

14. Defendant ABCDE Operating LLC, d.b.a. The Penthouse Club, is a Michigan corporation, with its principal place of business located in Detroit, Michigan.

6

15.     Defendant Alan Markovitz is an individual residing in Michigan. Upon information and belief, Markovitz currently owns, manages and/or controls Defendant Nightclubs directly or indirectly. Markovitz, together with the Nightclubs, perpetuate the employment policies and practices affecting Class members that are challenged in this lawsuit.

16.     In 2010, Markovitz authored an autobiography where he describes the clubs he owns (or has owned in the past) and admits to the unlawful policies and practices he uses to pay the Class members which are at issue in this lawsuit.[1]

17.     Defendant Nightclubs are managed and controlled by their consultants and employees, including Defendant Markovitz.

18.     Upon information and belief, Markovitz controls, operates, directs, and manages the business affairs of the aforementioned Nightclubs, including those policies related to pay practices and those which impact dancer classification. In his autobiography, Markovitz states that "I am truly a hands on micro manager . . . ." *Topless Prophet*, p. 51.

19.     Defendant Nightclubs, their officers and consultants, including Markovitz were directly involved in the decisions to classify exotic dancers

---

[1] See Alan Markovitz with Thomas Stevens, *Topless Prophet: The True Story of America's Most Successful Gentleman's Club Entrepreneur* (2010).

and other workers working in their clubs as independent contractors, as opposed to employees and to perpetuate and maintain this classification system.

20.     Defendant Nightclubs, their officers and consultants, including Markovitz made the decision to classify dancers and other workers as independent contractors in order to circumvent or evade their statutory obligations under the wage and hour laws and to pad their profits.

21.     Markovitz repeatedly admits to the unlawful payment scheme in his autobiography, admitting that he decided to forego paying employees a wage because it cut too much into his profit margin.

22.     At all relevant times, Markovitz acted as the *de facto* chief corporate officer of Defendant Nightclubs and had operational control over all significant aspects of the business functions, including those related to the employment classification of dancers and other workers; tip splitting and tip splitting requirements applicable to dancers and others working at the nightclubs, fines imposed on dancers, and rents for the VIP Room.

23.     Defendants are joint employers of all Class members and as such are jointly and severally liable for any violations of the wage and hour laws set forth below.

24.     All named Defendants conspired, as well as with any third-parties owners of Defendant Nightclubs, to unlawfully: (1) misclassify dancers and other workers as independent contractors; (2) fail to pay Class members the minimum wage in violation of the FLSA and the MWL; (3) require that Class members split their tips with non-tipped employees such as doormen, bouncers, Disc Jockeys and other employees by paying "tip-outs;" (4) demand improper and unlawful payments from Class members; and (5) adopt and implement employment policies which violate the FLSA and state wage and hour laws.  These unlawful agreements between Defendants and third parties were part of an overall corporate strategy to maximize revenues and profits and to violate Class members' statutory rights.

25.     Defendants knew or should have known that the business model they developed and implemented was unlawful on the basis that applicable laws and despite this, Defendants have continued to willfully engage in the acts described herein, misclassifying Class members and splitting tip income in violation of their legal duties.

26.     At all relevant times, Defendants owned and operated a business engaged in interstate commerce and which utilized goods which moved in interstate commerce  as defined in 29 U.S.C.§203(r) and §203(s).

27.    Defendant Nightclubs constitute an "enterprise" within the meaning of 29 U.S.C. §203(r)(1), because they perform related activities through common control for a common business purpose.

28.    At relevant times, Plaintiffs and the Class were employed by Defendants, enterprises engaged in commerce within the meaning of 29U.S.C. §206(a) and §207(a).

## GENERAL FACTUAL ALLEGATIONS

29.    Plaintiffs, Does 1 - 3, and other similarly situated, have been intentionally misclassified by Defendants as independent contractors.

30.    As a matter of common policy, Defendants misclassify all of their service workers as independent contractors, including but not limited to exotic dancers, shot girls, bouncers, and waitresses.

31.    Plaintiffs and others similarly situated, have not been paid a minimum wage by Defendants.

32.    The FLSA applied to Plaintiffs and the Class at all times in which they worked at Defendant Nightclubs.  No exceptions to the FLSA or state wage and hour laws apply to Plaintiffs and the Class.

33.    Upon information and belief, hundreds of Class members were employed at Defendant Nightclubs during the relevant time period without

being paid a minimum wage and while also being denied the rights and benefits of an employee.

34.    At all relevant times, Defendants, directly or indirectly, exercised significant control over the wages, hours, and working conditions of the Plaintiffs and similarly situated members of the Class.

35.    During the relevant time period, the employment terms, conditions and policies that applied to Plaintiffs were the same as those applied to other Class members who also worked as exotic dancers, shot girls, bouncers, and waitresses at Defendant Nightclubs.

36.    Plaintiffs and members of the Class incurred financial loss, injury and damage as a result of Defendants' business practice of misclassifying them as independent contractors and failing to pay them a minimum wage.

37.    During the relevant time period, as no Class member received proper wages from Defendants, Class members generated their income solely through the monies they received from customers and/or Defendants' other workers/employees when they performed exotic dances or other services.

38.    All monies that Plaintiffs and Class members received from customers in the performance of exotic dances or other services were tips, not wages or service fees.   These tips were given by patrons directly to workers

in the Class and therefore, the tips belong to the Class members, not Defendants.

39.     The tips that workers in the Class are given by patrons in relation to exotic dances or other services they perform are not taken into Defendants' gross receipts, with a portion then paid out to the workers.  Defendants do not issue W-2 forms, 1099 forms or any other documents to Class members indicating any amounts being paid from their gross receipts to Class members as wages.

40.     Plaintiffs and members of the Class are tipped employees as they are engaged in occupations in which they customarily and regularly receive more than $30 a month in tips. No tip credits offsetting any minimum wages due, however, are permitted. Therefore, as Defendants' employees, Class members are entitled to: (i) receive the full minimum wages due, without any tip credit, reduction or other offset, and (ii) to retain the full amount of any tips and monies given to them by customers when they perform exotic dances or other services.

41.     Defendants' misclassification of Plaintiffs and other Class members as independent contractors was specifically designed by Defendants to deny Class members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to Class member

by customers, and to enhance Defendants' profit margin at the expense of the Class.

42.    Defendants' misclassification of Plaintiffs, and those similarly situated, was willful.

43.    Defendants knew or should have known that Plaintiffs and Class members were improperly misclassified as independent contractors.

44.    The determining factor as to whether Plaintiffs and those similarly situated are employees or independent contractors under FLSA is not the workers' election, subjective intent or any contract. *Rutherford FoodCorp. v. McComb*, 331 U.S. 722, 727 (1947). Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment in others.

45.    Any contract which attempts to have workers in the Class waive, limit or abridge their statutory rights to be treated as an employee under FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable and contrary to public policy.

46.     Workers in the Class cannot "elect" to be treated as employees or independent contractors under threat of adverse treatment. Nor can workers in the Class agree to be paid less than the minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently and unconscionably attempt to coerce workers in the Class to waive their statutory rights and elect to be treated as independent contractors.

47.     Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

48.     The totality of circumstances surrounding the employment relationship between Defendants and the Class members establishes economic dependence by the Class on Defendants and employee status. Here, Plaintiffs and all other Class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment with Defendants. The Class members are not engaged in

14

occupations or businesses distinct from that of Defendants. To the contrary, the Class members are the basis for Defendants' business.

49.     Defendants obtain the customers who seek out exotic dance entertainment and Defendants provides the workers who conduct the exotic dance services on behalf of Defendants. Defendants retain pervasive control over the Nightclubs' operation as a whole, and the Class members' duties are an integral part of the operation.

### a.     <u>Degree of Control Exercised by Defendants</u>

50.     Plaintiffs and the other members of the Class do not exert control over any meaningful part of Defendant Nightclubs and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiffs and the other Class members in the nightclubs.

51.     Plaintiffs and Class members' economic status is inextricably linked to conditions over which Defendants have complete control including but not limited to, advertising and promotion, the atmosphere and surroundings at the club, the flow of customers into the club, the customer volume, and the atmosphere at each of the nightclubs.

52.     Defendants employ guidelines and rules dictating the way in which Class members must conduct themselves while working including

setting the hours of operation; method of sign in; length and time of shifts; the show times during which a dancer may perform; minimum VIP Room dance tips; rotation for dancers performing onstage; the format of dancers' performances, including approval of wardrobe.

53.     Defendants control the conduct of dancers while at work, including how dances are to be performed and requiring dancers to be mingle with patrons in a manner which supported Defendants' general business plan.

54.     Defendants require every Class members to pay pre-determined "tip-outs" to non-tipped employees such as bouncers, house moms and Disc Jockeys in amounts ranging from $10 to $20 per night.

55.     Defendants require that Class members schedule work shifts totaling at least one shift three days per week. Defendants further required that at least one shift must take place during the week.  Defendants require that shifts commence at a particular time for a minimum number of hours. Defendants require dancers to report to the house mom or manager at the beginning and end of each shift. If a dancer is late or absent for a shift or late or does not appear timely for her dance onstage, a dancer is subject to a monetary fine which must be paid at the end of the shift.

56.     After signing in for each shift, the dancer is required to complete the entire shift and is not permitted to leave early.  In the event the dancer

leaves a shift early, she is subjected to a hefty monetary fine which must be paid at the beginning of her next shift.

57.    Defendants impose other penalties on dancers related to maintaining her weight and other certain aspects of her physical appearance.

58.    While one element of a dancer's job includes performing private exotic dances in a VIP room, it is the Defendants who establish a minimum tip that dancers must collect from patrons when performing exotic dances in the VIP room. Defendants also impose a charge ranging from $50 to $75 for each dancer to use the VIP room in performance of an exotic dance.

**b.    Facts Establishing No Skill and Initiative of a Person in Business for Themselves**

59.    Plaintiffs, like all Class members, do not exercise the skill and initiative of a person in business for themselves.

60.    Plaintiffs are not required to have any specialized or unusual skills to work and the skills utilized in performing exotic dances are commensurate with those exercised by ordinary people.

61.    Plaintiffs, like all other Class members, do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors as they own no enterprise, nor do they maintain a separate business structures or facilities.

17

62.     Class members have no control over customers, nor do they actively participate in any efforts to increase Defendant Nightclubs' client base, profit, or to improve business in any capacity.

63.     The dancers own initiative is limited to her wardrobe which is itself subject to Defendants' final approval and how provocatively to dance, actions both of which are consistent with the status of an employee opposed to an independent contractor.

64.     Plaintiffs, like other Class members, are not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenue, as an independent contractor in business for herself would have the authority to do.

c.     **Facts Establishing Relative Investment**

65.     Plaintiffs' relative investment is minor when compared to the investment made by Defendant Nightclubs.

66.     Plaintiffs make no financial investment in the facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory, or staffing of Defendant Nightclubs.   All capital investment and risk belongs to Defendants.

67.   The Class members' investment is limited to expenditures on wardrobes and make-up.  Absent Defendants' investment and provision of the club work environment, the Class members would not earn anything.

### d.   Facts Establishing Opportunity for Profit and Loss

68.   Defendants   manage all aspects of the business operation including but not limited to attracting investors, maintaining the premises, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff.   Defendants provide all necessary capital to open and operate the business.

69.   Neither Plaintiffs nor the Class have responsibility for any aspect of Defendants' ongoing business risk.  Defendants, not Plaintiffs, secure all financing, the acquisition and/or lease of the physical facility and equipment, inventory, the payment of wages (for managers, bartenders, doormen, bouncers and waitresses).  Defendants alone are responsible for securing all necessary and appropriate insurance and licenses.   Defendants set the minimum dance tip and other tip amounts that should be collected from patrons and establish the tip splitting policy for dances performed in the VIP rooms.

### e.      Facts Establishing Permanency

70.     Plaintiffs and certain Class members have worked at Defendant Nightclubs for a significant period of time, some for 10 years or more.

### f.      Facts Establishing Plaintiffs are Integral Part of Employer's Business

71.     Plaintiffs are critical to the success of Defendants and their very operation is wholly dependent on the existence of exotic dances being provided by dancers for patrons.

72.     The primary "product" or "good" Defendants are in business to sell consists of dances performed by the exotic dancers in the Class.  Other goods sold by Defendants include drinks and food, which are served to patrons by waitresses, shot girls, and bartenders.

73.     Members of the Class, like Plaintiffs, are economically dependent on Defendants and subject to significant control by Defendants.

74.     Plaintiffs and members of the Class were misclassified as independent contractors and should have been paid minimum wages at all times they worked and additionally should have been afforded all rights and benefits of an employee under federal and state wage and hour laws.

### g.      Facts Establishing Defendants' Acts were Willful

75.    All actions and agreements by Defendants described herein were willful, intentional and not the result of mistake or inadvertence.

76.    Defendants were aware that the FLSA and state wage and hour laws applied to their business at all relevant times and that under the economic realities test applicable to determining employment status under those laws the dancers were misclassified as independent contractors.

77.    Defendants and their affiliated companies, were aware of and/or the subject of previous litigation and enforcement actions relating to wage and hour law violations where the misclassification of exotic dancers as independent contractors was challenged.

78.    Exotic dancers working under conditions similar to those employed at Defendants have been determined to be employees under the wage and hour laws, not independent contractors.

79.    Defendants were aware, and had actual or constructive notice, that applicable law rendered all tips given to class members by patrons when working were the dancer/Class member's sole property, rendering Defendants' tip-share, and tip-out scheme to be unlawful.

80.    Despite this notice of their violations, Defendants intentionally chose to continue to misclassify dancers like Plaintiffs, withhold payment of minimum wages and require dancers to split their tips with Defendants and

21

their employees, to them in effort to enhance their profits. Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

## INJURY AND DAMAGE

81.    Plaintiffs and all Class members suffered injury, were harmed, incurred damage, and financial loss as a result of Defendants' conduct complained of herein.

82.    Plaintiffs and the Class were entitled to minimum wages and to retain all of the table dance tips and other tips they were given by patrons. By failing to pay Plaintiffs and the Class minimum wages and interfering with their right to retain all of the dance tips and other tips they were given by patrons, Defendants injured Plaintiffs and the members of the Class and caused them financial loss, harm, injury and damage.

## COLLECTIVE ACTION ALLEGATIONS

83.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of all similarly situated current and former workers of Defendants who were subject to Defendants' misclassification scheme at any time during the last three years.

84.    Excluded from the class are all of Defendants' executives, administrators, professional employees, and outside sales persons.

85.    A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the workers described as parties to the Complaint are "similarly situated" to the named Plaintiffs.

86.    The workers Plaintiffs seek to represent in this case includes:

*All exotic dancers, waitresses, shot girls, bouncers and any other individuals who worked for Defendants and were misclassified by Defendants as independent contractors at any time in the past three years.*

87.    The putative Class members are similarly situated to the named Plaintiffs because they worked in the same or similar positions, subjected to the same unlawful practice, policy, or plan, and their claims are based upon the same factual and legal theories.

88.    The working relationships between Defendants and every putative Class member are exactly the same and differ only in name, location, exact job duties, and rate of pay.  The key legal issue in the collective action–– whether Defendants' classification policy and practice violates the FLSA–– does not vary substantially from Class member to Class member.

89.    Plaintiffs estimate that the putative Class, including both current and former workers over the relevant period, will include over 700 members. The precise number of Class members should be readily discernible from a review of Defendants' records.

23

## CLASS ACTION ALLEGATIONS

90.    Plaintiffs bring this action as a class action pursuant to Rule of Civil Procedure 23.

91.    All requirements of Federal Rule of Civil Procedure 23 are satisfied to maintain a class action.   The Class to be certified against Defendants is defined as follows:

> *All exotic dancers, waitresses, shot girls,  bouncers and any other individuals who worked for Defendants and were misclassified by Defendants as independent contractors at any time in the past three years.*

92.    The individuals in the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members has not been determined at this time, upon information and belief, Defendants have employed in excess of 700 Class members at Defendants' nightclubs during the relevant time period.   The Class representatives and members of the Michigan Rule 23 Class have been equally affected by Defendants' violations of law.

93.    There are questions of law and fact common to the Class that predominate over any questions affecting individual members, including, but not limited to:

(a) whether Defendants violated the FLSA other applicable wage and hour laws by classifying all exotic dancers or other workers as

24

"independent contractors," as opposed to employees, and not paying them any minimum wages; (b) whether the monies given to dancers or other workers by patrons when they perform dances are gratuities; (c) whether Defendants unlawfully required Class members to split their tips with Defendants and Defendants' employees; (d) whether Defendants unlawfully required Class members to rent VIP rooms; (e) whether Defendants are joint employers of the dancers or other workers in the Class; (f) whether Defendants agreed and conspired to deny class member their rights under the wage and hour laws; (g) whether Defendants failed to keep required employment records; and (h) the amount of damages, restitution, and/or other relief (including all applicable civil penalties, liquidated damages and equitable relief available which Plaintiffs and the Class are entitled to; (i) whether Defendants should be enjoined from such violations in the future.

94.     The Class representatives' claims are typical of those of the Class. Plaintiffs, like other members of the Class, were subjected to Defendants' policies and willful practices of refusing to pay a minimum wage; unlawfully requesting, demanding, and receiving wages; unlawfully demanding and accepting gratuities and retaining a part of gratuities; and  unlawfully deducting employees' wages through fines and penalties for lateness and misconduct.   The Class Representatives and members of the Rule 23 Class have sustained similar injuries as a result of the Defendants' actions.

95.     The Class representatives are adequate representatives of the Class.   The Class representatives have retained counsel experienced in complex wage and hour cases and collective action litigation.

96.    Plaintiffs are members of the Class. Given Plaintiffs' injury and loss, Plaintiffs are committed to the prosecution of this action for the benefit of the Class.

97.    Plaintiffs have no interest that would cause them to act adversely to the best interests of the class action litigation. This action is maintainable as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

98.    This action is maintainable as a class action because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

99.    The Class representatives intend to send notice to all members of the Michigan Rule 23 Class to the extent required by Fed.R.Civ.P.

### COUNT I – VIOLATION OF THE FLSA
### (Failure to Pay Statutory Minimum Wages)
### (Against all Defendants)

100.   Plaintiffs hereby incorporate all of the preceding paragraphs.

101.   This claim arises out of Defendants' willful violation of the Fair labor Standards Acts, 29 U.S.C. Sec. 201, *et seq*., for failure to pay a minimum

wage to Plaintiffs Doe 1-3 and members of the FLSA Collective to which they were entitled.

102.   At relevant times, all Defendants jointly employed Plaintiffs and all collective Plaintiffs within the meaning of the FLSA.

103.   At all relevant times, Defendants have been engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. Sec. 201.

104.   The minimum wage provisions of the FLSA, 29 USC 201 *et seq*., apply to Defendants and protect Plaintiffs and members of the FLSA Collective.

105.   The minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et seq*, apply to Defendants and protect Plaintiffs Doe 1 - 3 and the FLSA Collective.

106.   Plaintiffs Doe 1 - 3, have consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(B).   As this case proceeds, it is likely that other individuals will sign consent forms and join as Plaintiffs.

107.   Pursuant to 29 U.S.C. § 206, Plaintiffs Does 1 - 3, and the FLSA Collective were entitled to be compensated at the rate of $8.90 per hour.

108.   29 U.S.C. § 207(a) provides in pertinent part:

> ... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in

commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

109.   Defendants failed to pay Plaintiffs and members of the FLSA Collective the minimum wages set forth in 29 U.S.C. §206, or any wages whatsoever.

110.   Defendants failed to pay Class members a minimum wage throughout the relevant time period because Defendants intentionally misclassified them as independent contractors.

111.   The amounts paid to Class members and the FLSA Collective, by patrons in relation to private dances or other services performed were tips, not wages. Those tips were not the property of Defendants. The entire amount collected from patrons in relation to table dances performed by exotic dancers or for other services provided was not made part of any Defendants' gross receipts at any point.

112.   As a result, the amounts paid to Class members by patrons in relation to private table dances were tips, not wages or service fees, and no part of those amounts can be used to offset Defendants' obligation to pay Class members' minimum wages due. *See Hart v. Rick's Cabaret, Int'l,* 2013 U.S. Dist Lexis 129130 (S.D.N.Y. Sept. 10, 2013) *e.g., Reich v. ABC/York-Estes Corp.,* 157

28

F.R.D. 668, 680 (N.D.Ill. 1994), rev'd on other grounds, 64 F.3d 316 (7th Cir. 1995); *Reich v. ABC/York-Estes Corp.,* 1997 WL 264379 at *5-7 (N.D.Ill. 1997).

113.  Further, no tip credit applies to reduce or offset any minimum wages due. The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m).

114.  Neither of these conditions was satisfied. Defendants did not inform Class members of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and Plaintiffs did not retain all the tips received except those tips included in a tipping pool among non-tipped employees. 29 U.S.C. § 203(m).

115.  Defendants did not notify any Class members that their tips were being used to reduce the minimum wages otherwise due under FLSA's tip credit provisions and that they were still due the reduced minimum wage for tipped employees because Defendants maintained as a business strategy that Class members were not due a minimum wages due to their classification as independent contractors.

29

116.   Defendants' requirement that Class members split their tips and, pay Defendants a portion of all dance tips and to pay a "tip-out" to other employees who do not customarily receive tips, such as bouncers, house moms and disc jockeys was not part of a legally permissible or valid tip pooling or tip sharing arrangement.

117.   Based on the foregoing, Plaintiffs are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§206 and 207 for all periods in which Plaintiffs worked at Defendant Nightclubs, along with all applicable penalties, liquidated damages, and other relief.

118. Defendants' conduct in misclassifying Class members as independent contractors was intentional and willful and done to avoid paying minimum wages and the other benefits that Plaintiffs were legally entitled to receive.

119. Plaintiffs Does 1 - 3, on behalf of themselves and the FLSA collective, seek damages in the amount of their respective unpaid wages, liquidated damages  as provided by 29 U.S.C. §216(b) interest, and such other legal and equitable relief as the Court deems proper.

120. Plaintiffs Doe 1 - 3, on behalf of themselves and the FLSA Collective seek recovery of attorney fees and costs incurred in enforcing their rights pursuant to 29 U.S.C. §216(b).

121.   12 U.S.C. §211(c) provides in pertinent part:

(c)   Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

122.   29 C.F.R.§516.2 and 29 C.F.R. §825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

123.   To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and fail to furnish Plaintiffs and FLSA Collective comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiffs damage.

124.   When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 66 S.Ct. 1187 (1946) is controlling. That rule states:

31

...where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

125.   The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." *Id.*

126.   Based on the foregoing, Plaintiffs seek unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate,

attorneys' fees and costs, and all other costs, penalties and other relief allowed by law.

**COUNT II – VIOLATION OF THE MICHIGAN MINIMUM WAGE LAW,**
**M.C.L. 408.382, *et seq*.**
**(Failure to Pay Statutory Minimum Wages and Unlawful Tip Splitting)**
**(Against All Defendants On Behalf of the Class)**

127.    Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein.

128.    At relevant times, in addition to the FLSA, Plaintiffs and all members of the Class were employees of the Defendants within the meaning of applicable state wage and hour laws mandating the payment of minimum wages including the Michigan Minimum Wage Law, MCL §408.382 *et seq.* ("MWL")

129.    At all relevant times, all Defendants were the employers of Plaintiffs and all members of the Class within the meaning of the applicable state wage and hour laws.

130.    Defendants were joint employers of Plaintiffs and the Class, along with any other nominal owners of The Nightclubs.

131.    Defendants failed to pay Plaintiffs and the Class required minimum wages for the time they spent working at Defendants Nightclubs.

132. Defendants paid no Class members any wages at any time. Instead, Defendants unlawfully charged Class members money to work by taking a portion of their tips, charging "rent," or collecting fines and penalties, among other things.

133. Defendants were required to pay all employees minimum wages under the state wage and hour laws, in addition to the FLSA.

134. In applicable circumstances, employers like Defendants must pay premium or overtime rates when employees work beyond specific daily or weekly limits.

135. Any amount paid directly by a patron to a Class member is a gratuity or tip belonging solely and entirely to her. All amounts paid to Class members by customers in relation to dances, goods sold and other work performed while working at Defendant Nightclubs were tips and gratuities, not wages or service fees; belong solely to the Class member; and cannot be used to offset Defendants' obligation to pay them minimum wages.

136. Defendants' conduct requiring Class members to split their tips and pay "rent" constituted unlawful tip splitting, which injured class members.

137. Defendants failed to pay Plaintiffs, or any other member of the Class, any minimum hourly wages for their labor during the relevant time

period. Rather, Defendants systematically misclassified all dancers in the Class as independent contractors, as opposed to employees, so as to attempt to avoid paying Class members any wages and other benefits due employees. All unpaid wages must now be paid to the Class, along with other relief appropriate under the circumstances.

138.   Pursuant to Michigan Minimum Wage Law MCL 408.382, *et seq*., Defendants were required to pay the Plaintiffs and the Class a minimum wage of $2.65 per hour for all hours worked in the past three years.

139.   Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage to the Class Representatives and the members of the Class.

140.   By failing to pay a minimum wage to the Class Representatives and members of the Class, Defendants violated, and continue to violate, their statutory rights under MWL.

141.   The forgoing conduct, as alleged, constitutes a willful violation of the MWL.

142.   Class Representatives, on behalf of themselves and the members of the Class, seek damages in the amount of their respective unpaid wages, reasonable attorney's fees and costs of the action, interest, and such other legal and equitable relief as the Court deems proper.

35

143.  To the extent Defendants failed to maintain complete records regarding each Class member's employment, including hours worked and any deductions from wages, Defendants violated applicable state wage and hour laws.

144.  By reason of the foregoing, Defendants violated state wage and hour laws, and any result, members of the Class were injured, damaged, harmed and incurred financial loss.

145.  None of the provisions of the state wage and hour laws can be contravened, set aside abrogated, or waived by Class members.

146.  As a result of the foregoing conduct, Plaintiffs seeks on behalf of themselves and all members of the Class unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; liquidated damages; penalties; injunctive relief; interest calculated at the highest legal rate; and all other relief allowed by law, including applicable attorneys' fees and costs.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, on behalf of the Class, prays for an order for relief as follows:

a.   That all Defendants be found jointly and severally liable to

Plaintiffs and the

Class;

b.   For a declaration that Defendants violated the rights of Plaintiffs

and the Class under applicable law;

c.   For nominal damages;

d.   For compensatory and actual damages;

e.   For restitution of all monies due Plaintiffs and the Class and

disgorged profits

from the unlawful business practices of Defendants;

f.   For all back pay, unpaid wages, and a refund of all tips, "rent", tip-

outs, fines and other amounts paid by Plaintiffs and members of

the Class to Defendants and their employees;

g.   For all statutory damages, liquidated damages, civil penalties,

and/or other relief allowed by federal and state wage and hour

statutes and regulations and/or other laws;

h.   For accrued interest;

i.   For an order certifying Count 1 as a collective action under 28

U.S.C. 216(b), and Count II as a class action under Fed.R.Civ.P. 23;

j.      For costs of suit and expenses incurred herein, including reasonable attorneys' fees allowed under any relevant provision of law or equity, including the FLSA; and

i.      For any and all other relief that the Court may deem just, proper and equitable in the circumstances.

## JURY DEMAND

Plaintiffs reserve their right to and hereby request a trial by jury.

Respectfully submitted,

By: /s/ Jennifer L. McManus
Jennifer L. McManus (P65976)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiffs
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com

Dated:  July 6, 2017