UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOES, 1, 2 and 3, individually and
on behalf of all others similarly situated,

        Plaintiffs,

v                                  Case No. 17-12212
                                 Honorable Linda V. Parker

THE COLISEUM BAR & GRILL, INC.;     Mag. Judge Elizabeth Stafford
ABCD OPERATING, LLC, d/b/a THE
PENTHOUSE CLUB; M & M ZIN ENTERPRISES,
INC.; JOHNI SEEMA and ALAN MARKOVITZ,

        Defendants.
_____

FAGAN McMANUS, P.C.
By:  Jennifer L. McManus (P65976)
Attorneys for Plaintiffs
25892 Woodward Avenue
Royal Oak, Michigan 48067
(248) 542-6300
jmcmanus@faganlawpc.com

PITT McGEHEE PALMER & RIVERS, P.C.
By:  Megan Bonanni (P52079)
Attorneys for Plaintiffs
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9200

Albert B. Addis (P31084)
Paul B. Addis (P61691)
Attorneys for Defendants, The Coliseum
Bar & Grill, Inc. and Johni Seems (a/k/a
Johni Semma)
10 South Main Street, Suite 400
Mt. Clemens, Michigan 48043
(586) 221-4100

SCHWARTZ LAW FIRM, P.C.
By:  Jay A. Schwartz (P45268)
Attorneys for ABDCE Operating LLC, d/b/a
The Penthouse Club, M & M Zin Enterprises,
Inc. and Alan Markovitz
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
jschwartz@schwartzlawfirmpc.com

ANDREW BEAN PC
By:  Andrew Bean (P42941)
Attorneys for ABDCE Operating LLC, d/b/a
The Penthouse Club, M & M Zin Enterprises,
Inc. and Alan Markovitz
12001 Levan Road
Livonia, Michigan 48150
(248) 539-9430
andrew@ajbeanlaw.com

_____

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR CONDITIONAL CLASS CERTIFICATION AND
COURT-SUPERVISED NOTICE TO PUTATIVE CLASS
MEMBERS PURSUANT TO 29 U.S.C. §216(B)**

Defendants ABCDE Operating LLC, M&M Zin Enterprises Inc., and Alan

Markovitz (collectively, the "Defendants"), in response to Plaintiffs' Motion for

Conditional Class Certification and Court-Supervised Notice to Putative Class

Members Pursuant to 29 U.S.C. 216(B), ("Motion for Conditional Certification")

respectively move for entry of an order to:

1)   Stay Plaintiffs' Motion for Conditional Class Certification until after
     the Court has ruled on Defendants' Motion to Dismiss Plaintiffs'
     Claims Based Upon the Parties' Mandatory Arbitration Agreement
     (hereinafter "Motion to Dismiss") (Doc #23)[1]

2)   Deny Plaintiffs' Motion for Class Certification in its entirety;

3)   In the alternative, reserve ruling on Plaintiffs' Motion for Conditional
     Certification until Defendants can conduct limited discovery on
     whether putative class members are similarly situated;

4)   Exercise its discretion to narrow the class and modify Plaintiffs'
     Notice.

This Response is supported by the pleadings and argument of Counsel. The

relief Defendants seek is appropriate for the reasons discussed in the attached

---

[1] See also Doc #47 Defendants' Motion to Stay These Proceedings and Compel Arbitration,
and/or to Stay the Hearing on Plaintiffs' Request for Conditional Certification Until After the
Court Has Ruled on Defendants' Motion to Dismiss Plaintiffs' Claims Based upon the Parties'
Mandatory Arbitration Agreement. (hereinafter "Motion to Stay").

1

Brief.

SCHWARTZ LAW FIRM, P.C.


By: /s/ Jay A. Schwartz
     Attorney for Defendants, ABCDE
     Operating LLC d/b/a The Penthouse
     Club, M & M Zin Enterprises, Inc. and
     Alan Markovitz
     37887 West Twelve Mile Road, Suite A
     Farmington Hills, Michigan 48331
     (248) 553-9400
     jschwartz@schwartzlawfirmpc.com
Dated:   February 20, 2018     (P45268)

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOES, 1, 2 and 3, individually and
on behalf of all others similarly situated,

      Plaintiffs,

v                             Case No. 17-12212
                                   Honorable Linda V. Parker
THE COLISEUM BAR & GRILL, INC.;    Mag. Judge Elizabeth Stafford
ABCDE OPERATING, LLC d/b/a THE
PENTHOUSE CLUB; M & M ZIN
ENTERPRISES, INC.; JOHNI SEEMA; and
ALAN MARKOVITZ,

      Defendants.
_____

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR CONDITIONAL CLASS
CERTIFICATION AND COURT-SUPERVISED NOTICE TO
<u>PUTATIVE CLASS MEMBERS PURSUANT TO 29 U.S.C. §216(B)</u>**

# TABLE OF CONTENTS

**Page(s)**

Index of Authorities ............................................................................. ii - iv

Question Presented ............................................................................. v

I.   Introduction ................................................................................. 1

II.  Brief Statement of Facts ................................................................ 3

III. Law & Argument .......................................................................... 4

    A.   Defendants' Motion to Dismiss Should be Given
        Priority Over Plaintiffs' Motion for Conditional Certification .............. 4

    B.   Plaintiffs Have Not Yet Met Their Statutory Burden of
        Demonstrating that Collective Acton Certification is
        Appropriate at this Time ........................................................ 7

    C.   The Putative Class Members are Not Similarly Situated to
        Plaintiffs ........................................................................... 8

    D.   The Court is Well Within its Discretion to Order Limited
        Discovery on the Issue of Whether the Putative Class
        Members are Similarly Situated .............................................. 15

    E.   The Putative Class is Too Broad and Should be Narrowed .............. 16

IV.  Conclusion ................................................................................. 20

i

# INDEX OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Brown v. AK Lawncare, In.,* No. 14-14158, 2015 U.S. Dist
LEXIS 139399 (E.D. Mich. Oct. 14, 2015) ........................................... 14

*Castillo v. Morales, Inc*., 302 F.R.D. 480 (2014) ................................. 15

*Clark v. Royal Transportation, Co*., No. 15-13243, 2016 WL 2983900
(E.D. Mich. May 24, 2016) .............................................................. 14

*Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544 (6th Cir. 2006) .................... 7,15,16

*Compagnone v. Dl Pool Serv., LLC* No. 2:15-cv-647-Ft M-99MRM,
2016 WL 6575087 (M.D. Fla, Nov. 7, 2016) ........................................ 19

*D'Antuono v. Serv. Rd. Corp*., 789 F. Supp. 2d 308 (D. Conn. 2011) ............. 18,19

*D'Antuono v. C & G of Groton, Inc.,* No. 3:11CV33 MRK,
2011 WL 5878045 (D. Conn. Nov. 23, 2011) ................................. 18,19

*Demorris v. Rite Way Fence, Inc.,* No. 14-cv-13777, 2015
WL 12990483 (E.D. Mich. Mar. 30, 2015) ........................................ 11

*Fisher v. Michigan Bell Tel. Co*., 665 F.Supp.2d 819 (E.D. Mich 2009) .............. 7

*Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941 (W.D. Ark. 2003) ........... 8

*Gaffers v. Kelly Services, Inc*., 203 F. Supp. 3d 829 (E.D. Mich.  2016) ............ 5,6

*Grayson v. K. Mart Corp*., 79 F. 3d 1090 (11th Cir. 1996) ..................... 10

*Gunn v. NPC Int'l, Inc.,* 625 Fed.Appx. 261 (6th Cir. 2015) .................... 6

*Jane Doe #1 v. Déjà vu Consulting, Inc., et. al.* l, No. 3:17-CV-0040,
2017 WL 3837730 (M.D. Tenn. Sept. 1, 2017) ....................................... 4

*Jesiek v. Fire Pros, Inc*., 275 F.R.D. 242 (W.D. Mich. 2011) ................... 9

**Cases** **(Continued)**                                                          <u>Page(s)</u>

*Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863 (S.D. Ohio 2011) ................ 9

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)  ................................. 9

*Olivio v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545 (E.D. Mich 2004) ..... 14,15,16

*O'Neal v. Emery Federal Credit Union*, Case No. 1:13 CV 22,
2013 U.S. Dist. LEXIS 110383 (S.D. Ohio, August 6, 2013) ................................. 8

*Opalinski v. Robert Half Int'l*, Inc., No. 10-cv-2069, 2011 WL 4729009
(D.N.J. Oct. 6, 2011) ................................................................................. 6

*Pritchard v. Dent Wizard Int'l*, 201 F.R.D. 591 (S.D. Ohio 2002) ........................ 7

*Redmond v. NPC Int'l Inc.*, No. 1:13-cv-01037-STA-egb (W.D. Tenn.
Aug. 22, 2016) ........................................................................................ 6

*Shipes v. Amurcon Corporation,* (E.D. Mich. Mar. 23, 2012) ................... 13,14,16

*Swinney v. Amcomm Telecomm., Inc.*, No. 12-12935, 2013 U.S. Dist.
LEXIS 119749, 2013 WL 4507919 at *10 (E.D. Michigan. Aug. 23, 2013) ....... 16

*Totte v. Quick Lane Oil & Lube, Inc.,* No. 16-12850, 2017 WL 1164715
(E.D. Mich. Mar. 29, 2017) ................................................................... 14

*Turlington v. Atlanta Gas Light Co.*, 135 F. 3d 1428 (11th Cir. 1998) ................ 19

*Wade v. Werner Trucking Co.*, 10-00270, 2012 WL 5378311 (S.D. Ohio
Oct 31, 2012) ...................................................................................... 9,16

*Williams v. K&K Assisted Living LLC*, No. 15-CV-11565, 2016
WL 319596 (E.D. Mich. Jan 27, 2016) ................................................... 14

**<u>Rules</u>**

Fed.R.Civ.P. 23 ......................................................................................7

**<u>Statutes</u>**                                                          **Page(s)**

29 U.S.C. § 216(b) ................................................................ 7,16

# QUESTION PRESENTED

1.  Should this Court Stay Plaintiffs' Motion for Conditional Class Certification until after the Court has ruled on Defendants' Motion to Dismiss?

    Plaintiffs' Answer:     No
    Defendants' Answer:    Yes

2.  Should Plaintiffs' Motion be DENIED considering Plaintiffs' failure to submit sufficient evidence that putative class members are similarly situated?

    Plaintiffs' Answer:     No
    Defendants' Answer:    Yes

3.  If the Court does not deny Plaintiffs' motion outright, should this Court exercise its discretion to order limited discovery on the issue of whether putative Plaintiffs are similarly situated?

    Plaintiffs' Answer:     No
    Defendants' Answer:    Yes

4.  If this Court does not deny Plaintiffs' motion outright, should this Court exercise its discretion to narrow the overly broad class proposed by Plaintiffs and modify Plaintiffs' proposed notice?

    Plaintiffs' Answer:     No
    Defendants' Answer:    Yes

# I.     INTRODUCTION

Defendants ABCDE Operating LLC, M&M Zin Enterprises Inc., and Alan Markovitz (collectively, the "Defendants") are in the business of running upscale "gentlemen's clubs." Defendants have endeavored to ensure that these businesses are, "and remain—a well-run, legitimate business that contributes a lot of tax revenue to whatever municipality [it] operates in."[2]  This includes observing all federal and state wage and hour laws. Defendants deny having any policy or practice of misclassifying individuals who perform at their establishments as independent contractors to evade FLSA or any other law. The truth is, many women choose to perform at Defendants' prestigious establishments because they know they could earn more money in one evening of dancing then they could make in a week being employed in a different field.[3]

---

[2] ALAN MARKOVITZ AND THOMAS STEVENS, TOPLESS PROPHET: THE TRUE STORY OF AMERICA'S MOST SUCCESSFUL GENTLEMAN'S CLUB ENTREPRENEUR 76 (2010). Plaintiffs deliberately fail to provide the context for the passage cited in Footnote 1 of their brief where the author discusses the use of portable stages. Creating a portable stage provided dancers with more mobility for performing in different areas of the club. These stages complied with local city ordinances. The portable stage idea was no different than any other business which finds a way to comply with zoning and other ordinances while maintaining their business objectives (or a taxpayer seeking to find legitimate tax deductions on their federal returns). It does not evince a "purposeful evasion of the laws."

[3] One dancer notes that she drives a BMW 5-series, has a "couple" of Prada bags, takes vacations in places like Cabo and South Beach, and has started a financial portfolio. SEE MARKOVITZ, 224 (Other Voices: Kaci, Dancer). "June" is paying her way through college. *Id*. at 218, while "Celeste" has purchased her own home and two residential income properties. *Id* at 219. Counsel fails to tell the entire story here, attempting to paint the plaintiffs as victims who can barely eke out a living, rather than also informing this court of all the dancers who have been wildly successful in their careers and who probably earn more money than the attorneys on this case!

Moreover, Plaintiffs signed clear, unambiguous Arbitration Agreements requiring them to arbitrate any employment disputes. These Agreements contain class waivers. Putative plaintiffs[4] also likely signed Arbitration Agreements with these same waivers, as Defendants have consistently required dancers to sign such agreements as a condition precedent to perform at any of their Clubs. See Exhibit 1 of Defendants' Motion to Dismiss, Doc # 23.  It is inappropriate for this Court to even conditionally certify a collective action until it determines whether Plaintiffs' arbitration agreements are valid (and if so compelling arbitration) and until the Court has sufficient evidence before it to determine whether putative plaintiffs have valid arbitration agreements. If plaintiffs and putative plaintiffs have signed valid arbitration agreements, the Court must compel arbitration, as Defendants have requested. At the very least, the Court should grant discovery on this issue, as well as on the issue of whether the plaintiffs and putative plaintiffs are similarly situated.

Lastly, Plaintiffs' proposed class is overly broad because it includes classes of workers for whom Plaintiffs have failed to provide declarations and who clearly are not similarly situated to the plaintiffs. If the court is inclined to conditionally

---

[4] Only Does 4 and 5 (Doc #38-5 and Doc #38-6) allege that they "don't recall" signing an Arbitration Agreement, the other putative plaintiffs purposefully omit any mention of the Agreements.  Doe 9 (Doc #38-10) is a DJ and not similarly situated to the dancers.

2

certify the class, it should also exercise its discretion to narrow the class to exotic dancers only.

## II.    BRIEF STATEMENT OF FACTS

Defendants are in the business of running upscale adult entertainment establishments. Defendants deny intentionally misclassifying any performer as an independent contractor or engaging in any other practice that allegedly violates the FLSA or any other wage and hour law. Plaintiffs allege that they performed services as exotic dancers at these establishments – either the Penthouse Club and/or the Coliseum (the "Clubs"). Plaintiffs conveniently fail to inform this court, however, that they were required to -- and did -- execute straightforward, clearly worded Arbitration Agreements ("Agreements").  Defendants required all exotic dancers to sign these Agreements as a precondition to perform at their Clubs. According to the Affidavit of Ed Muczynski, who has been employed as a manager of the clubs for more than 25 years, Defendants also posted unambiguous Arbitration Notices in conspicuous areas at both Clubs. (See Exhibit 1, Defendants' Motion to Dismiss, Doc # 23).

It is largely undisputed that the Plaintiffs signed Agreements that contained a class action waiver. It is very likely that putative plaintiffs did as well.[5]  If this

---

[5] Neither Plaintiffs nor putative plaintiffs have contradicted Ed Muczynski's sworn statement that Defendants have required these Agreements since 2014.

court finds that Plaintiffs' Agreements are enforceable, there will be no class action for other exotic dancers to "opt into" making certification inappropriate.

## III.   LAW & ARGUMENT

A.    <u>Defendants' Motion to Dismiss Should be Given Priority Over Plaintiffs' Motion for Conditional Certification</u>

Defendants filed their Motion to Dismiss on September 18, 2017 (Doc #23). Plaintiffs filed their Motion for Certification on January 16, 2018 – *four months* after Defendants filed their dispositive motion. Defendants have also filed a motion to stay the hearing on the Motion for Conditional Certification (Doc #47) until the court hears Defendants' Motion to Dismiss.  This motion should be granted.[6]

   1.    *Federal courts, including the Eastern District of Michigan, generally consider a motion to compel arbitration before considering whether conditional certification is appropriate*

When a motion for conditional certification and a motion to compel arbitration are both pending before a federal district court, many courts have considered the motion to compel arbitration first.[7] This is what occurred in *Jane Doe #1 v. Déjà vu Consulting, Inc., et. al.* l, No. 3:17-CV-0040, 2017 WL 3837730 (M.D. Tenn. Sept. 1, 2017)(See <u>Exhibit A, Doc #47</u>), a case almost identical to the one at bar. Defendants thoroughly discuss that case in their Motion to Stay and those arguments will not be repeated here.

---

[6] Defendants rely upon the brief filed with this court in support of their Motion to Stay.

[7] Defendants' Motion to Dismiss based on the arbitration agreements requests that the court dismiss and compel arbitration. Thus, it is essentially a motion to compel arbitration.

That is not the only case on point, however. This district has given priority to deciding a defendant's motion to stay and compel arbitration before considering whether plaintiff's request for conditional certification was appropriate. *See e.g. Gaffers v. Kelly Services, Inc.*, 203 F. Supp. 3d 829 (E.D. Mich. 2016).

In *Gaffers*, plaintiff was employed by Kelly Services as a home-based call center agent and claimed that Kelly Services had not paid him for all time worked. *Gaffers* at 832. He sought to certify his FLSA violation suit as a collective action, naming 20 other potential opt-in plaintiffs, all of whom were also employed as home-based call center agents. *Id.*[8] The procedural history of *Gaffers*, not mentioned by Plaintiffs, is germane to the question of priority:

> Kelly filed a motion to dismiss on February 29, 2016, which the Court denied on June 7, 2016. Gaffers filed his pre-discovery motion for conditional certification of a collective action early in the case, on January 29, 2016. The parties filed a flurry of other preliminary motions, and the Court summarily addressed those motions after a hearing on April 6, 2016. *Kelly filed its renewed motion to compel arbitration and partially to dismiss the complaint on June 6, 2016. Those two motions remain pending and are addressed in this order.*

> *Gaffers* at 835 (emphasis added).

Contrary to Plaintiffs' representations in their Motion for Conditional Certification, the procedural posture of this case makes it clear that Judge Lawson was not presented with the Motion to Certify Collective Action and the Motion to

---

[8] This salient fact is distinguishable from the facts in this case, wherein Plaintiffs seek to add individuals who do not share the same job duties or job title.

Compel Arbitration *at the same time*. The court received the Motion for Certification first and then it received Defendants' *renewed* motion to compel arbitration. Significantly, the Court begins its legal analysis with "II. Motion to Stay and Compel Arbitration." *Id*. The court *then* addresses "III. Plaintiffs' Motion to Certify Collective Action."  *Id*. at 843. Other federal district courts have also followed this path. *See Redmond v. NPC Int'l Inc.*, No. 1:13-cv-01037-STA-egb (W.D. Tenn. Aug. 22, 2016) (where the parties filed motions to compel arbitration and for conditional certification, addressing the motion to compel arbitration first), *aff'd in part sub nom Gunn v. NPC Int'l, Inc.*, 625 Fed.Appx. 261 (6th Cir. 2015); *Opalinski v. Robert Half Int'l*, Inc., No. 10-cv-2069, 2011 WL 4729009 (D.N.J. Oct. 6, 2011) (denying motion to defer ruling on motion to compel arbitration and to rule first on the motion for conditional certification and, instead, granting the motion to compel arbitration and denying as moot the motion for conditional certification), *rev'd on other grounds*, 761 F.3d 326 (3d Cir. 2014). (**<u>Exhibit A</u>**).

Moreover, the cases cited by Plaintiff are inapposite, and therefore unpersuasive, as they all involve situations in which defendants had not filed a motion to compel and/or dismiss, or where defendant's had filed a motion to compel prior to plaintiff filing the motion for certification.[9]  It is also noteworthy

---

[9] The *Racey* case cited by Plaintiffs in footnote 11 of their brief makes it clear that the holding cited by plaintiffs is a precedent in its own district. That holding does not apply in THIS district. *See Gaffers, supra*.

that Defendants filed their Motion to Dismiss *before* Plaintiffs filed their Motion

for Conditional Certification.  This Court has ample precedent for giving priority to

Defendant's Motion to Dismiss.

B.    Plaintiffs Have Not Yet Met Their Statutory Burden of Demonstrating that
      Collective Action Certification is Appropriate at this Time

Plaintiffs seek conditional class certification and judicial notice of a

collective action under the Fair Labor Standards Act (FLSA). The relevant

statutory provision establishes two requirements for a representative action: 1) the

plaintiffs must be "similarly situated," and 2) all plaintiffs must signal in writing

their affirmative consent to participate in the action. 29 U.S.C. § 216(b). Similarly

situated persons are permitted to "opt into" the suit. This type of suit is

distinguished from the opt-out approach utilized in class actions under

Fed.R.Civ.P. 23. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir.

2006)(internal citations omitted).

Before authorizing notice to potential opt-in plaintiffs, a court must first

consider whether plaintiffs have shown that the individuals to be notified are, in

fact, "similarly situated." *Pritchard v. Dent Wizard Int'l*, 201 F.R.D. 591, 594

(S.D. Ohio 2002).  Plaintiffs bear the burden of making this showing. *Fisher v.

Michigan Bell Tel. Co.*, 665 F.Supp.2d 819, 825 (E.D. Mich 2009)(internal

citations omitted). While the evidentiary threshold for demonstrating the existence

of similarly situated employees is not high, "a plaintiff must demonstrate a factual

7

nexus – that is, something more than mere allegations – to warrant conditional certification and the delivery of notice to potential class members." *O'Neal v. Emery Federal Credit Union*, Case No. 1:13 CV 22, 2013 U.S. Dist. LEXIS 110383 (S.D. Ohio, August 6, 2013) (**Exhibit A**). Motions for class certification will fail at the first stage of this two-step inquiry where, as here, the facts and circumstances of the potential plaintiffs' work experiences differ. *Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

C.    The Putative Class Members are Not Similarly Situated to Plaintiffs

Plaintiffs' putative class members include shot girls, bouncers, and "any other employee." It is impossible to identify the job duties or classifications of ethereal beings such as "any other employee." And while Plaintiffs have identified job titles for two potential classes, the work experience of the individuals who would comprise these classes is vastly different than the work experience of an exotic dancer. Plaintiffs' failure to submit an affidavit from any shot girl or a bouncer is fatal to their motion; They have failed to identify any facts that the job duties, work location, or work hours of these purported class members are even remotely like that of the plaintiffs, who are all exotic dancers. The allegations set forth in the affidavits submitted specifically relate to the alleged job duties, work hours, and work environment experienced by *dancers* who alleged they were *dancing* at the establishments owned by Defendants.

8

For example:

- Use of VIP rooms for private dances
- Times and alleged requirements for performing on stage
- Dancer turnover rate
- Alleged penalties assessed "dancers"

See Doc #38-2 through Doc #38-9

These affidavits fail to identify any facts that would inform this court about the work situation of the shot girls and bouncers (or "other employees" not even identified) other than a generalized statement of "personal knowledge" that these "other employees" were subject to "the same policies and practices." This vague statement does not suffice, and the mere fact that the statement is contained in an affidavit does not save it. *See e.g. Jesiek v. Fire Pros, Inc*., 275 F.R.D. 242, 245 (W.D. Mich. 2011)(when a court has afforded limited discovery to a plaintiff, he may not rest on unsupported allegations in his complaint)(internal citations omitted); *see also Myers v. Hertz Corp*., 624 F.3d 537, 555 (2d Cir. 2010) ("The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions …'); *And see Wade v. Werner Trucking Co*., 10-00270,2012 WL 5378311 (S.D. Ohio Oct 31, 2012) (discussing modest-plus standard when some conditional class discovery has taken place).[10] (**Exhibit A**).

---

[10] The *Wade* case also references *Lewis v Huntington Nat. Bank*, 789 F. Supp. 2d 863 (S.D. Ohio 2011) wherein the court stated that in making the determination of "similarly situated" individuals, a court should consider, *inter alia*, whether "potential plaintiffs were identified" and "whether affidavits of potential plaintiffs were submitted." In this case Plaintiffs have not

*1.    Factors the court should consider when deciding whether putative plaintiffs are similarly situated*

While the Sixth Circuit has not adopted any particular test for determining "similarly situated" plaintiffs, the Eleventh Circuit has provided a non-exclusive outline of considerations which are instructive: (1) whether the plaintiffs hold the same job title; (2) whether they worked in the same geographic locations; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Grayson v. K. Mart Corp*., 79 F. 3d 1090, 1097-99 (11th Cir. 1996).

The affidavits submitted by Plaintiffs fail to provide a single factual allegation that a shot girl or bouncer worked in the same geographic location, worked during the same time periods as the dancers (which vary wildly even among the dancers), worked the same or similar shifts as the exotic dancers, were subject to the same decision makers, or even the same "dancer" rules.

Shot girls and bouncers clearly do not hold the same job title as the dancers and clearly do not perform the same function at the Clubs. It is unclear from

---

submitted affidavits of shot girls or bouncers, despite specifically naming these job classes as putative plaintiffs.

10

Plaintiffs' affidavits where these putative plaintiffs worked, during what timeframe they worked, what shifts they worked, or what alleged "policies" applied to them (for example, it is doubtful that shot girls or bouncers were required to pay a fine to "skip a dance" or to use a VIP room for private dances). The affidavits don't identify the club managers, or any individual to whom the plaintiffs or putative plaintiffs reported, or how the alleged policies were applied to these other job classifications. Indeed, it is impossible to even ascertain whether the same alleged policies were operative and applicable to the shot girls or bouncers (or DJ's or "any other employee") at any given time because no time is specified.   Plaintiffs have failed to meet their "modest" burden of demonstrating that they, as dancers, are similarly situated to the putative plaintiffs.

2.    *Demorris and Shipes*

This case is similar to *Demorris v. Rite Way Fence, Inc., et. al*, No. 14-cv-13777, 2015 WL 12990483 (E.D. Mich. Mar. 30, 2015) wherein the Honorable Judge Gershwin Drain denied plaintiff's motion for conditional class certification. (**Exhibit A**).   In *Demorris*, the plaintiff worked for a company that was in the business of installing fences and guardrails along roads and freeways. *Demorris* at *1. Plaintiff alleged that Defendants allocated his time between its two companies to minimize or avoid paying him overtime, in violation of the FLSA. *Id.*  The court found that the plaintiff had "neither identified nor provided affidavits of potential

11

plaintiffs." *Id*. at * 3-4. Specifically, the court found that plaintiff's failure to indicate the job titles or responsibilities of putative class members was fatal to his claim. *Id* at *4 and that "while Plaintiffs' accounting of events points to a policy or plan that violates the FLSA … Plaintiff fails to properly demonstrate that the plan was common among similarly situated employees." *Id*. Thus the court determined that Plaintiff had not met his lenient burden of demonstrating that putative class members were similarly situated.

While Plaintiffs in this case have provided affidavits those affidavits still fail to do either of the following: 1) identify potential class members or 2) demonstrate that the potential plaintiffs are similarly situated.

The affidavits are flawed for the following reasons:

- Plaintiffs fail to provide affidavits from any bouncer or shot girl, who are the putative opt-in plaintiffs.

- The affidavits provide only generalized statements based on "personal knowledge" related to alleged working conditions of shot girls and bouncers or "other employees"

- The affidavits fail to identify the locations where the shot girls, bouncers, or "other employees" allegedly worked.

- The affidavits fail to identify any time frame during which the shot girls, bouncers, or "other employees" allegedly worked for Defendants.

- The affidavits describe only alleged working conditions clearly related to exotic dancers.

- The affidavits identify only alleged job duties related to exotic dancers.

- The one affidavit provided by a DJ does not demonstrate that this job position is remotely similar to that of an exotic dancer.

- Even among the exotic dancers, the dates during they were allegedly employed and the shifts they allegedly worked vary widely, making it impossible to determine whether the putative plaintiffs are similarly situated to the plaintiffs.

This case is also analogous to *Shipes v. Amurcon Corporation* (E.D. Mich. Mar. 23, 2012). (**Exhibit A**). In that case, the plaintiffs were former employees of a property management company. Shipes was a leasing agent paid on an hourly basis. Jull was a staff accountant earning a salary. *Shipes* at * 1. The court agreed with Defendants that Plaintiffs' proposed class was too broad because it included both hourly and salaried employees in one class. *Id*. at * 5. The court specifically stated that "Leasing Agent, Shipes is not similarly situated to her salaried counterparts." *Id*. The same reasoning applies to this case. Plaintiffs are dancers who claim to have performed at Defendants' clubs. Yet they claim to represent shot girls and bouncers. The failure to provide an affidavit from even one single shot girl or bouncer aside, Plaintiffs' have also failed to provide a scintilla of evidence relating to how a shot girl, bouncer or DJ performed similar duties, worked at the same location, or had similar hours as the dancers. The putative plaintiffs are not similarly situated to Plaintiffs.

3.    *A word about Plaintiffs' cases*

Even a cursory reading of the cases Plaintiffs cite in Footnote 4 of their Motion for Conditional Certification (See Exhibit 12, Doc # 38) reveals that the facts are not analogous to the facts of this case. For example, in *Brown v. AK Lawncare, In.,* No. 14-14158, 2015 U.S. Dist LEXIS 139399 (E.D. Mich. Oct. 14, 2015), the three plaintiffs and putative class members all had the same job duties – they were "all manual laborers who performed lawn mowing, landscaping and snow removal' for AKL in the years 2011-2014." *Brown* at *3. Likewise, in *Totte v. Quick Lane Oil & Lube, Inc.,* No. 16-12850, 2017 WL 1164715 (E.D. Mich. Mar. 29, 2017), plaintiffs and putative plaintiffs were all employed as oil change technicians for the defendants. *Totte* at *3. The plaintiffs and putative plaintiffs in *Clark v. Royal Transportation, Co*., No. 15-13243, 2016 WL 2983900 (E.D. Mich. May 24, 2016) were all employed as drivers responsible for driving certain routes within southeast Michigan (i.e. they had similar job titles and duties). Clark at *1. In *Williams v. K&K Assisted Living LLC*, No. 15-CV-11565, 2016 WL 319596 (E.D. Mich. Jan 27, 2016), the plaintiffs and putative plaintiffs were all employed by defendants as direct care workers. *Williams* at *1. Likewise, the *Cobus* and *Lee* cases involved plaintiffs and putative class members performing the same job duties at the same location. The *Shipes* case supports Defendants' position. In *Olivio v. GMAC Mortg. Corp*., 374 F. Supp. 2d 545 (E.D. Mich 2004).   See **Exhibit A**.  Plaintiffs and putative plaintiffs were loan officers whose

responsibilities required them "to originate residential real estate, mortgage, and home equity loans for GMAC." *Olivio* at 546. In short, these cases involve putative class members with the *same job description and/or same job duties as the plaintiffs*. These important facts do not exist in this case. [11]

Lastly, all the "nightclub cases" Plaintiffs cite in footnote 5 of their brief involve certification of collective actions involving *only* exotic dancers as plaintiffs and putative plaintiffs – none of the plaintiffs in those cases name other classes of employees as putative plaintiffs, another significant distinction from the case at bar.

    D.    <u>The Court is Well Within its Discretion to Order Limited Discovery on the Issue of Whether the Putative Class Members are Similarly Situated</u>

Defendant does not believe that Plaintiffs have submitted sufficient evidence that similarly situated employees exist for purposes of notification. At the very least, discovery is necessary on this issue.

A court may order that discovery proceed in steps. This is what the court did in the *Comer* case. In that case, plaintiffs were former assistant store managers (ASM) seeking back-pay for hours worked in excess of 40 per week. Defendant Wal-Mart claimed that the ASM's were bona fide executives exempt from the

---

[11] *Castillo v Morales, Inc.*, 302 F.R.D. 480 (2014) is also distinguishable. Plaintiff in that case requested certification of three subclasses, recognizing the differences in job duties of putative class members. She also provided weekly time sheets and payroll registers, not a generalized statement that she had "personal knowledge "of similarly situated employees, as here.

FLSA's hourly pay requirements. *Comer, supra* at 546. The district court ordered that discovery proceed in steps. It first ordered limited discovery related to two questions: 1) whether the suit should properly continue as a collective action, and 2) how best to define the collective group or class. *Id.* The Sixth Circuit found the district court's order bifurcating discovery to be consistent with the approach "typically used by courts in suits filed under 29 U.S.C. §216(b)." *Id.* The district court did the same thing in the *Olivio* case. At the scheduling conference, the court indicated that it would provide an initial period of time for the parties to conduct discovery as to whether the action should proceed as a collective action pursuant to 29 U.S.C. 216(b). *See Olivio, supra* at 546. Similarly, the courts in *Jesick*, and *Wade* exercised their discretion in ordering limited discovery. Defendants believe that limited discovery is appropriate in this case as well, to help ascertain whether the putative plaintiffs are, indeed, similarly situated to the plaintiffs.

     E.    <u>The Putative Class is Too Broad and Should be Narrowed</u>

A federal district court may grant a motion for conditional certification, but limit the scope of the conditional class based on the plaintiff's factual showing. *See Swinney v. Amcomm Telecomm., Inc.*, No. 12-12935, 2013 U.S. Dist. LEXIS 119749, 2013 WL 4507919 at *10 (E.D. Michigan. Aug. 23, 2013) (conditionally certifying collective action, but limiting to one of defendant employer's locations). See **<u>Exhibit A</u>**. *See also Shipes v. Amurcon Corp., supra* at *6 (stating that "this

16

Court has the discretion to re-shape the class in an appropriate manner" and citing cases).

1.      *The Class Definition is Overly Broad*

The Plaintiffs have submitted the following proposed definition of the conditional class:

> ALL EXOTIC DANCERS, SHOT GIRLS, BOUNCERS, D.J.S AND ANY OTHER INDIVIDUALS WHO WORKED FOR DEFENDANTS AND WERE MISCLASSIFIED BY DEFENDANTS AS INDEPENDENT CONTRACTORS AT ANY TIME IN THE PAST THREE YEARS

Doc #38-12.

This class is overly broad for several important reasons: 1) it includes vague language as to "other individuals" that are not identified; 2) it includes classes of workers that did not hold the same position or perform the same function as Plaintiffs; 3) it fails to identify the specific locations where Plaintiffs and other putative plaintiffs indicate they worked; and 4) the term "misclassify" implies wrong doing on the part of Defendant.

As stated earlier in Defendants' brief, most of the case law cited by Plaintiffs in support of their Motion involved Plaintiffs and putative plaintiffs who had the same job duties and responsibilities, and often the same job titles. In the adult entertainment cases specifically, the plaintiffs and putative plaintiffs were all exotic dancers. Therefore, this class should be limited to exotic dancers only.

17

All of the affidavits submitted indicate that Plaintiffs and putative plaintiffs worked either at the Penthouse or the Coliseum Bar & Grill. The notice should be limited to these locations.

Defendants propose the following class definition:

ALL EXOTIC DANCERS WHO WORKED FOR DEFENDANTS AT EITHER THE COLISEUM BAR & GRILL OR THE PENTHOUSE AT ANY TIME DURING THE PAST THREE YEARS AND WERE CLASSIFIED BY DEFENDANTS AS INDEPENDENT CONTRACTORS

2.     *Defendants' Objections to Other Sections of Plaintiffs' Proposed Notice*

Defendants object to the description of the lawsuit because it refers to tow truck operators.  Defendants also object to the description because it fails to inform putative class members that they may be compelled to arbitrate their individual claims against Defendants if they signed Arbitration Agreements and this court finds those individual agreements to be enforceable. *See e.g. D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 313–14 (D. Conn. 2011) (hereinafter *D'Antuono* #1) and companion case *D'Antuono v. C & G of Groton, Inc.,* No. 3:11CV33 MRK, 2011 WL 5878045 (D. Conn. Nov. 23, 2011)(Doc #38-13, hereinafter *D'Antuono* #2). In *D'Antuono* #1, the court granted Defendants' motion to dismiss and compel arbitration as to two Plaintiffs who had valid and enforceable arbitration agreements, requiring those Plaintiffs to arbitrate their claims on an

18

individual basis. The court denied the motion as to Plaintiff Cruz (finding that the record failed to demonstrate that she had an Agreement) *D'Antuono #1, supra* 789 F. Supp. 2d at 313-14.[12] When Plaintiffs petitioned the court for certification on Cruz's claim, the court found that it would need to determine whether other exotic dancers had enforceable arbitration agreements on an individual basis. *D'Antuono #2* at * 4. The same would be true of the case at bar, and putative plaintiffs should be informed of this possibility.

> 3. *Plaintiffs' notice is objectionable because it fails to warn putative plaintiffs of potential liability for costs and attorney fees*

Defendants object to Paragraph 3 of the proposed notice because it contains an overly broad class description. The notice also fails to inform potential plaintiffs that if Defendants prevail, they may be liable for Defendants' costs and attorney fees. *See Turlington v. Atlanta Gas Light Co.*, 135 F. 3d 1428, 1437 (11th Cir. 1998)(holding that FLSA entitles a prevailing defendant to attorney's fees and costs when district court finds that plaintiff litigated in bad faith). *See also Compagnone v. Dl Pool Serv., LLC,* No. 2:15-cv-647-FtM-99MRM, 2016 WL 6575087 (M.D. Fla, Nov. 7, 2016) (notice should warn potential class members that, should defendant prevail, all class members may be held responsible for their attorney fees and defense costs)(Doc #38-13). Lastly, Paragraph 10 regarding the

---

[12] The court also held that because the Agreements of D'Antuoni and Vilnit (called "leases") were valid and enforceable, no exotic dancers had the right to "opt into" their cases. *See D'Antuoni* #1 at 341.

19

court's impartiality should be contained on the first page of the notice, along with the class definition, not buried at the end of the notice.

## IV.   CONCLUSION

For the reasons set forth in this brief, Defendants respectfully request that this Court DENY Plaintiffs' Motion for Conditional Certification, or in the alternative, grant limited discovery, limit the class definition and modify the proposed notice accordingly.

SCHWARTZ LAW FIRM, P.C.

By: /s/ Jay A. Schwartz

Attorney for Defendants, ABCDE
Operating LLC d/b/a The Penthouse
Club, M & M Zin Enterprises, Inc. and
Alan Markovitz
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
jschwartz@schwartzlawfirmpc.com

Dated:   February 20, 2018          (P45268)

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2018, I electronically filed the foregoing document with the Clerk of the Court sending notification of such filing to all counsel registered electronically.

/s/Lyn Zarem
Schwartz Law Firm, P.C.
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
lzarem@schwartzlawfirmpc.com

# EXHIBIT A

2016 WL 6575087
Only the Westlaw citation is currently available.
United States District Court,
M.D. Florida,
Fort Myers Division.

Brittany Compagnone, on behalf of herself and
those similarly situated, Plaintiff,
v.
DL Pool Service, LLC, a Florida Limited Liability
Company, Defendant.

Case No: 2:15–cv–647–FtM–99MRM
|
Signed 11/07/2016

**Attorneys and Law Firms**

Carlos V. Leach, Morgan & Morgan, PA, Orlando, FL, for Plaintiff.

Amy L. Garrard, GrayRobinson, PA, Naples, FL, for Defendant.

**Opinion**

## OPINION AND ORDER

**\*1** This matter comes before the Court on plaintiff's Motion for an Order Permitting Supervised Notice to Potential Opt-in Plaintiffs and Conditional Certification as a Collective Action (Doc. #40) filed on May 4, 2016, and defendant's Response (Doc. #43) filed on June 8, 2016. For the reasons set forth below, the motion is granted to the extent that this case is conditionally certified as a collective action, but denied as to the request for approval of plaintiff's proposed notice to potential class members. (Doc. #40–3.)

## I.

Plaintiff Brittany Compagnone (plaintiff or Compagnone) has filed a one-count Amended Complaint (Doc. #17) against her former employer, DL Pool Service, LLC (defendant or DL), on her own behalf and on behalf of other similarly situated individuals, for overtime compensation relief under the Fair Labor Standards Act (FLSA), 28 U.S.C. §§ 201–19. On January 18, 2016, Juan

Long (Long) filed a Notice of Consent to Join. (Doc. #21–2.) To date, no others have joined Compagnone and Long as plaintiffs. The underlying facts, as set forth in the Amended Complaint, are as follows:

Compagnone worked for DL as a "pool service technician"[1] from approximately May 1, 2014 through March 20, 2015, servicing commercial and residential pools and spas. (Doc. #17, ¶¶ 3–4.) Plaintiff alleges that she, Long, and other similarly situated employees were paid a weekly salary[2] during their employment with defendant and "additional pay when they worked on the weekend." (Id. at ¶¶ 19–20.) Plaintiff alleges that all of defendant's service technicians performed the same or similar job duties, worked similar hours, and were paid pursuant to the same salary compensation plan. (Id. at ¶¶ 23–25, 28.) During their employment, Compagnone and Long allege that they were required to work in excess of 40 hours per week but were told that they were salaried employees and therefore ineligible for overtime compensation. (Id. at ¶ 22.) Compagnone alleges that she, and those similarly situated, were not compensated at a rate of one and one-half their regular rate of pay for those hours worked in excess of forty in a workweek in violation of the FLSA. (Id. at ¶ 31.)

**\*2** Compagnone now seeks conditional certification as a collective action and requests that the Court facilitate notice to potential collective action plaintiffs. (Doc. #40.) Compagnone seeks to facilitate notice to

> all current and former service technicians who worked for Defendant any time within the last three (3) years, and who were subjected to Defendant's illegal practice of not paying full and proper overtime compensation for all overtime hours worked.

(Id. at ¶ 4.) Plaintiff estimates that there are approximately forty (40) service technicians that fall within this definition. (Doc. #17, ¶ 26.)

Defendant opposes plaintiff's motion on several grounds. (Doc. #43.) First, DL argues that Compagnone has failed to satisfy her burden that there are other employees who wish to opt-in to the lawsuit; and second, that plaintiff has failed to establish that she is similarly situated to other pool service technicians, so as to make her an appropriate class representative. (Id. at p. 3.) Additionally, defendant asserts that even if the Court allows conditional certification, plaintiff's proposed notice is insufficient.

(Id. at pp. 18–20.)

## II.

An action to recover unpaid overtime compensation under the FLSA may be maintained

> against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The purpose of such a collective action is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003).

To demonstrate that plaintiffs are "similarly situated," an opt-in plaintiff "need show only that their positions are similar, not identical, to the positions held by the putative class members." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001) (quotations and citations omitted). The Eleventh Circuit has adopted a two-tiered approach to certification:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. ...

Hipp, 252 F.3d at 1218.

Before providing notice, a plaintiff must offer a "reasonable basis" for her assertion that there are other similarly situated employees who desire to opt-in. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008); Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991). At this stage, the Court applies a "fairly lenient standard", Anderson v. Cagle's Inc., 488 F.3d 945, 953 (11th Cir. 2007), although there must be more than counsel's unsupported assertions, Morgan, 551 F.3d at 1261. "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees," but "plaintiff's or counsel's belief in the existence of other employees who desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class." Hart v. JPMorgan Chase Bank, N.A., No. 8:12–cv–470–T–27TBM, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012) (internal citations omitted).

## III.

*3 Defendant argues that plaintiff cannot establish that she is similarly situated with the putative plaintiffs because she has failed to show that there are other employees who desire to opt-in to the action, and has failed to demonstrate a reasonable basis for her claim that there are similarly situated employees who have been denied overtime pay. Plaintiff alleges the contrary.

### A. Similarly Situated Individuals

In support of her assertion that other similarly situated service technicians exist, plaintiff states that all of defendant's service technicians performed the exact same job duties, worked similar hours, and were paid pursuant to the same salary compensation plan. (Doc. #40–1.) Defendant argues that plaintiff has failed to offer any evidence of DL's pay practices. Defendant also cites

discrepancies in plaintiff and Long's responses to the Court's Interrogatories regarding their work schedules and work duties, showing that plaintiff is not similarly situated to other service technicians.

With regard to their work schedules, Compagnone states that as a "pool route technician" her schedule varied, but typically consisted of work on Monday through Friday, and included weekend work if for some reason her route was not completed. (Doc. #22.) Long states that he had a full-time route, and did not provide any information about his schedule. (Doc. #27.) With regard to job duties, Compagnone's "were to service and maintain commercial and residential pools." (Doc. #22.) Long states that he was a "repair technician/route technician" that was "hired for repairs." (Doc. #27.) Both Compagnone and Long's Declarations state that they were "primarily responsible for installing Defendant's products." (Docs. ##40–1, ¶ 6; 40–2, ¶ 6.)

The Court finds that plaintiff has provided a "reasonable basis" that the other employees are similarly situated to plaintiff in regard to their job duties and pay provisions. Plaintiff has alleged that all potential opt-ins worked on a full-time basis, including overtime, for which they were not compensated, providing Declarations in support of this assertion. (Docs. ## 17, ¶ 22; 40–1; 40–2.) Furthermore, the Court does not find that the discrepancies in Compagnone's and Long's job duties sufficient to defeat conditional certification. At this stage of the proceedings, the Court declines to weigh evidence and make factual determinations. See Morgan, 551 F.3d at 1261 ("[A]t the second stage....the district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly." (citation omitted)).

Defendant also argues that because some putative plaintiffs signed arbitration agreements, they are not similarly situated. (Doc. #43, pp. 17–18.) Many courts have held that issues regarding arbitration agreements executed by employees are more properly examined at the second tier of the certification process because they involve merit-based determinations. See Racey v. Jay–Jay Cabaret, Inc., No. 15 Civ. 8228 (KPF), 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016); Williams v. Omainsky, No. 15–0123–WS–N, 2016 WL 297718, at *7 n.14 (S.D. Ala. Jan. 21, 2016) (collecting cases); Sealy v. Keiser Sch., Inc., No. 11–61426–CIV, 2011 WL 7641238, at *3 (S.D. Fla. Nov. 8, 2011). This Court agrees. Accordingly, the Court finds that defendant's arguments regarding the arbitration agreements are more properly suited to be addressed at the decertification stage.

### B. Existence of Other Individuals Who Desire to Opt In

**\*4** In support of her assertion that there are additional similarly situated individuals that were subject to the same employment policies who wish to opt in, Compagnone points to her Declaration, as well as Long's Declaration, which state that during their employment with defendant, they worked with approximately 10 to 15 similarly situated service technicians. (Docs. ##40–1, ¶ 11; 40–2, ¶ 9.) They estimate that there are approximately 40 to 80 similarly situated service technicians due to high turnover. (Id. at ¶ 10; ¶ 12.) The Declarations state that each "anticipate that mostly all of the technicians from my branch would be inclined to join if they receive notice fully explaining their rights to join this action because we were unaware that there was a suit or that we could join the suit." (Id. at ¶ 11; ¶ 13.) Further, plaintiff points to the fact that one other former DL employee participated in their own separate FLSA suit for overtime violations against DL. (Doc. #40, pp. 9–10.)

Defendant asserts that plaintiff has not produced sufficient evidence to show that there are additional similarly situated individuals who wish to opt-in, stating that other than the conclusory allegations contained in the Amended Complaint, plaintiff offers only her own self-serving Declaration, and that of opt-in plaintiff Long, as evidence of a belief that others wish to join this suit. Defendant also argues that plaintiff has failed to demonstrate that there are a sufficient number of potential class members to warrant conditional certification. In support, defendant points to the Affidavit of Justin Henderson, Controller for DL (Henderson Affidavit), attached to its Response. (Doc. #43–1.) The Henderson Affidavit states that, excluding the three individuals that have already filed claims against defendant from the total number of potential class members, the number of individuals in the potential class would be less than thirty, including eleven that remain employed by DL. (Id. at ¶ 10.) And, the eleven current employees signed an arbitration agreement implemented after Compagnone's employment ended, agreeing to arbitrate any FLSA disputes. (Id. at ¶¶ 11–13.) Therefore, defendant argues these eleven employees should be excluded from the potential class.

A review of the relevant case law confirms that no firm line has been drawn regarding the number of opt-ins necessary, or magic language required, to convince the court that additional putative plaintiffs will join or desire to join the action. See Ciani v. Talk of The Town Rests.,

Inc., No. 8:14–cv–2197–T–33AEP, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015) (finding presence of two opt-in plaintiffs, each having filed a declaration describing their working condition sufficient to show others desire to join); Teahl v. The Lazy Flamingo, No. 2:13–cv–833–FtM–38CM, 2015 WL 179367, at *5–6 (M.D. Fla. Jan. 14, 2015) (finding declaration and two opt-ins sufficient to provide a reasonable basis that others desire to join); Gonzalez v. TZ Ins. Sols., LLC, No. 8:13–cv–2098–T–33EAJ, 2014 WL 1248154, at *2 (M.D. Fla. Mar. 26, 2014) (finding that "[a]lthough there is no magic number requirement for the notice stage," five opt-in plaintiffs are sufficient to convince the court that others desire to join the action); Robbins–Pagel v. Puckett, No. 6:05–cv–1582–Orl–31DAB, 2006 WL 3393706, at *2 (M.D. Fla. Nov. 22, 2006) (finding affidavits submitted by plaintiff and two additional former employees sufficient to show that others desire to join). Although the burden of showing that there are other employees who desire to opt in is minimal, this "minimal burden should not be confused with a nonexistent burden." Goodrich v. Covelli Family Ltd. P'ship, No. 8:11–cv–1715–T–33TBM, 2012 WL 1081473, at *3 (M.D. Fla. Mar. 30, 2012).

While the Court agrees that a valid arbitration clause is enforceable in an FLSA collective action, see Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326 (11th Cir. 2014), it does not find defendant's allegation that an arbitration agreement was rolled out after Compagnone's employment ended to be dispositive proof that others do not desire to join. While some courts have been able to conclusively establish that named plaintiffs were prohibited from bringing an action as a result of an arbitration agreement, other courts have held that the fact that some members of a proposed class may be subject to an arbitration provision does not preclude the conditional certification of a class. See Saravia v. Dynamex, Inc., 310 F.R.D. 412, 424 (N.D. Cal. 2015); Bowman v. Dow Run Res. Corp., No. 4:13 CV 2519 CDP, 2014 WL 3579885, at *5 (E.D. Mo. July 21, 2014). As discussed supra, issues regarding the arbitration agreements in this case are more properly addressed at the decertification stage or on a motion to compel arbitration.

**\*5** Under the "fairly lenient standard" appropriate at this stage of the proceedings, the Court is satisfied, however, that plaintiff has provided a "reasonable basis" for her assertion that there are additional similarly situated individuals who desire to opt-in. See Scheall v. NICAEA Acad., Inc., No. 2:14–cv–653–FtM–29DNF, 2015 WL 3991041, at *2 (M.D. Fla. June 30, 2015) (finding presence of two opt-ins in addition to plaintiff and affidavits of plaintiff and one opt-in sufficient to show

there are similarly situated individuals who wish to opt-in); Kirk v. Dr. Goodroof, Inc., No. 2:14–cv–639–FtM–29CM, 2015 WL 1138445, at *1–2 (M.D. Fla. Mar. 13, 2015) (finding plaintiff and one other opt-in's testimony sufficient to show others' desire to join).

Accordingly, conditional certification is warranted and the Court will now address the definition of the putative class and the substance of the notice to be sent to putative class members.

### C. Adequacy of the Proposed Notice

Defendant objects to the proposed notice attached to plaintiff's motion (Doc. #40–3) on multiple grounds: (1) the class definition is overly broad as to the time period, (2) it is not impartial, (3) it fails to inform recipients of their right to obtain independent legal representation, (4) it improperly instructs recipients to contact plaintiff's counsel should retaliation occur, (5) fails to notify opt-in plaintiffs that they may be liable for attorneys' fees and costs in the event that the court were to find that the matter was litigated in bad faith, and (6) plaintiff's request to post notices at company locations and send via email should be denied because notice by mail is sufficient. (Doc. #43, pp. 18–20.) The Court will consider each objection in turn.

In the proposed notice, plaintiff seeks to represent a class of former and current service technicians who have worked for DL at any time within the last three years. (Doc. #40–3, p. 1.) The Court agrees that the proposed notice is overbroad as to the time period because it does not define a start or end date. The Court will allow plaintiff the opportunity to file a revised proposed notice.

With regard to impartiality, defendant argues that the proposed notice does not contain any mention that DL disputes plaintiff's claims. (Doc. #43, p. 19.) The Court disagrees. The proposed notice states under the heading "DEFENDANT'S POSITION" that "DL POOL maintains that it paid its service technicians in accordance with the applicable law and that each was properly compensated." (Doc. #40–3, p. 1.) Defendant may assert any further objections in response to the revised proposed notice. The Court further notes that the proposed notice states that "[t]he court has made no finding as to the merits of the case at this time." (Id.)

Defendant next argues that the proposed notice improperly leads one to believe that if a potential class

member opts-in to the lawsuit, they have no choice but to be represented by plaintiff's counsel. In this regard, the proposed notice reads, "legal representation if you join"—"If you choose to join in the lawsuit, you will be represented by the Representative Plaintiff[^] through her attorneys as counsel for the class." (Id. at 2.) The Court agrees that potential opt-ins should be informed that they may obtain independent legal counsel.

**\*6** Defendant also takes issue with the fact that proposed notice contains the following anti-retaliation provision in boldface type:

> Notice: The law prohibits anyone from discriminating or retaliating against you for taking part in this case. If you believe that you have been penalized, disciplined, punished, threatened, intimidated, or discriminated against in any way as a result of your receiving this notification, your considering whether to complete and submit the Notice of Consent, or your having submitted the Notice of Consent, you may contact the attorneys at the number provided above.

(Doc. #40–3, p. 3.) Defendant argues that because the issue of retaliation has not been raised by plaintiff, including it in the proposed notice is improper. The Court will allow the provision, but finds that it is improper as stated because it does not inform potential opt-ins that they may seek independent legal counsel. Therefore, the last sentence should read: "If you believe that you have been penalized, disciplined, punished, threatened, intimidated, or discriminated against in any way as a result of your receiving this notification, your considering whether to complete and submit the Notice of Consent, or your having submitted the Notice of Consent, you may contact an attorney of your choice or the attorneys at the number provided above."

The proposed notice also states under the heading "Effect of Joining Suit" that the opt-in plaintiffs would not "be required to pay attorney's fees directly." (Id.) In Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1437 (11th Cir. 1998), the Eleventh Circuit noted that the FLSA entitles a prevailing defendant to attorney's fees and costs when the district court finds that the plaintiff litigated in bad faith. It is not clear what plaintiff means when she states that potential opt-in plaintiff would not have to pay for attorney's fees "directly." The notice should warn potential class members that, should DL prevail, all class members may be held responsible for DL's attorney's fees and defense costs.

Finally, as recognized previously by this Court, "requests [to post notices] are routinely granted and the Court sees

no reason to divert from that standard of practice in this case." Scheall, 2015 WL 3991041, at \*3 (citing Fiore v. Goodyear Tire & Rubber Co., No. 2:09–cv–843–FtM–29SPC, 2011 WL 867043, at \*4 (M.D. Fla. Mar. 10, 2011)). The Court also approves sending notices via first class mail as well as via email. "A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class." Palma v. Metropcs Wireless, Inc., No. 8:13–cv–698–T–33MAP, 2014 WL 235478, at \*2 (M.D. Fla. Jan. 22, 2014). Therefore, service by email will be allowed.

**D. Notice–Related Discovery**

Plaintiff requests that the Court order defendant to produce a list of all similarly situated service technicians who worked for defendant within the last three (3) years, within 30 days in order to facilitate notice of the lawsuit. (Doc. #40, p. 16.) The Court agrees that limited notice-related discovery is appropriate here, but as the time period is not yet defined, the Court will defer ordering such a production. Plaintiff should include the request for production when filing the revised proposed notice.

Accordingly, it is hereby

**\*7 ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for an Order Permitting Supervised Notice to Potential Opt-in Plaintiffs and Conditional Certification as a Collective Action (Doc. #40) is **GRANTED IN PART AND DENIED IN PART.** This action is conditionally certified as a collective action, but the request to permit notice is denied without prejudice pending the Court's review of a revised proposed notice to be filed by plaintiff on or before **November 21, 2016.**

2. Defendant shall file any objections to plaintiff's revised proposed notice on or before **December 1, 2016**.

**DONE and ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 6575087

Footnotes

1   In Compagnone's Declaration attached in support of the certification motion, she states that she worked for defendant as a "service technician." (Doc. #40–1.) Yet in her Verified Answers to the Court's Interrogatories, she stated she was a "pool route technician." (Doc. #22.) Likewise, in the Amended Complaint, plaintiff asserts that Long worked for DL as a "pool service technician," yet in Long's Verified Answers to the Court's Interrogatories, he states he was a "repair technician/route technician." (Doc. #17, ¶5; Doc. #27.) And Long's Declaration states that he was a "service technician." (Doc. #40–2.) The Court notes that plaintiff's proposed notice to potential class members refers to Compagnone as a "service technician" and uses this title in the class description contained therein. (Doc. #40–3.) As the Court finds that plaintiff has offered a reasonable basis for her assertion that there are other similarly situated employees who desire to opt-in, the discrepancies in the titles are not significant to the issue of conditional certification.

2   At one point in the Amended Complaint Compagnone alleges that she was an "hourly paid employee," yet elsewhere in the Amended Complaint and in her Declaration in support of the certification motion, she claims that she was a salaried employee. (Doc. #17, ¶¶ 2, 22, 25, 35, 41; Doc. #40–1.) The same discrepancy regarding how Long was paid also exists. Plaintiff's other allegations comport with Compagnone and Long being salaried employees.

3   The Court further notes that "Representative Plaintiff" is not defined in the proposed notice. Any future amended notices should include this definition.

   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

PAGE SEPARATOR

2015 WL 12990483
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan, Southern Division.

Glenn Demorris, Plaintiff,
v.
Rite Way Fence, Inc., Marx Contracting, Inc.,
Eugene Zapczynski, Christy Grundner, Mark
Grundner, Defendants.

Case No. 14-cv-13777
|
Signed 03/30/2015

**Attorneys and Law Firms**

Maia E. Johnson, Gold Star Law, Troy, MI, for Plaintiff.

Scott E. Combs, Law Offices of Scott E. Combs,
Plymouth, MI, for Defendants.

**Opinion**

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR CONDITIONAL CERTIFICATION
AND FOR NOTICE TO THE CLASS [#12] AND
GRANTING PLAINTIFF'S MOTION TO STRIKE
DEFENDANTS' RESPONSE [#19]**

HON. GERSHWIN A. DRAIN, UNITED STATES
DISTRICT COURT JUDGE

## I. INTRODUCTION

**\*1** Plaintiff, Glenn DeMorris, filed the instant putative
collective action against his former employers,
Defendants—Rite Way Fence, Inc., Marx Contracting,
Inc., Eugene Zapczynski, Christy Grundner, and Mark
Grundner. Plaintiff alleges that Defendants violated the
Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §
201, *et seq.* Plaintiff specifically claims that Defendants
undercompensated him, in varying manners, for hours that
he worked.

The FLSA establishes "federal minimum-wage,
maximum-hour, and overtime guarantees that cannot be
modified by contract." *Genesis Healthcare Corp. v.
Symczyk*, 133 S.Ct. 1523, 1527 (2013); 29 U.S.C. § 201, *et
seq.* Section 207(a) of the FLSA "requires employers to

pay time-and-a-half for employee labor exceeding [40]
hours per week." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d
544, 545 (6th Cir. 2006).

As a remedy, FLSA permits an aggrieved employee to
bring a private cause of action for violations under the Act
on behalf of themselves and employees similarly situated.
29 U.S.C. §§ 206, 207, 216(b). "A suit brought on behalf of
other employees is known as a 'collective action.' "
*Symczyk*, 133 S.Ct. at 1527 (citing *Hoffman-La Roche Inc.
v. Sperling*, 493 U.S. 165, 169-70 (1989)). Here, Plaintiff
claims that Defendants avoided paying him and other
similarly situated employees for overtime hours
performed.

Defendants are in the business of installing fencing and
guardrails along roads and freeways. Plaintiff alleges that
in order to minimize or eliminate their liability for
overtime pay, Defendants arbitrarily allocated his hours
between the Defendant-companies— Rite Way and Marx
Contracting. Plaintiff asserts that he did not work for two
employers and reported only one set of hours worked.
Plaintiff further asserts that his compensation was
allocated in this manner even though he worked at the
same location, used the same equipment, and performed
the same tasks.

In addition, Plaintiff asserts that Defendants paid him at
different rates for different activities. For example,
Plaintiff alleges that he was paid at different rates for "yard
time," "drive time," and "site time." He asserts that
Defendants paid him an additional "fringe" pay for hours
spent doing "site time" work. Defendants ultimately
determined how Plaintiffs' hours worked were allocated
among the above mentioned categories.

Presently before the Court is Plaintiff's Motion for
Conditional Certification and for Notice to the Class. Doc.
No. 12. Plaintiff is pursuing this lawsuit as a collective
action. He seeks to represent present and former employees
who are similarly situated. For the reasons that follow, the
Court denies Plaintiff's motion for conditional class
certification and for judicial notice.

## II. LAW AND ANALYSIS

### A. **Conditional Certification of Class—Standards**
Representative claims under the FLSA are governed by
Section 216(b) of the Act, and not under Rule 23 of the
Federal Rules of Civil Procedure. *Pritchard v. Dent
Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002).
Section 216(b) of the FLSA permits aggrieved individuals

to maintain a collective action for violations under the Act. Section 216 provides that, "[a]n action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). This may be done "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.*

**\*2** Conditional certification permits plaintiffs to send court-approved written notice of the collective action to potential class members. *Symcyzk*, 133 S.Ct. at 1530. Consequently, notified employees can then become "parties to [the] collective action [but] only by filing written consent with the court." *Id.* (citing *Hoffman-La Roche Inc.*, 493 U.S. at 171-72); *see O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009) ("[O]pt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action."). Unlike Federal Rule of Civil Procedure 23, which governs class actions, an employee must affirmatively consent in writing to become a party plaintiff. *Comer*, 454 F.3d at 546. "Such consent is filed in the court in which such action is brought." *Pritchard*, 210 F.R.D. at 595.

Furthermore, this Court has recognized that "[n]o one is bound by the judgment unless they 'opt-in.' " *Id.* at 595 (citing *Sims v. Parke Davis & Co.*, 334 F.Supp. 774, 782 (E.D. Mich. 1971) aff'd 453 F.2d 1259 (6th Cir. 1971)). Section 216(b), however, only allows for "similarly situated" employees to utilize the opt-in procedure. *Id.*

To summarize, there exist two requirements for a collective action under Section 216(b). First, "plaintiffs must be 'similarly situated,' " and second, "all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer*, 454 F.3d at 546 (citing *Hoffman-La Roche*, 493 U.S. at 169). District courts have discretionary authority to authorize notification of similarly situated employees in order to allow them to opt into the lawsuit. *Id.*

A two-phase inquiry addresses the question of whether proposed co-plaintiffs are, in fact, similarly situated. *Id.* The first phase takes place at the beginning of discovery. *Id.* In this first phase, also known as the "notice stage," the certification is conditional as opposed to final. At this phase, "[t]he plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.' " *Comer*, 454 F.3d at 546-47 (citations omitted).

At the second phase, which follows discovery, district courts should examine the question of whether particular members of the class are, in fact, similarly situated. *Comer*,

454 F.3d at 546-47. This phase of the certification process takes place " 'after all of the opt-in forms have been received and discovery has been concluded.' " *Fisher*, 665 F.Supp.2d at 825 (citations omitted). For this reason, the second phase warrants a stricter standard than the first phase. *Frye v. Baptist Mem'l Hosp.*, 495 Fed.Appx. 669, 671 (6th Cir. 2012).

Concerning the first phase, the lead plaintiff bears the burden of showing that the opt-in plaintiffs are similarly situated. *Fisher v. Michigan Bell Tel. Co.*, 665 F.Supp.2d 819, 825 (E.D. Mich. 2009) (citing *O'Brien*, 575 F.3d at 584). Plaintiffs' burden under the FLSA is less stringent than that required for class certification under Rule 23...." *Id.* "Authorization of notice 'need only be based on a modest factual showing.' " *Id.* (citations omitted). Courts have held that "this determination is made using a fairly lenient standard, and typically results in a 'conditional certification' of a representative class." *Id.* (citations omitted). Plaintiffs are only required to " 'submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists.' " *Id.* (quoting *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004)) (internal quotation marks omitted). Furthermore, at the notice stage, the court is not responsible for "resolv[ing] factual disputes, decid[ing] substantive issues going to the ultimate merits, or mak[ing] credibility determinations." *Id.* (quoting *Brasfield v. Source Broadhead Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)) (internal quotation marks omitted).

**\*3** A plaintiff may satisfy his burden at the notice stage by demonstrating that "[he] and potential plaintiffs were victims of a common policy or plan that violated the law." *Id. (Olivo*, 374 F.Supp.2d at 548). This is sufficient even if those theories are "inevitably individualized and distinct." *Id.* Satisfaction of the "similarly situated" standard at the notice stage enables certification to be "conditioned" upon plaintiffs' ability to satisfy the second phase, described above. *Olivo*, 374 F.Supp.2d at 548. The conditional certification then allows plaintiffs to proceed with notification of the suit's pendency to putative class members. *Id.*

## B. Discussion

### 1. Plaintiff's Motion for Conditional Certification

Plaintiff seeks conditional class certification and judicial notice of a FLSA collective action. Plaintiff, however, has not met his lenient burden to warrant conditional certification. In particular, Plaintiff has not submitted

Demorris v. Rite Way Fence, Inc., Slip Copy (2015)

sufficient evidence demonstrating that potential plaintiffs are similarly situated. For this reason, conditional certification is not warranted, and the Court, therefore, declines to conditionally certify the case as a collective action. Consequently, Plaintiff's request for judicial notice is also denied.

### a. Plaintiff has not shown that putative class members are similarly situated.

Plaintiff seeks conditional certification of a collective action and judicial notice to a class defined as follows:

> All individuals currently and formerly employed by Defendants Rite Way Fence, Inc., Marx Contracting, Inc., Eugene Zapczynski, Christy Grundner, and Mark Grundner ("Defendants") after October 1, 2011 who were not properly compensated for all hours worked, who worked at various job categories and rates of pay and were not properly compensated for the tasks performed, and who worked hours in excess of forty per week but were not properly paid 1½ times their regular rates for overtime hours during all or part of their employment.

Plf.'s Mot. Conditional Certification, Doc. No. 12, Ex. 1.

To show that putative class members are similarly situated, "plaintiff must show only that his position is similar, *not identical*, to the positions held by the putative class members." *Fisher*, 665 F.Supp.2d at 827. In contrast, "disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis...." *Id.* (citing *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367-69 (E.D. Tenn. 2006)).

In reviewing a plaintiff's factual showing, courts often consider "factors such as whether potential plaintiffs were identified[,] [and] whether affidavits of potential plaintiffs were submitted ..." *Olivo*, 374 F.Supp.2d at 548 (citation omitted). Courts also consider "whether evidence of a widespread discriminatory plan was submitted," and "whether 'as a matter of sound case management, ... a manageable class exists.' " *Id.* (citations omitted).

As an initial matter, Plaintiff has neither identified nor provided affidavits of potential plaintiffs. Plaintiff asserts that he has personal knowledge of other similarly situated employees who were paid on the same basis as him. DeMorris Aff. ¶ 7. Personal knowledge alone, however, is not sufficient. *See Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 245 (W.D. Mich. 2011). Not only has Plaintiff failed to provide affidavits of potential class members, but Plaintiff has not identified a single person that can support his allegations of a common plan. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions[....]' (internal citation and citation omitted)). He does not provide any relevant facts to support what he refers to as his personal knowledge. Plaintiff also does not go so far as to describe how he came to realize that others were affected by Defendants' policy.

**\*4** In fact, Plaintiff does not "offer [anything] to establish that [he] had any personal knowledge that the alleged policy in question was the same with respect to all" individuals employed by Defendants.[1] At minimum, Plaintiff is required to provide a modest amount of information about the employment setting at the notice stage. *See Fisher*, 665 F.Supp.2d at 827. Plaintiff, however, fails to even provide the modest information required.

For example, Plaintiff has failed to indicate the job titles or responsibilities of putative class members. Plaintiff has also failed to reference any location, service department, or even job site that could unify potential plaintiffs in a manner that could give a colorable basis to his claims. *See Olivo*, 374 F.Supp.2d at 548. Moreover, Plaintiff has failed to specify his own job title or position.

These are basic statements that would give weight to Plaintiff's claim. This information has not been provided. Instead, Plaintiff has only alluded to his job duties by noting that Defendants are in the business of installing fencing and guardrails along roads and freeways. This, by itself, is insufficient.

Plaintiff does not provide enough information to conclude that putative class members are similarly situated. Plaintiff indeed fails to provide any factual support for a proposed collective action. As a result, Plaintiff has not met his burden in demonstrating that putative class members are similarly situated.

### b. Plaintiff has not shown a common policy or plan that violates the FLSA.

Demorris v. Rite Way Fence, Inc., Slip Copy (2015)

District courts permit a lead plaintiff to show that the claimants are similarly situated by demonstrating that "they and potential plaintiffs were victims of a common policy or plan that violated the law." *Id.* Plaintiff has not shown a *common* plan or policy that purportedly violates the FLSA.

Plaintiff claims that Defendants arbitrarily allocated his hours between the named Defendants Rite Way and Marx Contracting. Plaintiff specifically alleges that his compensation was allocated in this manner even though he worked at the same location, used the same equipment, and performed the same tasks. Plaintiff further asserts that he was paid at different rates for "yard time," "drive time," and "site time." Defendants then determined how Plaintiffs' hours worked were allocated among these categories.

While Plaintiffs' accounting of events points to a policy or plan that violates the FLSA, DeMorris Aff. ¶ 3-8, Plaintiff fails to properly demonstrate that the plan was common among similarly situated employees. Plaintiff neither identifies nor provides affidavits from former or current employees to corroborate his allegations. *See, e.g., Frye*, No. 07-2708, 2008 WL 6653632, at *3 ("Plaintiff submitted ten declarations to support his motion for conditional notice."). Likewise, Plaintiff does not even describe how he came to the understanding that others may have been victims of the same policy. Consequently, Plaintiff's contention that the plan was common fails.

### 2. Plaintiff's Proposed Notice
Plaintiff's proposed judicial notice is not appropriate. Judicial notice to a putative class is proper in appropriate cases. *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010) (citing *Hoffmann-La Roche*, 493 U.S. at 169). The Court has discretion to authorize notification, informing individuals of their right to opt into the lawsuit. *Id.* Consequently, an individual employee who does not opt-in cannot recover. *Id.* Judicial notice effectively "promotes judicial economy, helps avoid the 'multiplicity of duplicative suits' inherent in these types of lawsuits, and notifies putative plaintiffs of an economically feasible litigation option." *Id.* (citing *Hoffman-La Roche*,

493 U.S. at 170).

**\*5** The Court, as a matter of course, must first determine that the employees to be notified are similarly situated. *See Fisher*, 665 F.Supp.2d at 828. Plaintiff has failed to meet this burden. Consequently, the notice does not provide "a fair and accurate description of the scope of the putative class." *See Wlotkowski*, 267 F.R.D. at 219. This is required as to ensure that the judicial economy of creating a collective action is preserved. For this reason, Plaintiff is not entitled to judicial notice.

### III. PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' RESPONSE
On March 24, 2015, Plaintiff filed a Motion to Strike Defendants' Response to the Motion for Conditional Certification. Local Rule 7.1(e)(1)(B) states that "[a] response to a dispositive motion must be filed within 21 days after service of the motion." Plaintiff's Motion for Conditional Certification was filed on January 27, 2015. Defendants filed a Response to the motion on March 19, 2015. By this date, Defendants' response was 30 days past due. Consequently, Defendants' response was in violation of the Court's Local Rules. For this reason, the Court grants Plaintiff's Motion to Strike.

### IV. CONCLUSION
For the reasons enumerated above, Plaintiff's Motion for Conditional Certification [#12] is **DENIED**.

Consequently, Plaintiff's Motion for Notice of the Class [#12] is also **DENIED**.

SO ORDERED.

### All Citations

Slip Copy, 2015 WL 12990483

Footnotes

1    *Bacon v. Eaton Aeroquip, LLC*, No. 11-14103.

**Demorris v. Rite Way Fence, Inc., Slip Copy (2015)**

---

**End of Document**                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

PAGE SEPARATOR

Olivo v. GMAC Mortg. Corp., 374 F.Supp.2d 545 (2004)

75 Cases that cite this headnote

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by Neff v. U.S. Xpress, Inc., S.D.Ohio, March 18, 2013

374 F.Supp.2d 545
United States District Court,
E.D. Michigan,
Southern Division.

Nathaniel J. OLIVO & Lola J. Hopcraft,
individually and on behalf of all similarly situated
persons, Plaintiffs,
v.
GMAC MORTGAGE CORPORATION, Defendant.

No. 03–72585.
|
April 1, 2004.

**Synopsis**
**Background:** Mortgage officer employees of mortgage company sued employer, claiming entitlement to overtime pay under Fair Labor Standards Act (FLSA). Employees moved for leave to proceed, under FLSA, as collective action brought on part of allegedly similarly situated officers.

**Holding:** The District Court, Zatkoff, J., held that loan officers were exempt from FLSA as "outside salesmen."

Motion denied.

West Headnotes (1)

[1]     **Labor and Employment**
          Outside Salespersons

          Loan officers of mortgage company were exempt, as "outside salesmen" from overtime pay requirements of Fair Labor Standards Act (FLSA), precluding their inclusion in collective action under FLSA, seeking recovery of overtime allegedly due. Fair Labor Standards Act of 1938, §§ 7(a), 13(a)(1), 16(b), 29 U.S.C.A. §§ 207(a), 213(a)(1), 216(b).

**Attorneys and Law Firms**

**\*545** Dale E. Bock, Flint, MI, Valdemar L. Washington, Detroit, MI, for Plaintiffs.

Dennis M. Barnes, Eugene Driker, Matthew R. Millikin, Barris, Sott, Detroit, MI, Joseph N. Frabizzio, Michael L. Banks, Sarah E. Bouchard, Morgan, Lewis, Phildelphia, PA, for Defendant.

**Opinion**

*OPINION AND ORDER*

ZATKOFF, Chief Judge.

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Court Facilitation of Notice to Potential Plaintiffs. Defendant GMAC Mortgage Corporation has responded. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiffs' Motion is DENIED.

## II. BACKGROUND

This is an action for overtime compensation brought pursuant to the Fair Labor Standards Act of 1938, *as amended,* 29 U.S.C. §§ 201–219, (hereinafter "FLSA"). Plaintiffs are Nathaniel J. Olivo and Lola **\*546** J. Hoperaft, former retail loan officers with Defendant GMAC Mortgage Corporation, (hereinafter "GMAC"). Although GMAC employs loan officers in all fifty states, both Plaintiffs worked out of GMAC's office in Flint, Michigan, where Plaintiff Olivo worked from approximately July 10, 2000, until July 17, 2002, and

Plaintiff Hopcraft worked from approximately February 25, 2002, until May 13, 2003.

Plaintiffs' responsibilities as loan officers were to originate residential real estate, mortgage, and home equity loans for GMAC. The terms and conditions of Plaintiffs' employment were set forth in Residential Loan Originator Employment and Compensation Agreements executed by Plaintiffs, (hereinafter "Employment and Compensation Agreement"). *See* Plaintiffs' Motion Ex. 9 & 10. GMAC loan officers are paid on a pure commission basis pursuant to schedules set forth in the loan officer's Employment and Compensation Agreements. Under this commission-based pay structure, a loan officer's compensation is based on his or her actual production, measured by the value of that loan officer's mortgage loan closings. In order to provide compensation to beginning loan officers while they are still developing contacts and while GMAC is processing submitted loan applications, (*i.e.,* while the loan officer's first loans are "in the pipeline"), however, GMAC pays loan officers on a salaried basis during the first three months of the loan officer's employment.

On July 3, 2003, Plaintiffs filed the instant Complaint. With their Complaint, Plaintiffs allege that while employed by Defendant, they routinely worked in excess of forty hours a week, but that Defendant failed to pay Plaintiffs, (and all other similarly situated GMAC loan officers), time and one-half their regular rates of pay for those hours worked in excess of forty hours a week. Plaintiffs allege that this practice violates 29 U.S.C. §§ 207(a) & 215(a). In essence, Plaintiffs allege that Defendant's failure to pay overtime pay to those loan officers that work in excess of forty hours a week violates the Fair Labor Standards Act. In addition, Plaintiffs seek to proceed as a collective action, and to have all similarly situated GMAC loan officers added as plaintiffs pursuant to the "opt in" provision of the FLSA. *See* 29 U.S.C. § 216(b).

On October 29, 2003, this Court held a Scheduling Conference. At that time, the Court indicated that it would provide an initial period of time whereby the parties would conduct discovery as to whether this action should proceed as a "collective action" pursuant to 29 U.S.C. § 216(b). Following this initial period of discovery, Plaintiffs would submit a motion based upon whether they sought to proceed as a "collective action," and based upon whether they sought Court facilitation of notice of the action to "similarly situated" putative plaintiffs. On January 5, 2004, Plaintiffs filed their Motion for Court Facilitation of Notice to Potential Plaintiffs, and on February 4, 2004, Defendant filed a response opposing Plaintiffs' Motion.

With their Motion, Plaintiffs ask that the Court (1) grant their request to proceed as a collective action pursuant to 29 U.S.C. § 216(b); (2) grant their request for Court facilitation of notice to the putative class of plaintiffs; (3) order the Defendant to produce an alphabetized list of present and former loan officers employed by Defendant since February 1, 2001; and (4) approve Plaintiffs' proposed Notice to Potential Plaintiffs and Consent to Join. Defendant opposes Plaintiffs' Motion in its entirety.

### III. DISCUSSION

With their Complaint, Plaintiffs allege that Defendant has a policy of not paying **\*547** its residential mortgage loan officers for work performed in excess of forty hours a week in violation of 29 U.S.C. §§ 207(a) and 215(a). With their Motion, Plaintiffs seek the Court's approval to proceed as a collective action pursuant to 29 U.S.C. § 216(b), and request that the Court facilitate the notification of the pendency of this action to the putative "class" plaintiffs. Section 216(b) of the FLSA authorizes collective actions in certain circumstances and provides as follows:

§ 216. Penalties

. . . . .

(b) Damages; right of action; attorney's fees and costs; termination of right of action, ... An action to recover [for violations of 29 U.S.C. §§ 206, 207 or 215(a)(3) ] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*See* 29 U.S.C. § 216(b).

Pursuant to § 216(b), Plaintiffs may maintain a collective action on behalf of themselves "and other employees similarly situated[,]" but for any "similarly situated" employee to be bound by a judgment, they must have filed a written consent with this Court. *See* § 216(b); *Sims v. Parke Davis & Co.,* 334 F.Supp. 774, 780–81 (E.D.Mich.1971), *aff'd,* 453 F.2d 1259 (6th Cir.1971). In other words, a collective action is a representative action, but in order for the named Plaintiffs to represent the interests of "similarly situated" employees,

Olivo v. GMAC Mortg. Corp., 374 F.Supp.2d 545 (2004)

the "similarly situated" employees must "opt in" to the proceedings. *See Clougherty v. James Vernor Co.,* 187 F.2d 288, 290 (6th Cir.1951) ("[U]under the Fair Labor Standards Act the plaintiff has no right without specific authorization to represent an employee not joined as a plaintiff."). If the Court authorizes a "collective action" under § 216(b), then in its discretion, this Court may authorize the notification of putative "class" members of the pendency of the collective action. *See Hoffmann–La Roche v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Woods v. New York Life Ins. Co.,* 686 F.2d 578, 580 (7th Cir.1982) ("[Section 216(b) ] authorizes a representative action; and this authorization surely must carry with it a right in the representative plaintiff to notify the people he would like to represent that he has brought a suit, and a power in the district court to place appropriate conditions on the exercise of that right."). The issues before the Court are whether it should authorize a § 216(b) action in this case, and if so, whether it should exercise its discretion and facilitate notice to putative "class" plaintiffs.

In order to proceed as a "collective action" pursuant to § 216(b), Plaintiffs must demonstrate that they are "similarly situated" to the employees they seek to notify of this suit. In order to determine whether the Plaintiff has made this showing, the Court adopts the "two-stage class certification method." *See Lusardi v. Xerox Corp.,*118 F.R.D. 351 (D.N.J.1987). *See also Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208 (11th Cir.2001) ( "The two-tiered approach to certification of § 216(b) opt-in classes ... appears to be an effective tool ... and we suggest that district courts in this circuit adopt it in future cases."). *See generally Mooney v. Aramco Services Co.,* 54 F.3d 1207 (5th Cir.1995) (discussing two different approaches to § 216(b) "certification.").

Under the first step of the two-stage method, the Court determines whether **\*548** Plaintiffs have demonstrated other "similarly situated" putative plaintiffs for "notice" purposes. With this step, "[a] named plaintiff can show that the potential claimants are similarly situated 'by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' " *Flores v. Lifeway Foods, Inc.,* 289 F.Supp.2d 1042, 1045 (N.D.Ill.2003). *See Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 101, 104 (S.D.N.Y.2003); *Roebuck v. Hudson Valley Farms,* 239 F.Supp.2d 234, 238 (N.D.N.Y.2002) (citing *Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 306 (S.D.N.Y.1998)); *Kane v. Gage Merch. Servs.,* 138 F.Supp.2d 212, 215 (D.Mass.2001) (quoting *Hoffmann v. Sbarro, Inc.* 982 F.Supp. 249, 261 (S.D.N.Y.1997)); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 364

(M.D.Ala.1999).[1] This initial standard is fairly lenient, and in order to meet this standard, Plaintiffs must simply "submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists." *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266 (D.Minn.1991). Courts requiring a factual showing under the first step of a *Lusardi*-type determination have considered "factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; ... whether evidence of a widespread discriminatory plan was submitted[,]" *H. & R. Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D.Tex.1999), and whether "[a]s a matter of sound case management, ... a manageable class exists." *See Severtson,* 137 F.R.D. at 266. If Plaintiffs are able to make this showing, the Court will authorize Plaintiffs to proceed with this action as a "collective action" and will allow Plaintiffs to notify putative class members of the pendency of this suit. This initial standard has been called a "conditional certification" a certification conditioned upon Plaintiffs being able to satisfy the second step of the two-stage approach.[2] *See Mooney,* 54 F.3d at 1214.

**\*549** In the present case, Plaintiffs claim to be "similarly situated" to, and seek to notify those persons employed by Defendant on or after February 1, 2001, in the United States as Retail Loan Officers and/or in comparable positions. *See* Plaintiffs' Br. 1. In order to support their claim that they and the potential plaintiffs were victims of a common policy in violation of the law, Plaintiffs claim that the hiring, training, and general supervision of GMAC loan officers is highly centralized and uniform throughout the United States, and rely significantly on the deposition testimony of Alfred Davis, a Regional Manager for the Retail Lending Division for GMAC, to demonstrate the similarities between GMAC loan officers. Plaintiffs have not submitted any affidavits of other potential plaintiffs, but argue that based upon the deposition testimony of Mr. Davis, they have made the requisite showing and have demonstrated that GMAC loan officers throughout the country are "similarly situated," especially since GMAC concedes that no GMAC loan officer receives overtime compensation.

Defendant opposes Plaintiffs' Motion, and present three arguments in opposition. First, Defendant argues that Plaintiffs are not similarly situated to other GMAC loan officers, and that Plaintiffs do not meet the "similarly situated" requirement of § 216(b). Second, Defendant argues that under the standard used by the Court, Plaintiffs should not be allowed to proceed as a collective action since they are unable to make a "modest factual showing" that a policy of the Defendant's violated the law. Specifically, Defendant argues that it is exempt from

Olivo v. GMAC Mortg. Corp., 374 F.Supp.2d 545 (2004)

complying with the overtime compensation requirement of § 207(a)(1) because its loan officers are "outside salesmen" within the meaning of § 213(a)(1). And third, Defendant argues that the proposed class is unmanageable. Specifically, since Defendant primarily relies upon the "outside salesman" exemption, the Court must make a fact intensive inquiry to determine whether each and every potential plaintiff falls within that exemption. Depending upon the number of loan officers that elect to opt in to the proceedings, such a determination would be incredibly time consuming, and, as a matter of sound case management, would weigh against a finding that a manageable class exists.

For the reasons set forth below, the Court concludes that Plaintiffs have not met their burden, and that Plaintiffs' factual showing has failed to demonstrate that the Defendant's failure to pay overtime violates 29 U.S.C. §§ 207(a) or 215(a), even under the lenient standard applied by the Court.

Defendant claims that its loan officers, including Plaintiffs, are exempt from the FLSA's overtime requirement under the outside salesman exemption described in 29 U.S.C. § 213(a)(1). Section 213(a)(1) provides that the overtime requirement of § 207(a) does not apply to "any employee employed ... in the capacity of outside salesman ...." 29 U.S.C. § 213(a)(1). The Code of Federal Regulations provides that the term "outside salesman" means any employee

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning [29 U.S.C. § 203(k) ], or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction **550 with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. § 541.5. In simple terms, in order to qualify for the outside salesman exemption, an employee must spend a significant amount of his or her work-time engaging in sales related activities away from his or her employer's

place of business. See 26 A.L.R. Fed. 941 § 2a (1976). The outside sales exemption derives from the incompatibility of the overtime requirements of the FLSA with the individual character of an outside salesman. See, e.g., Jewel Tea Co. v. Williams, 118 F.2d 202, 208 (10th Cir.1941) ("To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman."). In this Circuit, FLSA exemptions are narrowly construed, and an employer attempting to rely upon an exemption must demonstrate that it applies by "plain and affirmative evidence." See Ale v. TVA, 269 F.3d 680, 691 n. 4 (6th Cir.2001). See also Wirtz v. Atlanta Life Ins. Co., 311 F.2d 646, 648 (6th Cir.1963); Hodgson v. Klages Coal & Ice Co., 435 F.2d 377, 382 (6th Cir.1970).

Courts have considered several factors when determining whether an employee is an outside salesman. Courts have considered whether the employee: (1) was solicit new business; (2) receives sales training; (3) was hired and denominated as a salesman; (4) was paid on a commission basis; (5) was required to meet minimum production standards; and (6) was subject to direct or constant supervision. See Hodgson v. Krispy Kreme Doughnut Co., 346 F.Supp. 1102 (D.N.C.1972); Fields v. AOL Time Warner, Inc., 261 F.Supp.2d 971, 974 (W.D.Tenn.2003).

In the present case, there is no question that GMAC loan officers are primarily engaged in sales. At the time they execute their Employment and Compensation Agreement, GMAC loan officers are made aware (1) that they are joining a "sales force," see, e.g., Olivo Employment and Compensation Agreement Ex. C; Plaintiffs' Motion Ex. 9; (2) that they are paid commission solely based upon their individual production, see, e.g., Olivo Employment and Compensation Agreement Ex. A; Plaintiffs' Motion Ex. 9; and (3) that from time to time they may be able to participate in a sales incentive program sponsored by their employer. See, e.g., Olivo Employment and Compensation Agreement ¶ 4; Plaintiffs' Motion Ex. 9. Furthermore, as a loan originator, it is a GMAC loan officer's job to solicit new business, although loan officers have a considerable amount of flexibility to configure their workday. Accordingly, the Court finds that GMAC loan officers are primarily engaged in sales. The only issue is whether GMAC loan officers are regularly engaged in "outside" sales, as opposed to "inside" sales, as required by 29 C.F.R. § 541.5. See also 29 C.F.R. § 541.502.

Defendant argues that its loan officers meet the "outside" sales requirement because its loan officers work primarily outside of the office to solicit prospective borrowers and referral services. See Defendant's Response Br. p. 1. See also Levine Decl. ¶ 8; Defendant's Motion Ex. B ("GMAC

Olivo v. GMAC Mortg. Corp., 374 F.Supp.2d 545 (2004)

[ ] expects its Loan Officers to spend most of their work time outside of the office generating sales and making new sales contacts."). Defendant indicates that it relies upon its loan officers to " 'sell' by contacting prospects, making and maintaining contacts with referral sources ... and using their ... talents and skills to create new sales opportunities." *See* Levine Decl. ¶ 3; Defendant's Motion Ex. B. For additional support, Defendant has submitted the Declarations of several loan officers, which indicate that GMAC loan officers spend a substantial **\*551** percentage of time outside of the office soliciting sales and generating or maintaining contacts, and that much of the time spent at the office is devoted to following up on contacts and leads generated during outside sales visits. *See* Chaisson Decl. ¶¶ 6 & 11; Defendant's Motion Ex. C; Luckstead Decl. ¶ 4; Defendant's Motion Ex. D; Curtis Decl. ¶¶ 4–6; Defendant's Motion Ex. E; Shamo–Richardville Decl. ¶¶ 6 & 10; Defendant's Motion Ex. F. Based upon the foregoing, the Court finds that Defendant has met its burden and demonstrated that, generally, its loan officers primarily engage in sales, that a substantial percentage of the loan officers' time is devoted to generating sales outside of the office, and that a substantial percentage of any time spent at the office is "incidental to and in conjunction with" the loan officers' outside sales efforts. *See* 29 C.F.R. §§ 541.5, 541.502, and 541.503.

Since the Court finds that, generally, the outside sales exemption contained in 29 U.S.C. § 213(a)(1) applies to Defendant's loan officers, the Court concludes that Plaintiffs are unable to demonstrate that they, and the potential plaintiffs, were "victims of a common policy or plan that violated the law," and, therefore, that Plaintiffs have filed to demonstrate that they are "similarly situated" to other GMAC loan officers within the meaning of 29 U.S.C. § 216(b). *Flores,* 289 F.Supp.2d at 1045. In essence, Defendant has demonstrated that the overtime requirements of the FLSA are incompatible with the individual character of the work of its loan officers. *See Jewel Tea,* 118 F.2d at 208. Plaintiffs' Motion should be DENIED.

## IV. CONCLUSION

Accordingly, and as set forth above, IT IS HEREBY ORDERED that Plaintiffs Olivo and Hopcraft's Motion for Court Facilitation of Notice to Potential Plaintiffs is DENIED in its entirety.

IT IS SO ORDERED.

**All Citations**

374 F.Supp.2d 545

Footnotes

1    The Court notes that it has afforded Plaintiffs a period of discovery solely on the issue of whether or not this action should proceed as a collective action pursuant to 29 U.S.C. § 216(b). Accordingly, the Court requires Plaintiffs to demonstrate "modest" factual support for the class allegations in Plaintiffs' Complaint, rather than allow Plaintiffs to simply rely upon the allegations contained in their Complaint. Under the distinction set forth in *Pritchard v. Dent Wizard Int'l Corp.,* 210 F.R.D. 591 (S.D.Ohio 2002), the Court is applying the "more restrictive standard."

2    Although not necessary in this case, under the second step, following the close of discovery, Defendant would have had the opportunity to file a Motion challenging the initial determination to allow the case to proceed as a "collective action," and the Court would have applied a stricter standard to determine whether the putative class of plaintiffs were "similarly situated" to the named Plaintiffs. *See, e.g., Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D.Colo.1997) ("In determining whether plaintiffs are similarly situated after discovery is completed, courts address several factors: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations ...."). In addition, at this stage, the Court would have considered whether certification would serve the purposes of a collective action under § 216(b), *see Vaszlavik,* 175 F.R.D. at 678 (quoting *Hoffmann–La Roche,* 493 U.S. at 170, 110 S.Ct. 482) ("A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issue of law and fact arising from the same alleged ... activity."), and then weigh the benefits of a collective action against the prejudice to the defendant and any judicial inefficiencies that could result from allowing Plaintiffs to proceed collectively. *See Vaszlavik,* 175 F.R.D. at 678. In this case, however, the Court has denied Plaintiffs' initial request for authorization to proceed collectively.

**Olivo v. GMAC Mortg. Corp., 374 F.Supp.2d 545 (2004)**

**End of Document**                                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

PAGE SEPARATOR

O'Neal v. Emery Federal Credit Union, Not Reported in F.Supp.2d (2013)

KeyCite Yellow Flag - Negative Treatment
Distinguished by Crescenzo v. O-Tex Pumping, LLC, S.D.Ohio, June 15, 2016

2013 WL 4013167
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Western Division.

Linda O'NEAL, on behalf of herself and others
similarly situated, Plaintiff,
v.
EMERY FEDERAL CREDIT UNION, et al.,
Defendants.
No. 1:13–CV–22.
|
Aug. 6, 2013.

**Attorneys and Law Firms**

Deborah R. Grayson, Meizlish & Grayson, Cincinnati, OH, Brendan Donelon, Kansas City, MO, for Plaintiff.

David Thomson Croall, Rachel E. Burke, Porter, Wright, Morris & Arthur, Cincinnati, OH, Fred G. Pressley, Jr., Porter Wright Morris & Arthur, Columbus, OH, for Defendants.

**Opinion**

ORDER DENYING DEFENDANTS' MOTION TO
STRIKE and DENYING PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION

SUSAN J. DLOTT, Chief Judge.

**\*1** Plaintiff Linda O'Neal brings this action on behalf of herself and all others similarly situated against Defendants Emery Federal Credit Unon and Emery Financial Services, Inc. for damages and other relief relating to alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. Plaintiff moves the Court to conditionally certify a plaintiff class pursuant to 29 U.S.C. § 216(b) consisting of all employees who performed as loan officers for Defendants from three years from the date of an order granting her motion. Doc. 13. Defendants oppose certification of a conditional class and additionally move to strike portions of the sworn statements submitted by Plaintiff in support of her motion for conditional certification. Doc. 22.

For the following reasons, both motions are hereby DENIED.

**I. BACKGROUND**

Plaintiff Linda O'Neal was employed by Defendant Emery Federal Credit Union (hereinafter "Emery") as a loan officer for approximately one year, from January to December 2012. As an Emery loan officer, O'Neal's primary duty was to sell mortgage loan products. O'Neal performed her work obligations from her home in Florida. O'Neal signed a Loan Officer Agreement with Emery that set forth her employment terms, including compensation.

O'Neal claims in her Complaint that Defendants violated overtime compensation and minimum wage requirements of the FLSA and Ohio law during the time she was employed as an Emery loan officer. She claims that Defendants classify her and all its loan officers as exempt from overtime premium compensations, and she alleges that Defendants "suffered and permitted" her and all other loan officers to work more than forty hours per week to complete their job responsibilities but did not pay them overtime compensation. She also alleges that Defendants paid their loan officers for no more than twenty hours per week at the state's minimum wage, even if they worked more than twenty hours. In her motion for conditional certification, O'Neal argues that Defendants subjected all its loan officers to this same pay policy and, accordingly, all current and former loan officers employed by Defendants are similarly situated for the purposes of this FLSA collective action.

O'Neal supports her motion for conditional certification with three sworn statements: her own and those of opt-in Plaintiffs Tim Mulvehill and Dan Mulvehill. The Mulvehills worked on-and-off for Emery as loan officers from 2009 to August 2012. Docs. 14–1 (O'Neal), 14–2 (T. Mulvehill), and 14–3 (D.Mulvehill). Tim Mulvehill worked for Emery out of an office location and also out of his home in Seattle, Washington; Dan Mulvehill worked for Emery out of his home in Seattle.

These three former Emery loan officers state that they "always" (O'Neal) or "usually" (T. and D. Mulvehill) worked in excess of forty hours per week but were not paid any premium for hours worked in excess of forty hours per week. Emery did not require them to record or report the number of hours they worked and, to their knowledge, Emery classified all its loan officers as exempt from overtime pay requirements.

**\*2** All three Plaintiffs swear in their statements that they were never compensated at the minimum wage for time worked over twenty hours per week and that this was consistent with Emery's pay plan for *all* its loan officers. (All Pl. Stmts. ¶¶ 5, 8; O'Neal and Dan Mulvehill Stmts. ¶ 3.) Despite this assertion, Tim Mulvehill states that under *his* compensation plan, Emery paid him no more than thirty hours per week at minimum wage. (Tim Mulvehill Stmt. ¶ 3.)

Plaintiffs assert that all loan officers working for Defendants had to execute the same or similar employment agreement. However, none of the claims Plaintiffs had the same employment contract with Emery. O'Neal signed a Loan Officer Agreement with Emery that did not specify whether she was a part-time or full-time employee, and it guaranteed her compensation in the amount of twenty hours per week at minimum wage if her earned commission was less than that amount.[1] Tim Mulvehill signed a Loan Officer Agreement with Emery that specified he was being hired as a full-time employee and, as such, was guaranteed compensation in the amount of thirty hours per week at minimum wage if his earned commission was less than that amount.[2] Dan Mulvehill never signed a Loan Officer Agreement with Emery.

Defendants responded to Plaintiff's Motion for Conditional Certification by filing an opposition memorandum and the declarations of nine employees: the vice president of Emery's Mortgage Division, four team managers, and four loan officers or loan originators (the terms are used interchangeably by Emery). According to Todd Cain, Mortgage Division Vice President, Emery Federal Credit Union employs approximately 376 loan officers in thirty-five states.[3] Loan officers are members of teams led by one of approximately sixty-one team managers employed by Emery. Cain states that all team managers are independently responsible for the operation of their respective teams and the loan officers they supervise, including setting hours of work (which vary between twenty and forty hours per week), the methods for recording and verifying hours worked, working arrangements (such as working from home or an office), and, within certain parameters, how the loan officers are compensated. Cain Decl. ¶ 8, Doc. 23–2. According to Cain, Emery classifies loan officers as non-exempt from overtime compensation requirements.

The declarations provided by Emery team managers and loan officers support Cain's assertion that Emery loan officers' hours, compensation, and timekeeping requirements are not uniform. Of the team managers to provide declarations, two have part-time and full-time loan officers on their teams (Michael Drapeau and Forrest Layton); one has only part-time loan officers (Asif Mazhar); and one does not specify whether her loan officers are part-time or fulltime (Julia Galbraith).

Michael Drapeau requires the loan officers on his team to record their time worked on time sheets, and he prohibits them from working more than the number of hours they agreed to work (twenty to thirty hours per week for part-time employees, forty hours per week for fulltime employees). Drapeau Decl., Doc. 23–3. All the loan officers on his team are paid commission on the loans they close. If Drapeau's loan officers close only one loan during a two-week pay period, the amount they are paid exceeds the amount they would receive if they were paid minimum wage for the hours they worked. If a loan officer on his team does not close at least one loan during the pay period, he or she is paid California's minimum wage for whatever hours he or she worked during the pay period.

**\*3** The loan originators on Forrest Layton's team all work twenty or fewer hours each week regardless whether they are characterized as part-time or full-time. Layton Decl., Doc. 23–8. If a loan originator reporting to Layton sells no loans during a two-week pay period, he or she will be paid California's minimum wage for forty hours of work. Layton's loan originators very rarely fail to sell at least one loan during a pay period.

Asif Mazhar manages four loan originators and one loan processor on his team in Tustin, California. Mazhar Decl., Doc. 23–9. All his loan originators work part-time, and all work in an office. Mazhar keeps track of the hours that the employees on his team work, and he gives the time sheets to the employees for their review, correction (if necessary), and signature. The loan officers are paid an amount each bi-weekly pay period based on the California minimum wage for forty hours of work or the amount they earned in commission that period, whichever is higher.

The loan originators on Julia Galbraith's team in South Jordan, Utah, work a maximum of twenty or thirty hours per week. Galbraith Decl., Doc. 23–6. Approximately half of her team work from home. If a loan originator does not close at least one loan in a two-week pay period, he or she is paid Utah's minimum wage for whatever hours the employee worked during that period. At the end of a two-week pay period, Galbraith contacts any loan originator on her team who does not have any commissions for that period and asks him or her how many hours they worked. Galbraith completes a time sheet based on what the loan originator tells her, and the loan originator makes any needed changes. Galbraith instructs all her employees that they generally are not permitted to work more than the number of hours they agreed they would work when they

O'Neal v. Emery Federal Credit Union, Not Reported in F.Supp.2d (2013)

were hired and that they must ask for authorization if they are going to work more than their agreed hours. No employee on Galbraith's team has ever asked to work more than their assigned hours for the week.

Each of these four team managers stated in their declarations that they and the members of their teams have little, if any, interaction with members of other teams; have no information about how loan officers/loan originators on other teams are compensated or how many hours they work; and have no opportunity or reason to observe the work of other loan officers/loan originators.

Of the four loan originators/loan officers to provide declarations in support of Defendants' opposition to conditional certification, two work in California and two work in Utah. Anthony Bitmayl works as a loan originator in California. Bitmayl Decl., Doc. 23–1. When he was hired, Bitmayl's team manager instructed him that he was not to work more than his assigned number of hours each week, and Bitmayl does not work more than thirty hours per week. He keeps track of the number of hours he works each day and, at the end of every two-week period, signs the time sheet and gives it to his team manager. During a two-week period in which he does not close a loan, Bitmayl is paid $8.00 an hour for every hour recorded on his time sheet. When he does close a loan during the pay period, his commission is greater than if he were paid $8.00 an hour for his hours worked. Satina Gulati also works as a loan originator in California. The information in her declaration is identical to that in Bitmayl's declaration. Gluati Decl., Doc. 23–7.

**\*4** Derrick Frazier works as a loan originator in Utah. When he was hired, his team manager instructed him that he should not work more than his assigned number of hours each week. Frazier Decl., Doc. 23–4. If he wants to work more than his assigned hours, he first must ask for advance authorization from his team manager. Frazier does not work more than thirty hours each week. If Frazier does not earn any commissions during a pay period, he reports the number of hours he worked to his team manager who notes Frazier's time on a time sheet. Frazier reviews the time sheet for accuracy, makes any needed changes, and returns it to his team manager. During a two-week period in which he does not close a loan, Frazier is paid $7.25 an hour for every hour he reported working during the time period. If he closes at least one loan in a pay period, the commission he receives exceeds what he would receive if he were paid $7.25 an hour for all hours he worked during that period. Brett Fuller also works as a loan originator in Utah. The information in Fuller's declaration is identical to that in Frazier's declaration. Fuller Decl., Doc. 23–5.

## II. ANALYSIS

### A. Right of Action under the FLSA

The FLSA requires that all hours worked must be compensated. *See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944) ("Congress enacted the FLSA to guarantee either regular or overtime compensation for all actual work or employment."); *Chao v. Tradesmen Int'l, Inc.,* 310 F.3d 904, 907 (6th Cir.2002) ("The FLSA requires employers to pay at least a specified minimum wage for each hour worked, *see* 29 U.S.C. § 206 ."). The FLSA also requires covered employers to pay overtime wages to employees who work more than forty hours per week unless the employees fall into the category of exempted employees.[4] *See* 29 U.S.C. §§ 207(a)(1) and 213(a).

> Congress enacted the [FLSA] ... "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work," *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 460, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948). "Consistent with this goal, the Act requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week." *Acs v. Detroit Edison Co.,* 444 F.3d 763, 764–65 (6th Cir.2006) (internal quotation marks omitted).

*Wood v. Mid–America Management Corp.,* 192 F. App'x 378, 379–380 (6th Cir.2006). The statute provides affected employees with a private right of action to recover their unpaid compensation. 29 U.S.C. § 216(b). Similarly situated employees collectively may recover compensation from their employer under the FLSA in opt-in, class-action litigation. 29 U.S.C. § 216(b); *see also White v. Baptist Mem. 'l Health Care Corp.,* 699 F.3d 869, 877 (6th Cir.2012); *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006). An employee may become a party plaintiff in a collective class action if he consents, in a writing filed with the Court, to become a party. *Id.*

### B. Collective Class Certification Standard

**\*5** The FLSA does not prescribe a procedure for instituting and managing a collective action against an employer. However, courts generally employ a two-tiered certification approach for deciding whether a suit can proceed as a collective action. *Baptist Mem. 'l,* 699 F.3d at 877; *Comer,* 454 F.3d at 546; *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 583–85 (6th Cir.2009).

First, in what is referred to as the "initial notice" stage, the Court must determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members. *White v. MPW Indus. Servs. Inc.,* 236 F.R.D. 363, 366 (E.D.Tenn.2006). The Court will authorize such notice if the plaintiff demonstrates that she is "similarly situated" to the employees she seeks to notify of the pendency of the action. Because the court has minimal evidence at this stage, which generally occurs prior to discovery, the determination is made using a "fairly lenient standard" that "typically results in conditional certification of a representative class." *Baptist Mem. 'l,* 699 F.3d at 877 (citing *Comer,* 454 F.3d at 547); *see also O'Brien,* 575 F.3d at 584.

Due to the lenient standard at the initial notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues when deciding whether to conditionally certify a class. *See, e.g., Beetler v. Trans–Foam, Inc.,* No. 5:11–cv–132, 2011 WL 6130805, at *3 (N.D.Ohio Dec.8, 2011); *Burdine v. Covidien, Inc.,* No. 1:10–cv–194, 2011 WL 2976929, at *2–4 (E.D.Tenn. June 22, 2011); *Seger v. BRG Realty, LLC,* No. 1:10–cv–434, 2011 WL 2020722, at *3 (S.D.Ohio May 24, 2011). However, "[w]hile the required level of proof is minimal and lenient at the first stage, the court should exercise caution in granting conditional certification, because the Sixth Circuit Appellate Court has held 'that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable.' " *Snide v. Discount Drug Mart, Inc.,* No. 1:11–cv–244, 2011 WL 5434016, at *4 (N.D.Ohio Oct.7, 2011) (quoting *Albright v. Gen. Die Casters, Inc.,* 2010 WL 6121689, at *1 (N.D.Ohio July 14, 2010)). Once an action is conditionally certified, notice is provided to the putative collective class members and discovery proceeds.

At the second stage of the proceedings, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims. At that stage, "district courts apply a 'stricter standard' and more closely examine 'the question of whether particular members of the class are, in fact, similarly situated.' " *Baptist Mem'l,* 699 F.3d at 877 (quoting *Comer,* 454 F.3d at 547).

Plaintiff's motion concerns the first of these two tiers of the collective action standard: conditional certification. She seeks to certify a class defined as all current and former loan officers working for Defendants from the date three years from the date the Court enters this order to the

present. To succeed, she must "submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists" for the purposes of this action. *Olivo v. GMAC Mortg. Corp.,* 374 F.Supp.2d 545, 548 (E.D.Mich.2004) (quoting *Severtson v. Philips Beverage Co.,* 137 F.R.D. 264, 266 (D.Minn.1991)). Plaintiff can show she and potential class members are similarly situated by showing that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien,* 575 F.3d at 585. Plaintiff also may establish the similarly situated requirement by showing that she and the potential class members "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation to all plaintiffs." *Id.*

### C. Motion to Strike

**\*6** As a precursor to a discussion of the evidence, the Court will address Defendants' motion to strike portions of the statements filed in support of Plaintiff's conditional certification motion. Defendants' motion addresses the portions of Plaintiffs' statements concerning the employment practices and/or employment agreements of other Emery loan officers—assertions made on Plaintiffs' "knowledge," "understanding," or "experience and observation" but lacking in specific supporting facts. For example, Plaintiffs claim to know the following:

- that all loan officers working for Emery "always" (O'Neal) or "usually" (T. Mulvehill and D. Mulvehill) work more than forty hours per work week,

- that all Emery loan officers are classified as exempt from overtime pay requirements and are denied overtime pay,
- that Emery pays all its loan officers no more than twenty hours per week under its pay plan,[5]

- that all loan officers are not required to record or report their hours worked, and
  - that all loan officers working for Emery sign the same or similar employment agreement.[6]

Plaintiffs do not explain the source of this alleged knowledge or the circumstances giving rise to their belief that the statements are true as to all loan officers employed by Defendants.

Relying on *Harrison v. McDonald's Corp.,* 411 F.Supp.2d 862, 865 (S.D.Ohio 2005), and *Landsberg v. Acton Enters.,* 2006 WL 3742221, at *4 (S.D.Ohio Dec.15,

O'Neal v. Emery Federal Credit Union, Not Reported in F.Supp.2d (2013)

2006), Defendants assert that this Court is limited to considering admissible evidence only in connection with a § 216(b) motion for conditional certification. Federal Rule of Evidence 602 requires a witness to have personal knowledge of any matter about which he testifies. Defendants argue that because Plaintiffs do not have personal knowledge of other Emery loan officers' employment details or compensation, this Court may not consider any statements in the Plaintiffs' statements regarding other loan officers.

Upon examination, the Court finds that the decisions in *Harrison* and *Landberg* are not as relevant as other case law on this topic. Both the *Harrison* and *Landberg* courts struck portions of plaintiffs' statements in support of their motions for conditional certification because they were hearsay. *Harrison,* 411 F.Supp.2d at 866–67 (striking portions of plaintiffs' affidavits stating they had heard other employees complain to management about pay shortages); *Landberg,* 2006 WL 3742221, at *5 (excluding portions of plaintiff's statement concerning comments he heard other store managers make during dinner). Defendants in this case do not contend that Plaintiffs' sworn statements contain inadmissible hearsay. Rather, they dispute the extent of Plaintiffs' personal knowledge regarding the compensation and practices of other Emery loan officers.

Plaintiffs' statements in this case regarding other Emery loan officers are based on their "knowledge and understanding" of Defendants' employment practices. Several courts to consider similar statements in support of certification motions under 29 U.S.C. § 216 have refused to strike them. For example, in *Carter v. Jackson–Madison Cnty. Hosp.,* No. 1:10–cv1155, 2011 WL 1256625, at * 17 (W.D.Tenn., March 31, 2011), the court found that the plaintiff's statements about her employers' "unified policy" and the hours worked by other employees were admissible evidence based on the plaintiff's personal knowledge. *Id.* (citing *MPW Indus. Servs., Inc.,* 236 F.R.D. at 369 ("[I]t is reasonable to infer from the evidence submitted that [plaintiffs], as employees of [defendant], would have learned during the normal course of their employment how the company operates and what the company's policies were."); *see also Noble v. Serco, Inc.,* No. 3:08–76–DCR, 2009 WL 3154252, at *3 (E.D.Ky. Sept.28, 2009) (finding, where declarants stated that they "got to know several other" employees working in the same capacity, that it was "reasonable to infer" that the declarants would have talked to these other employees about their pay structures and hours worked and thus could have personal knowledge regarding those subjects). Under this reasoning, a plaintiff's statements regarding her employer's employment practices are made from personal

knowledge and are thus admissible under Evidence Rule 602 if the plaintiff has gotten to know fellow employees, observed them during the course of their employment, and talked with them about employment practices governing their work.

**\*7** Alternatively, some courts have assumed that plaintiffs' statements describing the experience of co-workers are inadmissible but consider them nonetheless, finding that "the better approach is to consider those averments in the first stage of a collective action proceeding," particularly when no discovery has taken place. *Jesiek v. Fire Pros, Inc.,* 275 F.R.D. 242, 246–47 (W.D.Mich.2011); *see also Carter v. Indiana State Fair Comm'n,* No. 1:11–cv–852, 2012 WL 4481350, at * 3 (S.D.Ind., July 17, 2012) ("[T]he inadmissible statements contained in Plaintiffs' affidavits should be considered in the overall calculus of whether Plaintiffs can make a modest showing.").

Plaintiffs in this case do not provide a factual basis sufficient to demonstrate that they "got to know" other Emery loan officers. Thus, their statements regarding other Emery loan officers likely are not admissible under Rule of Evidence 602. Nonetheless, the Court will consider them for the purposes of evaluating Plaintiffs' motion for conditional certification. Unlike in *Harrison,* no discovery has taken place in this case, and Plaintiffs' counsel say they do not have access to contact information for other potential plaintiffs from whom to solicit statements. *See Harrison,* 411 F.Supp.2d at 870 (striking hearsay statements from plaintiff's affidavit when plaintiff had access to contact information for approximately 300 potential class members).[7]

However, because Plaintiffs' statements in this case do not establish the basis of their knowledge about other employees' experiences, these portions of the statements are entitled to little or no weight. The appropriate method for handling these infirmities is to disregard them in inquiring whether Plaintiffs and the absent potential class members are similarly situated. *See Mathews v. ALC Partner, Inc.,* No. 2:08–cv–10636, 2009 WL 2591497, at *4–5 (E.D.Mich. Aug.24, 2009) (denying motion to strike but disregarding portions of the plaintiffs' declarations because plaintiffs did not establish the basis for their knowledge). Accordingly, Defendant's motion to strike is DENIED.

### D. Conditional Certification—Similarly Situated Plaintiffs

To be granted conditional certification of her proposed class, Plaintiff must provide evidence sufficient to support an inference that her claims and those of other Emery loan

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

O'Neal v. Emery Federal Credit Union, Not Reported in F.Supp.2d (2013)

officers are "unified by common theories of defendant's statutory violations" or that she and potential class members "suffer from a single, FLSA-violating policy." *O'Brien,* 575 F.3d at 583. Plaintiff's theories of Defendants' statutory violations are that (1) Defendants "suffered and permitted" all its loan officers to work more than forty hours per week to complete their job responsibilities but did not pay them overtime compensation because they classified loan officers as exempt from overtime premium compensation, and (2) Defendants paid their loan officers for no more than twenty hours per week at the state's minimum wage, even if they worked more than twenty hours.

**\*8** While the evidentiary threshold for demonstrating that similarly situated employees exist is not high, a plaintiff must demonstrate a factual nexus—that is, something more than mere allegations—to warrant conditional certification and the delivery of notice to potential class members. Allegations in declarations need not be "highly specific," and "it is not necessary for the declarants to provide such details as the dates and times they worked overtime hours for which they were not compensated." *Noble,* 2009 WL 3154252, at \*3. However, to warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has *actual knowledge* about other employees job duties, pay structures, hours worked, and whether they were paid for overtime hours. *Id.*

Plaintiffs whose declarations contain facts that support an inference that they have actual knowledge of company-wide employment practices typically succeed in obtaining conditional certification. For example, first-hand observations or conversations with co-workers can be sufficient to meet the lenient standard for demonstrating that a similarly situated class of employees exists. In *Searson v. Concord Mortgage Corp.,* mortgage loan officers adequately supported their claim that they were subject to a uniform, company-wide policy that failed to provide them minimum wage and overtime compensation in violation of the FLSA when they submitted affidavits of seven loan officers containing information based on their observations of other employees, and when their employment contracts expressly limited compensation to commissions. *Searson,* No. 07–cv–3909, 2009 WL 3063316, at \*5 (E.D.N.Y. Sept.24, 2009) (granting motion for conditional certification where loan officers stated in their affidavits that they observed other loan officers in their respective branches working from fifty-five to seventy hours per week and that their compensation was limited to commissions with no overtime pay or guaranteed salary); *see also Jesiek,* 275 F.R.D. at 246 (granting motion for conditional certification when

plaintiffs averred, based on "first hand observations and conversations with other employees," that travel time to the job site was not included in time worked for the purposes of calculating overtime); *Rosario v. Valentine Ave. Discount Store, Co., Inc.,* 828 F.Supp.2d 508, 515 (E.D.N.Y.2011) (noting that "courts regularly grant conditional certification of collective actions based on employee affidavits ... identifying similarly situated employees by name"); *Moore v. Eagle Sanitation, Inc.,* 276 F.R.D. 54, 58 (E.D.N.Y.2011) (granting conditional certification when each named plaintiff submitted an affidavit specifically naming additional coworkers who discussed with them the fact that they worked in excess of forty hours per week without being paid overtime); *Petersen v. Cleveland Institute of Art,* No. 1:08–cv–1217, 2011 WL 1230267, at \*4 (N.D.Ohio March 30, 2011) (granting conditional certification when plaintiff averred that, over a period of three years, he had observed approximately fifteen technical assistants in more than one department working in excess of forty hours per week and working beyond the weeks they were contracted to work).⁸

**\*9** Another example of the nature of evidence found to constitute a factually sufficient basis to support conditional certification is found in *Carter v. Jackson–Madison County Hospital District,* No. 1:10–cv–1155, 2011 WL 1256625 (W.D.Tenn. March 31, 2011). In *Carter,* the plaintiff hospital employee supported her certification motion with her affidavit in which she explained that the hospital had a computerized time and attendance system that automatically deducted a thirty-minute meal period per work shift but that she and other hourly employees performed compensable work during those uncompensated meal breaks. *Id.* at \* 14. She explained that the workload and staffing at the hospital did not allow for work-free meal breaks; that she and her co-workers were expected to respond to requests from patients, other coworkers, and supervisors during these unpaid meal breaks; and that supervisors were aware that hourly employees were not completely relieved of their work duties during these uncompensated meal breaks. *Id.* at \* 15. The court in *Carter* concluded that the "factually detailed complaint, affidavit and consent form of the named plaintiff" and two additional employees were sufficient to make a modest factual showing that she was similarly situated to prospective class members due to the hospital's unified policy regarding uncompensated meal breaks. *Id.* at \* 18.

Plaintiff's evidence on the issue of whether she is "similarly situated" to the employees she seeks to notify of the pendency of the action consists of the sworn statements of O'Neal, Tim Mulvehill, and Dan Mulvehill as well as the Loan Officer Agreements executed by O'Neal and Tim Mulvehill. The Plaintiffs state that they worked more than

forty hours per week but were neither paid overtime nor the minimum hourly wage for hours worked in excess of twenty (or thirty) a week.

The Court does not make credibility determinations at this stage, and it would be improper to accept Defendants' evidence over conflicting evidence from Plaintiffs. For example, the declarations of Emery team managers stating that they keep track of the hours worked by loan officers and do not permit them to work more than their contracted hours does not prove that Plaintiffs did not work overtime hours for which they were not compensated. However, these declarations do serve as evidence the alleged FLSA violations suffered by Plaintiffs were not the product of a company-wide policy. If Plaintiff had provided evidence in support of her allegations that others are similarly situated, any conflicts and reasonable inferences would have to be resolved in her favor at this preliminary stage of conditional certification. However, Plaintiff has failed to provide support for her allegations that Defendants had pay policies that resulted in the denial of minimum wage and overtime pay to all its loan officers.

None of the three loan officers to submit affidavits in support of Plaintiff's motion for conditional certification in this case attested to personally observing any other loan officer work more than his or her contracted number of hours or more than forty hours per week. None of the Plaintiffs averred that they spoke to any other Emery loan officer about hours worked or compensation, nor do they claim to have discussed these matters in any way with any other Emery loan officer. None of the Plaintiffs provide the names of any co-workers who worked hours for which they were not paid. O'Neal worked from home: there is nothing in her statement to indicate that she spoke to any other loan officers to determine whether her work experience was similar to theirs. The same is true of Dan Mulvehill. Tim Mulvehill worked out of an office location and his home office; nonetheless, he does not state that he spoke to any other loan officer about hours worked or compensation or specifically witnessed any loan officers performing work in excess of the hours they contracted to work.

**\*10** In short, the statements provided in support of Plaintiff's motion for conditional certification do not include facts from which the Court could draw an inference that other Emery loan officers worked more than their contracted hours or worked more than forty hours a week without being paid overtime compensation. Evidence that Plaintiff herself and the two opt-in Plaintiffs have been deprived of overtime or minimum wage compensation is not sufficient to demonstrate a class of similarly situated employees absent facts from which the Court could draw

an inference that they have actual knowledge that their experience was not unique. These three individuals worked separate and apart from other employees performing the same or similar job duties for the employer. Therefore, unlike in cases such as *Carter* and *White* where the plaintiffs worked amongst their peers and could observe their employment experiences, it is not reasonable in this case to "infer" that Plaintiffs would have learned during the normal course of employment how the company operates and what company policies were.

Nor is the Complaint sufficiently detailed with respect to the alleged statutory violation that this Court can infer a uniform policy with respect to uncompensated hours worked by loan officers. Even their small sample size of three belies their claim that Defendants' practice was to pay its loan officers for only twenty hours per week at minimum wage (as Tim Mulvehill was guaranteed payment for thirty hours per week). And Plaintiffs' statements that they believe all loan officers had to sign the same or similar employment agreement with Defendants are belied by the fact that of the three, only two signed Loan Officer Agreements with Emery, and those two Agreements differ with respect to the minimum compensation to be paid at minimum wage.

A district court in New Jersey to examine a motion to conditionally certify an FLSA class based upon unsupported assertions put it this way:

> To make a meaningful decision about whether certain people are similarly situated, this Court must have, as a factual foundation, information about who is in the potential class and the basis for inferring that the potential members are similarly situated. [The plaintiff's] declaration does not provide this. [The plaintiff] makes vague, general statements about "all Loan Officers employed by [the defendant]," but does not define who he is referring to and how he has knowledge of them. This Court cannot determine, from this declaration, whether [the plaintiff] actually knew other particular officers who were required to perform unpaid overtime work, and what he knew specifically about their unpaid work. Conspicuously absent from the declaration is any specific statement about even one particular loan officer known to [the plaintiff] as having been required to perform unpaid overtime work....

> Nor does [the plaintiff's] statement provide a basis to generalize to other [of defendant's] offices.... [The plaintiff] provides no factual foundation for his statement that all other loan officers were required to work unpaid overtime. This Court has no factual basis to infer that there are loan officers in other offices subject to such requirements.

**\*11** *Armstrong v. Weichert Realtors,* No. 05–3120, 2006 WL 1455781, at \*1–2 (D.N.J. May 19, 2006). Absent some factual showing that similarly situated employees exist or that the defendant's pay practices were consistent, conditional certification is improper. *See, e.g., Villanueva–Bazaldua v. TruGreen Limited Partners,* 479 F.Supp.2d 411, 416 (D.Del.2007) (denying certification motion where the plaintiff submitted no evidence that other potential class members existed and the defendant submitted evidence that militated against class treatment); *Boyd v. Alutiiq Global Solns.,* No. 11–cv–753, 2011 WL 3511085, at \*6 (N.D.Ill. Aug.8, 2011) ("Plaintiffs [did] not identify to whom they spoke, when those conversations occurred, or what specifically was discussed that would lead them to conclude that pay practices were 'consistent.' Nor [was] there any evidence that Plaintiffs' supervisors were acting in accordance with any global plan or that those supervisors had instructed personnel at other bases to shortchange themselves on their time sheets.").

Defendants' evidence demonstrates that its 376 loan officers are managed by one of sixty-one team managers across thirty-five states. These team managers had their own practices with respect to how they kept track of loan officers' hours worked and how they compensated their loan officers. Defendants' evidence that loan officers did not work more than the number of hours they were contracted to work—and that team managers kept track of hours worked in order to ensure this—does not diminish Plaintiffs' statements to the contrary. However, given that Plaintiffs have no evidence other than their own limited experience with respect to hours worked and compensation

paid, there is not enough information to support a finding that Defendants have a company-wide policy of violating the FLSA.

Despite the fact that she need make only a "modest factual showing" to satisfy the "similarly situated" requirement of § 216(b) at the conditional certification phase, *Comer v. WalMart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006), Plaintiff in this case has not done so: she has not met her standard of proof that her FLSA claim is not individual to her and the two loan officers to opt into the suit thus far. Because Plaintiff has not made the showing required for conditional class certification under 29 U.S.C. § 216(b), the Court need not consider Plaintiff's proposed notice to collective class members.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Conditional Certification (Doc. 13) is DENIED. Additionally, Defendants' Motion to Strike (Doc. 22) is DENIED.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4013167

Footnotes

1   O'Neal's written loan officer employment agreement with Emery provided the following with respect to compensation:
    In any month in which the Loan Officer shall earn a commission in an amount in the aggregate which is less than his/her State of Domicile's minimum hourly wage times 20 hours per week, Loan Officer will be paid the minimum wage less commission received and his/her employment status shall be subject to review or termination for lack of production.
    O'Neal Agreement ¶ 6.1.1, Doc. 14–1 at Page ID 70–71.

2   Tim Mulvehill's employment agreement provided, in relevant part, the following with respect to compensation:
    In any month in which the Loan Officer shall earn a commission in an amount in the aggregate which is less than his/her State of Domicile's minimum hourly wage times (select one)
    _____20 hours (PART TIME EMPLOYEE)
    OR
    _____30 hours per week (FULL TIME EMPLOYEE)
    Loan Officer will be paid the minimum wage less commission received and his/her employment status shall be subject to review or termination for lack of production.
    T. Mulvehill Agreement ¶ 6. 1. 1, Doc. 14–2 at Page ID 84. Tim Mulvehill initialed the second of the two blanks, thereby indicating that he would be a full-time employee compensated for thirty hours per week at minimum wage if his commission was less than that amount.

3   Cain declares that Emery Financial Services, Inc., does not employ any loan officers. Only Emery Federal Credit Union employs loan officers. Cain Decl. ¶ 6, Doc. 23–2, at Page ID 142.

4    Individuals "employed in a bona fide executive, administrative, or professional capacity" are exempt from the FLSA's overtime pay requirement. 29 U.S.C. § 213(a)(1).

5    Despite Plaintiffs' assertions that Defendants pay loan officers no more than twenty hours per week, Tim Mulvehill states that under *his* compensation plan, Emery paid him up to thirty hours per week at minimum wage. T. Mulvehill Stmt. ¶ 3.

6    Although O'Neal and Tim Mulvehill state that it was their "understanding" that "all loan officers working for Emery had to execute the same or similar agreement," Dan Mulvehill did not sign a Loan Officer Agreement with Emery.

7    Defendants argue that this Court is bound by the language in *Harrison* stating that only admissible evidence may be considered in connection with a § 216(b) motion. The Court disagrees. First, *Harrison* is factually distinguishable as discovery had taken place in that case. Second, contrary to Defendants' assertion, the doctrine of stare decisis does not compel one district court judge to follow a decision of another. *Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991); *see also Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1124 (7th Cir.1987); *Starbuck v. City and Cnty. of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977); and *Hasan v. Ishee,* No. 1:03–cv–288, 2010 WL 6764154, at *7 (S.D.Ohio Dec.29, 2010) (citing cases).

8    Notably, when a plaintiff's observations of other employees' activities forms the evidentiary basis for a finding that there are similarly situated employees, courts may limit the collective class to employees at the location where the plaintiff worked. *See, e.g ., Snide v.Discount Drug Mart, Inc.,* No. 1:11–cv–244, 2011 WL 5434016, at *5 (N.D.Ohio Oct.7, 2011) (granting conditional certification motion based on the plaintiff's averment that she witnessed other hourly employees working "off the clock" but limiting the collective class to employees at the single store location where plaintiff worked); *Beetler v. Trans–Foam, Inc.,* No. 5:11–cv–132, 2011 WL 6130805, at *4 (N.D.Ohio Dec.8, 2011) (limiting collective class to full-time laborers at single facility because plaintiff's affidavit describing numerous conversations with former coworkers did not support his claim that the overtime policy extended beyond that facility).

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

PAGE SEPARATOR

Opalinski v. Robert Half Intern., Inc., Not Reported in F.Supp.2d (2011)

KeyCite Red Flag - Severe Negative Treatment
Reversed by Opalinski v. Robert Half Intern. Inc., 3rd Cir.(N.J.), July 30, 2014

2011 WL 4729009
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

David OPALINSKI and James McCabe., Plaintiffs,
v.
ROBERT HALF INTERNATIONAL, INC. and
Robert Half Corporation, Defendants.

Civil Case No. 10–2069 (FSH)(PS).
|
Oct. 6, 2011.

**Attorneys and Law Firms**

Anthony L. Marchetti, Marchetti Law, P.C., Cherry Hill, NJ, for Plaintiffs.

Alexander W. Wood, Paul Hastings LLP, New York, NY, Adam N. Saravay, McCarter & English, LLP, Newark, NJ, for Defendants.

**Opinion**

*OPINION & ORDER*

HOCHBERG, District Judge.

**\*1** This matter comes before the Court upon Defendants' Motion to Compel Arbitration and Dismiss and Plaintiffs' Motion to Facilitate Notice to Potential Plaintiffs Informing Them of their Right to Opt–Into This Case Under the FLSA, 29 U.S.C. § 216(b). The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Fed.R.Civ.P. 78.

**I.** *BACKGROUND*[1]
Plaintiffs David Opalinski and James McCabe, former employees of Robert Half International, Inc. ("RHI"), an international staffing firm, bring this action on behalf of themselves and other individuals "who have performed duties as 'staffing managers' for [RHI]" alleging that RHI failed to pay them overtime and improperly classified them as overtime-exempt employees in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

Compl. ¶ 1. Plaintiffs contend that according to both the "duties" and "salary basis" tests, RHI improperly classified them as overtime-exempt employees under the FLSA, thereby depriving them of time and one half overtime pay for hours worked in excess of 40 hours per week. Compl. ¶¶ 31–33.

Plaintiffs bring this as a collective action pursuant to 29 U.S.C. § 216(b) and seek to notify similarly situated current and former RHI "staffing managers" of their rights to join this action. Defendant moves to compel arbitration based on arbitration clauses in both Opalinski's and McCabe's employment agreements. Plaintiffs argue that: (1) the arbitration clauses in Opalinski's and McCabe's employment agreements are unenforceable since they would preclude vindication of statutory rights by RHI's Staffing Managers; (2) Defendant has waived its right to compel arbitration; and (3) the Court should defer ruling on Defendant's Motion to Compel Arbitration until after the Plaintiffs send out notices to see which employees opt into the action and which of them have enforceable arbitration provisions in their employment agreements.

**II.** *DISCUSSION*

**A. The Arbitration Clauses**
Federal law presumptively favors the enforcement of arbitration agreements, *see Harris v. Green Tree Financial Corp.,* 183 F.3d 173, 178 (3d Cir.1999). When determining whether to grant a Motion to Compel Arbitration, the Court must consider only whether 1) a valid arbitration clause exists; and 2) whether the dispute falls within the contours of that agreement; *see Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir.2005). The Federal Arbitration Act ("FAA") provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The Supreme Court has made clear that "the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms," *Stolt–Nielsen v. AnimalFeeds Int'l Corp.,* ––– U.S. ––––, ––––, 130 S.Ct. 1758, 1773, 176 L.Ed.2d 605 (2010) (internal quotations omitted), and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Opalinski v. Robert Half Intern., Inc., Not Reported in F.Supp.2d (2011)

**\*2** Opalinski and McCabe signed employment agreements with slightly different arbitration clauses. Opalinski's employment agreement provides:

> Employer and Employee agree that, to the fullest extent permitted by law, *any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement,* whether based on contract or tort or otherwise ... shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. Claims subject to arbitration shall include contract claims, tort claims, or claims relating to compensation, as well as claims based on any federal, state, or local law, statute, or regulation.... This Agreement shall be governed by the Federal Arbitration Act ("FAA"). The arbitrator shall apply the same substantive law that would apply if the claims were brought in a court of law.... To the extent permitted by law, the parties agree that neither punitive damages nor attorneys' fees may be awarded in an arbitration proceeding required by this agreement. THE PARTIES UNDERSTAND AND AGREE THAT THIS AGREEMENT CONSTITUTES A WAIVER OF THEIR RIGHTS TO A TRIAL BY JURY OF ANY OF THE ABOVE MENTIONED CLAIMS OR CONTROVERSIES.

Ex. A to Decl. of Lynne Smith in Support of Defendants' Motion to Compel Arbitration and Dismiss ("Smith Decl.") ¶ 22 (emphasis added, capitalization in original). McCabe's employment agreement provides:

> *Any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement,* whether based on contract or tort or otherwise ... shall be submitted to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. This Agreement shall be governed by the United States Arbitration Act .... The parties agree that neither punitive damages nor attorneys' fees may be awarded in

an arbitration proceeding required by this Agreement.

Smith Decl., Ex. B ¶ 22 (emphasis added).

Plaintiffs' claim for failure to pay overtime wages in violation of the FLSA plainly arises out of and is related to their employment with RHI and is therefore covered by the arbitration clauses in both the Opalinski and McCabe employment agreements. Plaintiffs do not contest this, but instead, argue that McCabe's arbitration clause, and possibly those of other potential plaintiffs, cannot be enforced under New Jersey law because it would preclude him and similarly situated potential class members from vindicating their statutory rights.

Plaintiffs cite *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.,* 168 N.J. 124, 773 A.2d 665 (2001), in which the New Jersey Supreme Court held that an ambiguous arbitration clause in an employment agreement will not be read to apply to a plaintiff's statutory claims without "some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." *Id.* at 135, 773 A.2d 665. However, *Garfinkel* is easily distinguishable from this case. In *Garfinkel,* the arbitration clause in plaintiff's employment agreement only applied to claims arising from the employment agreement itself leading the court to find that the "language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself." *Id.* at 134, 773 A.2d 665. Here, Plaintiffs' arbitration clauses clearly apply to claims arising out of or relating to Plaintiffs' *employment,* not just their employment agreements. Furthermore, as Defendants point out, Plaintiffs ignore the decision by the New Jersey Supreme Court the following year in *Martindale v. Sandvik,* 173 N.J. 76, 800 A.2d 872 (2002), in which that court distinguished *Garfinkel,* holding that no explicit reference to statutory claims in an arbitration clause is necessary for that clause to apply to statutory claims. *Id.* at 96, 800 A.2d 872. The *Martindale* court found that plaintiff's arbitration clause in that case, which is similar to the clauses at issue in this case, was sufficiently broad to reasonably encompass plaintiff's statutory causes of action. *Id; see also Williams v. Wash. Mut. Bank,* No. 07–5559(JAG), 2008 U.S. Dist. LEXIS 104949, at *12–13 (D.N.J. Dec. 29, 2008) (agreement to arbitrate "[a]ny and all disputes that involve or relate in any way to my employment (or termination of employment)" applies to plaintiff's statutory New Jersey Conscientious Employee Protection Act claim); *Blumert v. Wells Fargo & Co.,* No. A–5147–09T1, N.J.Super. Unpub. LEXIS 2199, at *9–12, 2011 WL 3557528 (N.J.Sup.Ct. Aug. 15, 2011) (compelling arbitration of plaintiff's statutory claims, finding them covered by an arbitration clause encompassing "any and all claims or controversies arising

out of or related to my ... employment, or termination" that did not specifically mention statutory claims).

**\*3** Next, Plaintiffs rely on a series of cases that they argue stand for the proposition that arbitration clauses that prohibit class claims should not be enforced if plaintiffs would not be able to vindicate the statutory rights underlying those claims in the absence of a class action. Plaintiffs argue that both *In re American Express Merchants' Litig.,* 554 F.3d 187 (2d Cir.2009) and *Kristian v. Comcast Corp.,* 446 F.3d 25 (1 st Cir.2006) recognize that certain types of claims would not be brought unless plaintiffs were permitted to bring them as a class. Plaintiffs argue based on these and subsequent decisions that Plaintiffs' FLSA claims are claims of low monetary value that will largely not be brought in the absence of a class action and that, since Defendants argue that class arbitration should not be permitted here, the Court should decline to enforce the arbitration clauses in Plaintiffs' employment agreements.

This entire argument presupposes that the arbitration clauses at issue prohibit class arbitration when, in fact, the arbitration clauses are clearly silent on the issue of class arbitration. The Third Circuit has held that "[w]here contractual silence is implicated, 'the arbitrator and not a court should decide whether a contract'[was] indeed silent' on the issue of class arbitration,' and 'whether a contract with an arbitration clause forbids class arbitration.' " *Vilches v. The Travelers Cos.,* 413 Fed.Appx. 487, 492 (3d Cir.2011) (quoting *Stolt–Nielsen,* 130 S.Ct. at 1771–72). In *Vilches,* because the arbitration clause at issue "was entirely silent on whether the parties had a right to proceed through class or collective arbitration," the Third Circuit referred the question of whether class arbitration was agreed upon to the arbitrator. *Vilches,* 413 Fed.Appx. at 492. While RHI argues, and Plaintiffs appear to agree, that *Stolt–Nielsen* prohibits class arbitration in any case in which the arbitration clause is silent on the issue of class arbitration, the Supreme Court did not make such a broad holding. Rather, the *Stolt–Nielsen* court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so," and found that class arbitration was not permitted in that case because the parties had specifically stipulated that they had reached no agreement on that issue. *Stolt–Nielsen,* 130 S.Ct. at 1775. Because Plaintiffs' vindication of statutory rights argument is premised on the preclusion of class arbitration of their claims against RHI, and the issue of whether class arbitration is permitted has not yet been decided and is an issue for the arbitrator, it would be premature for this Court to address that argument.[2]

Finally, Plaintiffs briefly argue that the arbitration clauses in Plaintiffs' employment agreements are invalid because both they and the remainder of the contract contain unenforceable provisions. Both Opalinski's and McCabe's employment agreements provide that "no claim against ... [RHI] shall be valid if asserted more than six months after Employee's Termination, and [the employee] waives any statute of limitations to the contrary." Smith Decl., Ex. A. ¶ 18 & Ex. B ¶ 18. McCabe's employment agreement provides that "neither punitive damages nor attorneys' fees may be awarded in an arbitration proceeding required by this Agreement." Smith Decl., Ex. B ¶ 22. Opalinski's employment agreement provides that "[t]o the extent permitted by law, the parties agree that neither punitive damages nor attorneys' fees may be awarded in an arbitration proceeding required by this Agreement." Smith Decl., Ex. A ¶ 22.

**\*4** The Court need not determine whether the requirement that claims be brought within six months of the employee's termination is enforceable, because, even if it is not, that provision can be severed from the agreement and the agreement to arbitrate can be enforced. *See Buckeye Check Cashing, Inc., v. Cardegna,* 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract); *see also Rent–A–Center, West, Inc. v. Jackson,* ––– U.S. ––––, ––––, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403 (2010) ("in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone"). Given that Plaintiffs' employment agreements actually contain severability clauses, which makes clear that the parties intended for the agreements to be enforced even if specific provisions are found to be invalid, Smith Decl. Ex. A. ¶ 17 & Ex. B ¶ 18, any unenforceable provision of the agreements can be severed. *See Kanef v. Delaware Title Loans, Inc.,* 587 F.3d 616, 625 (3d Cir.2009) (prohibition on recovery of attorney's fees in arbitration was unenforceable, but the "provision ... is severable pursuant to the severability clause of the agreement").

The provisions limiting Plaintiffs' recovery of fees can also be severed and therefore do not disturb the Court's conclusion that the parties agreed to arbitrate claims such as the one asserted by Plaintiffs. Defendant admits that the fee limitation in McCabe's employment agreement is unenforceable with respect to FLSA claims, since the FLSA specifically authorizes attorneys' fees for prevailing plaintiffs. However, the Third Circuit made clear in *Spinetti v. Services Corp. Int'l,* 324 F.3d 212 (3d Cir.2003) that such a fee limitation in an arbitration clause that

directly contradicts a statutory fee provision "can be severed without disturbing the primary intent of the parties to arbitrate their disputes." *Id.* at 214 (internal quotations omitted).

Therefore, the Court finds that Plaintiffs' arbitration clauses are valid and clearly apply to their FLSA claims.

### B. Waiver of Right to Compel Arbitration

Plaintiffs assert that RHI waived its right to compel arbitration based on the following arguments: (1) that RHI did not declare its intent to move to compel arbitration until May 2011 (over a year after this action was filed); (2) that RHI failed to note that the named Plaintiffs signed agreements containing arbitration clauses in its initial disclosures; (3) that RHI failed to state that it would seek to compel arbitration in the parties' original Joint Discovery Plan (though there is no dispute that RHI did state this intention in the parties' second Joint Discovery Plan); and (4) because RHI engaged in lengthy motion practice in contesting the admission of Plaintiffs' counsel *pro hac vice.* RHI counters that it has not waived its right to compel arbitration because: it pleaded arbitration as an affirmative defense in its Answer; it has not conducted any litigation on the merits; and it has not taken any discovery.

**\*5** "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commences and when both parties had engaged in extensive discovery." *PaineWebber Inc. v. Faragalli,* 61 F.3d 1063, 1068–69 (3d Cir.1995) (internal quotations and citations omitted). Following *PaineWebber,* the Third Circuit made clear that "a party waives the right to compel arbitration *only* in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown." *Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 233 (3d Cir.1997) (emphasis added).

The Third Circuit has stated that " 'prejudice is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct," *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 222 (3d Cir.2007) (quoting *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 925 (3d Cir.1992)), and has set forth "a nonexclusive list of factors relevant to the prejudice inquiry." *Id.* The *Hoxworth* factors are:

> [1] the timeliness or lack thereof of a motion to arbitrate ... [; 2] the

degree to which the party seeking to compel arbitration has contested the merits of the opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits practice; [5] its assent to the court's pretrial orders; and [6] the extent to which both parties have engaged in discovery.

*Hoxworth,* 980 F.2d at 926–27 (internal citations omitted). In applying the *Hoxworth* factors to this case, the Court notes that "not all the factors need to be present to justify a finding of waiver, and the waiver determination must be based on the circumstances and context of the particular case." *Nino v. Jewelry Exch., Inc.,* 609 F.3d 191, 209 (3d Cir.2010) (internal quotations omitted).

### 1. The Timeliness of RHI's Motion

RHI informed Plaintiffs of its intent to file a motion to compel arbitration in May 2011, just over a year after the case was filed, and filed its motion on July 1, 2011, over 14 months after the case was filed. RHI's delay exceeds the delay in *Hoxworth* (11 months) and in cases where no waiver was found. *See Palcko v. Airborne Express, Inc.,* 372 F.3d 588, 598 (3d Cir.2004) (38 days); *Wood v. Prudential Ins. Co. of America,* 207 F.3d 674, 680 (3d Cir.2000) (1½ months); *PaineWebber,* 61 F.3d at 1069 (2 months).

However, the Third Circuit, in *Nino,* acknowledged that the movant's offered explanation of its delay might merit consideration. 609 F.3d at 210. RHI claims that it moved to compel arbitration immediately after the Supreme Court's decision in *AT & T Mobility LLC v. Concepcion,* ––– U.S. ––––, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) changed the law at issue in this case. In *Concepcion,* the Supreme Court held that the FAA preempts state law that forces class arbitration on parties who have not consented to it. *Id.* at 1750–53. The court found that that the FAA preempted California's *Discover Bank* rule, which found class waivers in consumer arbitration agreements to be unconscionable, when that rule was used by the Ninth Circuit to affirm a denial of AT & T's motion to compel arbitration. *Id.* RHI contends that *Concepcion,* along with *Stolt–Nielsen,* changed the law regarding class arbitration, such that Plaintiffs in this case must arbitrate their claims individually and not as a class. Plaintiffs argue that *Concepcion* does not change the fact that *federal* law can still be used to find arbitration clauses with class waivers

unenforceable on the basis of precluding the vindication of statutory rights. This Court need not decide whether *Concepcion* effected the dramatic change in the legal landscape that RHI argues it did, though the Third Circuit has noted that *Concepcion* worked "a change in the law" on this issue of whether state law can impose class arbitration despite a contractual agreement for individualized arbitration. *Litman v. Cellco P'ship,* No. 08–4103, 2011 WL 3689015, at *4–5 (3d Cir. Aug.24, 2011). Because RHI offers an arguably reasonable basis for its delay, this Court cannot say that this factor weighs in favor of a finding of waiver, and therefore considers this factor to be neutral.

### 2. The Degree to Which RHI Has Contested the Merits of Plaintiffs' Claims

**\*6** RHI did not engage in motion practice regarding the merits of Plaintiffs' FLSA claim before moving to compel arbitration; therefore, this factor weighs against a finding of waiver. *See Nino,* 609 F.3d at 210–11.

### 3. Whether RHI Informed Plaintiffs of its Intent to Seek Arbitration

RHI raised mandatory arbitration as an affirmative defense in its Answer, thereby putting Plaintiffs on notice that it might seek to compel arbitration. As a result, this factor certainly weighs in RHI's favor, however, "[i]n the waiver context, where prejudice to the nonmovant is the key, an initial invocation of the defense of arbitration becomes less significant the longer and more actively a party litigates after having made that initial invocation without making any further mention of arbitration." *Nino,* 609 F.3d at 211–12. Here, RHI waited approximately a year between its invocation of arbitration as an affirmative defense and its notification to Plaintiffs that it would, in fact, move to compel arbitration, during which the parties litigated RHI's opposition to the *pro hac vice* admission of Plaintiffs' counsel. The Court finds that this factor weighs against a finding of waiver, however, due to the length of time between RHI's assertion of the affirmative defense of arbitration and the filing of the actual motion to compel, that weight is somewhat diminished.

### 4. Extent of Non–Merits Motion Practice

The only non-merits motion practice in which the parties have engaged is the disputed *pro hac vice* admission of Plaintiffs' counsel, however, that motion practice has been significant: RHI opposed Plaintiffs' *pro hac vice* motion, the parties conducted oral argument on the motion,

Magistrate Judge Arleo granted the motion, and RHI appealed Judge Arleo's order to Judge Wigenton, resulting in a stay of proceedings until Judge Wigenton affirmed the *pro hac vice* admission of Plaintiff's counsel. Both the *Nino* and *Hoxworth* courts found the movant's non-merits motion practice to be significant where the movant's inadequate discovery responses forced its opponent to file motions to compel discovery. *Nino,* 609 F.3d at 212; *Hoxworth,* 980 F.3d at 925–26. The *Nino* court found that the consequence of such motion practice was "to require [non-movant] to devote substantial amounts of time, effort, and money in prosecuting the action." *Nino,* 609 F.3d at 212 (internal quotations omitted). Here, RHI did not engage in motion practice regarding discovery as in *Nino* and *Hoxworth;* indeed, RHI has not participated in any discovery in this case. Additionally, as RHI points out, its opposition to Plaintiffs' counsel's *pro hac vice* admission would have been brought regardless of whether the case was before the Court or an arbitrator as Plaintiff's counsel had previously employed a former attorney of counsel representing RHI in a similar FLSA action in Massachusetts. RHI also argues that part of the delay in moving to compel was caused by the stay this Court imposed while Judge Wigenton considered RHI's appeal of Judge Arleo's order granting Plaintiff's *pro hac vice* motion. While RHI's appeal of Judge Arleo's order did result in a stay of several months, RHI still could have moved to compel arbitration in the three month period between the filing of the complaint and the Court's institution of the stay. Because RHI chose not to seek to compel arbitration then, but instead to oppose Plaintiffs' *pro hac vice* motion, this factor weighs in favor of a finding of waiver.

### 5. Assent to the Court's Pretrial Orders

**\*7** In *Nino,* the Third Circuit found that the movant's attendance at ten pretrial conferences and its failure to object to any pretrial orders based upon its intent to compel arbitration weighed in favor of a finding of waiver. *Nino,* 609 F.3d at 212–23. Here, RHI attended one scheduling conference and oral argument and complied with the Court's first Scheduling Order by submitting the parties' first Joint Discovery Plan before indicating in the parties' second Joint Discovery Plan, filed on May 18, 2011, that it would move to compel arbitration. The Court finds this factor to weigh slightly in favor of a finding of waiver, because, although RHI never objected to the Court's pretrial orders based upon its intent to seek arbitration, it did not attend many pretrial conferences nor did it assent to many pretrial orders before indicating its intent to move to compel arbitration.

Opalinski v. Robert Half Intern., Inc., Not Reported in F.Supp.2d (2011)

**6. Extent to Which Both Parties Engaged in Discovery**

The extent to which a party moving to compel arbitration has engaged in discovery has been a very significant factor in determining the issue of waiver. *See PaineWebber,* 61 F.3d at 1068–69 ("waiver will normally be found only where the demand for arbitration came long after the suit commences and when both parties had engaged in extensive discovery") (internal quotations and citations omitted); *see also Nino,* 609 F.3d 212–13 (finding that this factor weighs "firmly" in favor of finding waiver when the parties "engaged in significant discovery during" during a 15–month period before the motion to compel); *Ehleiter,* 482 F.3d at 222–25 (finding waiver based on parties engaging in "extensive discovery" including depositions, exchanges of interrogatories, document requests, and expert reports); *Hoxworth,* 980 F.3d at 925–27 (finding waiver in party based on the fact that movant took depositions and responded to discovery requests). The parties do not dispute that there has been no discovery to date in this matter, and as RHI points out, Plaintiffs do not cite a single case in which the Third Circuit has found a waiver of the right to compel arbitration where the movant did not engage in discovery. Due to the significance of this factor in the case law and the fact that the parties here have not yet engaged in any discovery, the Court finds that this factor weighs heavily against a finding of waiver.

**7. Summary**

Two of the *Hoxworth* factors weigh in favor of a finding of waiver—the extent of RHI's non-merits motion practice and its assent to the Court's pretrial orders, though this factor only weighs slightly in favor of waiver; three weigh against a finding of waiver—RHI has not contested the merits of Plaintiffs' claim, it has not engaged in discovery, and it did raise arbitration as an affirmative defense in its answer, though the weight of this factor is diminished by the length of time between the answer and the motion to compel; and one is neutral—the timeliness of RHI's motion. Therefore, while RHI's actions have led to Plaintiffs investing time and money in litigating this case, Plaintiffs do not demonstrate sufficient prejudice to warrant a finding that RHI has waived its right to compel arbitration. Controlling Third Circuit law states that "a party waives the right to compel arbitration *only* in the following circumstances: when the parties have engaged in a *lengthy course of litigation,* when *extensive discovery* has occurred, and when *prejudice* to the party resisting arbitration can be shown." *Great Western Mortgage Corp.,* 110 F.3d at 233 (emphasis added). Here, the parties have clearly not engaged in extensive discovery and Plaintiffs point to no precedent supporting a finding of waiver in the absence of discovery.

**C. Plaintiffs' Motion to Facilitate Notice**

**\*8** Plaintiffs have filed a motion to facilitate notice to similarly situated RHI employees so that may join Plaintiffs' claim pursuant to section 216(b) of the FLSA. Plaintiffs argue that the Court can and should grant their motion to facilitate notice before addressing RHI's motion to compel arbitration so that the Court can examine the arbitration clauses in the agreements of all of the parties that opt-in and decide which, if any, would be required to submit their claims to arbitration. Plaintiffs argue that RHI, after having waited over a year to seek arbitration, will not be prejudiced by waiting for a notice and opt-in period and that such a period will further the broad remedial purpose of the FLSA. However, after determining that the arbitration clauses in both Opalinski's and McCabe's employment agreements require them to arbitrate their FLSA claim and that RHI has not waived its right to compel arbitration, this Court sees no reason to permit Plaintiffs to continue to litigate this action in this forum.[3] *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding that the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). Moreover, Plaintiffs do not cite any cases in which a court deferred ruling on a pending motion to compel arbitration in order to permit a party to initiate notice and an opt-in period.

**III. *CONCLUSION***

For the reasons stated above, **IT IS** on this 6th day of October 2011

**ORDERED** that Defendants' Motion to Compel Arbitration and Dismiss [docket # 54] is **GRANTED;** and it is further

**ORDERED** that Plaintiffs' Motion to Facilitate Notice to Potential Plaintiffs Informing Them of their Right to Opt–Into This Case Under the FLSA, 29 U.S.C. § 216(b) [docket # 55] is **DENIED AS MOOT.**

**All Citations**

Opalinski v. Robert Half Intern., Inc., Not Reported in F.Supp.2d (2011)

Not Reported in F.Supp.2d, 2011 WL 4729009

Footnotes

1    The facts set forth here are drawn from the Complaint and facts alleged in the parties' papers to which there is no dispute, except where it is specifically indicated that a fact is alleged by only one party.

2    There has been no indication that the value of Plaintiffs' claims prevents them from being able to vindicate their statutory rights on an individual basis and the Court notes that it would be difficult for Plaintiffs to make such a showing given the fact that they can recover fees and costs under the FLSA.

3    The cases cited by Plaintiffs in support of their argument are all inapposite: *See Rafeedie v. L.L.C., Inc.,* No. 10–cv–00743, Order at 5 (W.D.Tex. May 9, 2011) (defendants suggested there were "possible arbitration agreements," but did not move to compel arbitration); *Davis v. NovaStar Mortg., Inc.,* 408 F.Supp.2d 811, 818 (W.D.Mo.2005) (defendant had not moved to compel arbitration); *Villatoro v. Kim Son Rest., L.P.,* 286 F.Supp.2d 807, 811 (S.D.Tex.2003) (defendant "raised issues" about "newly signed" arbitration agreements in opposition to conditional certification, but did not move to compel arbitration); *Ali v. Sugarland Petroleum,* 2009 U.S. Dist. LEXIS 118829, at *12–13, 2009 WL 5173508 (S.D.Tex. Dec. 22, 2009) (defendant objected to certification because some opt-ins signed arbitration agreements, but did not move to compel arbitration); *Whittington v. Taco Bell of Am., Inc.,* 2011 U.S. Dist. LEXIS 55292, at *9, 2011 WL 1772401 (D.Colo. May 10, 2011) ("[F]or the one party that is before this Court, the Named Plaintiff, they apparently *do not have an executed arbitration agreement ....*") (internal quotations omitted).

---

**End of Document**                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    7

PAGE SEPARATOR

2016 WL 4435263
United States District Court,
W.D. Tennessee, Eastern Division.

Leah REDMOND, individually and on behalf of
others similarly situated, Plaintiffs,
v.
NPC INTERNATIONAL, INC., Defendant.

No. 13-1037
|
Signed 08/22/2016

**Attorneys and Law Firms**

Joseph Russ Bryant, Paula Rachelle Jackson, Gordon E. Jackson, Jackson Shields Yeiser & Holt, Cordova, TN, Timothy A. Perkins, Timothy A. Perkins, Attorney at Law, Memphis, TN, for Plaintiffs.

Audrey M. Calkins, Thomas L. Henderson, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Russell W. Jackson, FordHarrison LLP, Memphis, TN, for Defendant.

**Opinion**

**ORDER ADOPTING IN PART THE MAGISTRATE JUDGE'S ORDER AND GRANTING PLAINTIFFS' REQUESTED ALTERNATE RELIEF**

J. DANIEL BREEN, CHIEF UNITED STATES DISTRICT JUDGE

**\*1** Before the Court are the June 3, 2016 objections of Defendant, NPC, Inc., to the May 18, 2016 order of Magistrate Judge Edward G. Bryant, granting a protective order against individualized discovery. (Docket Entry ("D.E.") 157.) For the following reasons, the magistrate judge's order is ADOPTED in part and OVERRULED in part.

*I. BACKGROUND*

The procedural history and factual basis for this case, one of five Fair Labor Standards Act ("FLSA") cases,[1] is lengthy and has been thoroughly discussed by both the

Sixth Circuit Court of Appeals and this Court. *See Gunn v. NPC Int'l, Inc.*, 625 Fed.Appx. 261, 263 (6th Cir. 2015); *Gunn v. NPC Int'l, Inc.*, No. 13-1035, 2014 WL 1224396 (W.D. Tenn. Mar. 24, 2014). For this reason, the Court's background discussion here is limited to facts directly related to the instant motion. On November 10, 2015, Plaintiffs, Tiffney Penley and Ashley Lewis, individually and on behalf of others similarly situated, requested the following relief: 1) a protective order against individualized discovery of all opt-in Plaintiffs, or in the alternative, for an order staying discovery until after the Court rules on Plaintiffs' second motion for conditional certification, and 2) that the Court limit discovery to a representative sampling once a class has been formed through the court-approved notice process. (D.E. 138.) Defendant opposed the motion (D.E. 145), and Plaintiffs replied (D.E. 149). On May 18, 2016, Judge Bryant, pursuant to an order of reference (D.E. 144), granted the protective order but denied without prejudice the request to limit the scope of discovery (D.E. 154). As he granted the Plaintiffs' primary requested relief, the stay of discovery was not considered.

The next day, Defendant moved for an emergency order to stay the magistrate judge's order pending review by this Court. (D.E. 156.) Moreover, it asserted that, pursuant to Court order (D.E. 117 at 2), NPC's response to the renewed motion for conditional certification should not be due until thirty days after either the response of the last Plaintiff to Defendant's discovery requests or the entry of an order addressing NPC's objections to the granting of the protective order. The Court granted the motion to stay to the extent that "compliance with the terms of an order subject to appeal or objection is [always implicitly] deferred until resolution of the objection or appeal." (D.E. 156 at 2.)

In accordance with Local Rule 72.1(g) and Rule 72(a) of the Federal Rules of Civil Procedure, Defendant filed written objections to the portion of the magistrate judge's order granting protection from individualized discovery on June 3. (D.E. 158.) NPC argues its objections should be sustained because: 1) named Plaintiffs should be required to respond to Defendant's discovery requests, 2) Plaintiffs did not meet their burden of demonstrating need for the protective order and NPC needs discovery, and 3) the scheduling order requires that the parties conclude all discovery in one phase before responding to the renewed motion for conditional certification.[2]

*II. APPLICABLE LAW*

Redmond v. NPC International, Inc., Not Reported in F.Supp.3d (2016)

2016 Wage & Hour Cas.2d (BNA) 271,762

*Standard of Review*

**\*2** Twenty-eight U.S.C. § 636(b)(1)(A) permits a district judge to, subject to certain exceptions not relevant here, "designate a magistrate judge to hear and determine any pretrial matter pending before the court." Furthermore, "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). Upon a timely objection to a magistrate judge's order, the district judge is instructed to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). "The clearly erroneous standard applies only to factual findings made by the magistrate judge, while his legal conclusions [are] reviewed under the more lenient contrary to law standard." *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009) (quoting *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994)). A legal conclusion is contrary to law when it "contradicts or ignores applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Steede v. Gen. Motors, LLC*, No. 11-2351-STA-dkv, 2012 WL 2089755, at *2 (W.D. Tenn. June 8, 2012); *see also* 32 Am. Jur. 2d Federal Courts § 143 (2008) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.").

*FLSA Cases and Discovery*

Under Rule 26, parties requesting a protective order bear the burden of showing that the discovery sought would be "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Monsanto Co. v. Ralph*, No. 01-MC-1004, 2001 WL 35957201, at *2 (W.D. Tenn. May 10, 2001). However, the Sixth Circuit has stated that a party's relative need for discovery can also influence this inquiry:

> To justify restricting discovery, the harassment or oppression [of discovery] should be unreasonable, but discovery has limits and these limits grow more formidable as the showing of need decreases. Thus even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it.

*Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (citing 8A Charles Alan Wright & Arthur R. Miller

et al., *Federal Practice and Procedure* § 2036 (3d ed. 2012)). Discovery, however, may serve a slightly different function depending on the type of case, and FLSA cases are unique in structure. *See* 29 U.S.C. §§ 201-219. Courts in this and other circuits use a two-step approach to certifying FLSA cases. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567 (6th Cir. 2009) *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). In this first stage, the court determines "whether the opt-in plaintiffs and lead plaintiffs were similarly situated. After the initial conditional certification of the class, the parties enter[ ] into discovery. At the second stage, the district court review[s] the evidence produced during discovery," and decides whether to certify or decertify the class. *Id.* at 583; *see generally* Christopher C. Murray, *Beneath the Radar: The Seventh Circuit Quietly Overhauls FLSA Collective Action Litigation*, (March 1, 2013), http://www.ogletreedeakins.com/shared-content/content/b log/2013/march/beneath-the-radar-the-seventh-circuit-qui etly-overhauls-flsa-collective-action-litigation (indicating that class discovery is not completed unless and until after conditional certification is granted). The conditional certification, also known as the notice period, is that which allows for the dissemination of Court-approved communications notifying potential opt-in plaintiffs of possible FLSA claims and providing instructions for opting into the litigation. *See, e.g., Monroe v. FTS USA, LLC*, 257 F.R.D. 634 (W.D. Tenn. 2009) *aff'd*, 815 F.3d 1000 (6th Cir. 2016). This period routinely lasts several months, *see, e.g., Beetler v. Trans-Foam, Inc.*, No. 5:11CV132, 2011 WL 6130805, at *5 (N.D. Ohio Dec. 8, 2011) (granting forty-five-day opt-in period), and logically cannot begin until *after* a Court grants conditional certification.

**\*3** In *Monroe v. FTS USA, LLC*, the Sixth Circuit explained the function of discovery within the specific context of FLSA cases:

> Courts typically bifurcate certification of FLSA collective action cases. At the notice stage, conditional certification may be given along with judicial authorization to notify similarly situated employees of the action. *Once discovery has concluded*, the district court—with more information on which to base its decision and thus under a more exacting standard—looks more closely at whether the members of the class are similarly situated.

815 F.3d 1000, 1008 (6th Cir. 2016) (emphasis added). In an opinion from this district, the court explained that during the conditional certification stage, it "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Servs., LLC*, No. 2:08-2092-JPM/DKV, 2008 WL 2697261, at *1 (W.D. Tenn. June 3, 2008). Instead, the goal is simply to determine whether the Plaintiffs are similarly situated. *O'Brien*, 575 F.3d at 584. Although conclusory declarations only alleging that a defendant violated the FLSA are inadequate for this inquiry, *see O'Neal v. Emery Fed. Credit Union*, No. 1:13CV22, 2014 WL 6810689, at *8 (S.D. Ohio Dec. 3, 2014), affidavits providing some factual basis for establishing FLSA violations may be sufficient, *Anderson v. Perdue Farms, Inc.*, No. 106-CV-01000-MEF-WC, 2007 WL 4554002, at *1 (M.D. Ala. Dec. 20, 2007). Indeed, the leniency of plaintiffs' burden at this first procedural stage may render initial discovery unnecessary. *Brasfield*, 2008 WL 2697261, at *1; *see, e.g., Alderoty v. Maxim Healthcare Servs., Inc.*, No. CIV.A. TDC-14-2549, 2015 WL 5675527 (D. Md. Sept. 23, 2015) (finding similarity in the plaintiffs' declarations probative to determining whether they were comparably situated); *Enkhbayar Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563 (E.D. Va. 2006) (concluding that an affidavit suggesting a common policy affecting plaintiffs to be supportive in determining whether they were similarly situated).

## III. ANALYSIS

### The Named Plaintiffs

The Court first addresses the issue of whether the magistrate judge committed clear error in not requiring the named Plaintiffs to answer the discovery requests. Plaintiffs requested a protective order only as to the opt-in Plaintiffs. (D.E. 138) ("Plaintiffs ... move this Honorable Court for an Order granting a protective order against individualized discovery of opt-in Plaintiffs ...."). As Judge Bryant's order did not directly address discovery of the original Plaintiffs, this objection is not well taken and thus, is OVERRULED.

### Burden of Proof under Rule 26(c) and Defendant's Need for Discovery

NPC next objects to Judge Bryant's order on the following grounds: 1) it needs discovery to respond to the motion for conditional certification; and 2) Plaintiffs did not meet their burden under Rule 26(c) of showing that individualized discovery of the opt-in Plaintiffs would have been annoying, embarrassing, oppressive, or an undue burden or expense, such as to warrant a protective order. *See Serrano*, 699 F.3d at 901. In their motion, Plaintiffs argued that individualized discovery—especially at this stage—would defeat the policy and goals of the FLSA by delaying the proceedings and creating an undue burden. (D.E. 138-1 at 3-6.) They contend that this would thwart Congress's intent of providing an efficient collective legal mechanism for remedying wage violations. (*Id.* at 5.) Moreover, Plaintiffs point to the burdensome reality of responding to NPC's 2,380 discovery requests. Defendant seeks to obtain information "relating to [individual] Plaintiffs' alleged attendance at job training without pay, meetings without pay, and off-the-clock work" before it responds to the motion for conditional certification. (D.E. 158 at 7.)

**\*4** In his order, Judge Bryant balanced the requirements of Rule 26(c) against the purpose and procedure of the FLSA. (D.E. 154 at 4.) He reviewed the request for the protective order in light of the two-part FLSA certification process, discussed *supra*, and explained that the conditional certification stage is for the specific purpose of providing to potential Plaintiffs notice and an opportunity to opt in. (*Id.*) It is not until after this period that a court conducts a more rigorous factual analysis of the case. The magistrate judge found that the discovery sought by NPC is "clearly directed toward second-stage arguments and [was] not necessary for the pre-conditional certification stage." (*Id.* at 5.) Given the already lengthy delays in this case, the low bar to conditional certification, and the potentially heavy burden of responding to NPC's individualized discovery requests of opt-in Plaintiffs, the Court finds that Judge Bryant's factual findings were not clearly erroneous and the legal conclusions were not contrary to law. Accordingly, Defendant's objections on this score are OVERRULED.

### The Scheduling Order

Defendant next objects to what it argues was the magistrate judge's implicit failure to enforce the scheduling order pursuant to Rule 26(f) by granting the protective order and directing NPC to respond to the renewed motion for conditional certification before concluding discovery. Rule 16(b)(4) controls scheduling orders in cases such as this. Fed. R. Civ. P. 16(b)(4). A judge may modify a Rule 16(b) scheduling order for "good cause." *Id.* Good cause is defined as "the moving party's diligence in attempting to meet the case management order's requirements." *Moore v. Indus. Maint. Serv. of Tenn., Inc.*, 570 Fed.Appx. 569, 577 (6th

Cir. 2014) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.*

NPC asserts that the scheduling order impliedly required discovery to be handled in one wave, instead of in phases, and did not allow for the possibility of holding discovery in abeyance until the resolution of the motion for conditional certification. Defendant highlights the dates listed in the scheduling order to support the proposition that the parties intended to complete discovery before the deadline for the motion for conditional certification—i.e., deadline to complete all discovery: May 16, 2014; deadline to file a motion for conditional certification: June 16, 2014. NPC protests that Judge Bryant's ruling alters the scheduling order in a manner that is contrary to law and that would be prejudicial.

Entered on August 16, 2013, the scheduling order in this case is over three years old. (D.E. 62.) While it is clear, given the passage of time, that the deadlines referenced are no longer valid, the sequence of and time between events are still binding, absent good cause shown. The parties agreed that Plaintiffs would file their motion for conditional certification by June 16, 2014. (*Id.* at 2.) Discovery, in contrast, was to be completed by "May 16, 2014, *or ninety (90) days after the close of the conditional certification period, whichever is later.*"[3] (*Id.* at 3) (emphasis added). Thus, to trigger the discovery deadline, the Court first would have to rule on the conditional certification motion, and if granted, then set dates for the notice/opt-in period. This case has not yet reached that point; therefore, the discovery deadline logically cannot have already passed. The Court agrees with Defendant that no good cause has been shown to alter or amend the essential details of the scheduling order. (D.E. 158 at 4.) Nevertheless, NPC has not demonstrated that Magistrate Judge Bryant's order changed the scheduling order in any way. Accordingly, the Court OVERRULES Defendant's objections on this point.

*Alternate Relief*

**\*5** The question remains how best to give effect to the intent of the parties as expressed in the text of the scheduling order and ensure that these five cases continue on their path towards resolution. The United States Supreme Court has stated explicitly that district courts

have at their disposal many case management options. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Vested under Rule 26 and implemented through Rule 16, this authority includes the ability to "tailor discovery narrowly and to dictate the sequence of discovery." *Id.* "[J]udges," the Supreme Court has exhorted, "should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

Plaintiffs first requested conditional certification in April 2014. (D.E. 79.) This request was dismissed without prejudice due to NPC's pending appeal of the Court's denial of its motion to dismiss or to compel arbitration. (D.E. 119.) In November 2015, Plaintiffs again moved for conditional certification, and that motion remains unresolved. (D.E. 137.) The Court finds that enough delays have been produced in this case. *See Gunn*, 625 Fed.Appx. at 265 (stating that Defendant's actions support the conclusion that NPC has engaged in a campaign of "employing dilatory tactics and creating expense for the Plaintiffs"). No legally convincing argument has been made that discovery is needed at this juncture and, indeed, Plaintiffs have demonstrated that it would be inappropriate.

Accordingly, the Court GRANTS Plaintiffs' requested alternate relief to stay discovery until resolution of the motion for conditional certification. Defendant is hereby ORDERED to respond to the motion for conditional certification (D.E. 137) within thirty days of the entry of this order. No extensions shall be granted. In the event that conditional certification is granted and the magistrate judge's order on this motion is adopted by the Court, the parties are ORDERED to participate in a second scheduling conference within twenty-one days of the entry of the Court's order. This order shall set out in detail the deadlines for any discovery and for motions in relation to that discovery.

IT IS SO ORDERED this 22nd day of August, 2016.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 4435263, 2016 Wage & Hour Cas.2d (BNA) 271,762

Footnotes

1    *See Penley v. NPC Int'l*, No. 13-1031 (W.D. Tenn. filed Jan. 29, 2013) ("current and former shift managers"); *Harris v. NPC Int'l*, No. 13-1033 (W.D. Tenn. filed Jan. 29, 2013) ("current and former cooks"); *Gunn v. NPC Int'l*, No. 13-1035

(W.D. Tenn. filed Jan. 30, 2013) ("current and former tipped employees"); *Jowers v. NPC Int'l,* No. 13-1036 (W.D. Tenn. filed Jan. 30, 2013) ("current and former delivery drivers"); and *Redmond v. NPC Int'l,* No. 13-1037 (W.D. Tenn. filed Jan. 30, 2013) ("current and former customer service representatives").

[2]   NPC also avers that Judge Bryant employed an improper analysis when considering the motion for conditional certification in the companion *Gunn* case—an order that was withdrawn well before the Defendant's objections were filed. *See* R. & R. on Pls.' Second Mot. to Certify Class (D.E. 165) and Text Order Withdrawing R. & R. (D.E. 167), *Gunn v. NPC Int'l,* No. 13-1035 (W.D. Tenn. filed Jan. 30, 2013). As Defendant will have an opportunity to respond to the motion, objections related to conditional certification are OVERRULED as moot.

[3]   The Court notes that in its objections, Defendant pointed to the deadlines for discovery and the motion for conditional certification to support its proposition. However, it is disingenuous at best for NPC to omit the crucial second half of the sentence contained in the scheduling order: "or ninety (90) days after the close of the conditional certification period, whichever is later." (D.E. 62 at 2.)

---

**End of Document**                                     © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

PAGE SEPARATOR

KeyCite Yellow Flag - Negative Treatment
Distinguished by Rossello v. Avon Products, Inc., D.Puerto Rico, June 24, 2015

2012 WL 995362
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Allison SHIPES and Theresa Jull, individually and on behalf of similarly situated people, Plaintiffs,
v.
AMURCON CORPORATION, a Michigan Corporation, Defendant.
No. 10−14943.
|
March 23, 2012.

**West Codenotes**

**Recognized as Unconstitutional**
29 U.S.C.A. § 216(b).

**Attorneys and Law Firms**

Jesse L. Young, Matthew L. Turner, Jason J. Thompson, Sommers Schwartz, P.C., Southfield, MI, Robert Anthony Alvarez, Avanti Law Group, PLLC, Wyoming, MI, for Plaintiffs.

Michael F. Jacobson, Patrice S. Arend, Thomas H. Williams, Jaffe, Raitt, Southfield, MI, for Defendant.

**Opinion**

***ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR § 216(b) CERTIFICATION AND NOTICE TO POTENTIAL CLASS MEMBERS***

VICTORIA A. ROBERTS, District Judge.

**I. INTRODUCTION**
**\*1** Before the Court is Plaintiffs' Motion for § 216(b) Certification and Notice to Potential Class Members. (Doc. # 17).

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion.

The Court **GRANTS** conditional collective action certification to a class of all persons employed at Amurcon Corporation within three years of this Order, and paid on an hourly basis, who were eligible for but did not receive, an overtime premium as required under the Fair Labor Standards Act.

The Court **DENIES WITHOUT PREJUDICE** conditional certification to a class of all salaried employees of Amurcon Corporation.

The Court **GRANTS** Plaintiffs' discovery request, as outlined in Section III(D) of this Order.

**II. BACKGROUND**
Plaintiffs Allison Shipes and Theresa Jull are former employees of Defendant Amurcon Corporation ("Amurcon"), a property management company. Shipes was a Leasing Agent paid on an hourly basis. Jull was a Staff Accountant; she earned a salary. Former Plaintiff Kelly Kade was a Community Manager at Amurcon; however, she dismissed her claims with prejudice. (See Doc. # 51). Former Plaintiff and Community Manager Jani Platz dismissed her claims with prejudice as well. (See Doc. # s 59, 61).

Shipes and Jull filed suit against Amurcon on behalf of themselves and all similarly situated employees, alleging the company violated the Fair Labor Standards Act ("FLSA") in two ways. First, Amurcon engaged in what Plaintiffs call "time-records fixing," described as improperly editing the time sheets of hourly employees to reduce the number of hours worked so Amurcon could avoid paying overtime wages for those hours. Amurcon did this by removing hours from employees' time sheets after those hours were worked-thus not paying them for hours worked in one week above forty ("overtime hours")-and by changing its employees' time from overtime to "comp" time to avoid paying for overtime hours at the mandated rate of "not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(2). Second, to the extent Amurcon classified its salaried employees as exempt, Plaintiffs say it did so improperly, since they perform essentially the same job duties as hourly, non-exempt employees.

Plaintiffs ask the Court to:

    1) certify a collective action for

unpaid overtime wages under § 216(b) of the FLSA; 2) order Amurcon to provide Plaintiffs with the names, all known addresses and telephone numbers of the class members; and 3) approve the court-supervised notice, attached to this memorandum as *Exhibit A*, to the class members. In addition, Plaintiffs request that this court approve an opt-in period of ninety days.

(Doc. # 17; Plaintiffs' Motion for § 216(b) Certification and Notice to Potential Class Members at 1). Plaintiffs define their proposed collective class as: *"All hourly and salaried persons employed by Amurcon Corporation at any time since _____ (the last three years) who were eligible for but did not receive an overtime premium as required under the Fair Labor Standards Act." Id.* (emphasis in original).

**\*2** Affidavits support Plaintiffs' motion. (*See* Doc. # s 17–3, 17–4, 17–6; Pls' Exs. B, C, and E). Shipes says she worked as a Leasing Agent at Amurcon's Rochester Hills location from October 2009 to November 2010. (Doc. # 17–3; Pls' Ex. B ¶ 3). According to her affidavit, her job duties included: "returning calls from potential tenants, showing apartments to prospective tenants, processing tenant applications, preparing leases, preparing apartments for tenants to move-in, resident relations, processing work orders, collection of rents, conducting marketing activities, cleaning the office and vacant apartments, and walking the grounds to inspect for maintenance needs." (*Id.* ¶ 5). She worked seven days a week. (*Id.* ¶ 6). Throughout her employment, her supervisors made her "clock out" but continue working. (*Id.* ¶ 9). She was regularly given "comp" time for hours that she worked in excess of forty hours per week. (*Id.* ¶ 10). She knows of "many other individuals with whom [she] worked alongside and spoke with before, during, and after work who complained that they were not paid properly for overtime worked." (*Id.* ¶ 12).

Jull says she worked as a Staff Accountant at Amurcon's Southfield location from January 2002 until February 2009. (Doc. # 17–6, Pls' Ex. E ¶ s 3, 5). Her job duties entailed: "data entry with respect to: monthly reports to the Michigan State Housing Development Authority and the U.S. Department of Housing and Urban Development, company financial statements, property taxes, year-end audits, and other general data entry for eleven (11) different Amurcon properties." (*Id.* ¶ 5). She claims she did not supervise other employees and was not permitted to exercise discretion. (*Id.* ¶ 8). She generally worked six or

seven days per week during her final two years with the company. (*Id.* ¶ 10). Additionally, it was her understanding that she had to work until assignments were completed and could be disciplined if they were not done on time. (*Id.* ¶ 11). She says she knows of "other individuals who regularly worked overtime hours for Amurcon." (*Id.* ¶ 14).

### III. ANALYSIS

#### A. General Principles
Pursuant to the FLSA of 1938, 29 U.S.C. § 201 *et seq.,* under certain circumstances an employer must not require an employee to work more than forty hours per week without paying that employee time and a half for overtime. *See* 29 U.S.C. §§ 207(a), 215(a). Section 216(b) permits, *inter alia,* an aggrieved employee to file suit against an employer on behalf of herself and other "similarly situated" employees. *Id.* § 216(b), *ruled unconstitutional on other grounds in Alden v. Maine,* 527 U.S. 706, 712, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (finding unconstitutional provision of FLSA authorizing private actions against states in state courts without their consent).

However, there are exemptions to the maximum hour/overtime pay requirements of the FLSA. *See id.* § 213. Relevant to this case is the "bona fide executive, administrative, or professional" employee exemption. *Id.* § 213(a)(1). Under § 213(a)(1), the maximum hour and overtime pay requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity...." *Id.*

**\*3** The FLSA implementing regulations include a short test for classifying employees for purposes of the executive, administrative or professional exemption. An employee is an exempt executive if: (1) she is paid on a salary basis not less than $455 per week, exclusive of board, lodging or other facilities; (2) her primary duty is management of the enterprise or a department or subdivision of the enterprise; (3) she regularly directs the work of two or more employees; and (4) she has the authority to hire or fire other employees or her "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change in status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

An employee is an exempt administrator if: (1) she is paid on a salary or fee basis at not less than $455 per week, exclusive of board, lodging or other facilities; (2) her primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer's customers; and (3)

her primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *Id.* § 541.200. The regulations provide examples of exempt administrators, including certain employees in the financial services industry. *See id.* § 541.203(b).

An employee who files an FLSA action on behalf of herself and others, seeks conditional certification of a "collective action." *See Wlotkowski v. Michigan Bell Tel. Co.,* 267 F.R.D. 213, 216 (E.D.Mich.2010). Collective actions are different from class actions under Fed.R.Civ.P. 23 in that putative class members must opt in, as opposed to opt out, of the class. *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 583 (6th Cir.2009). "These opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action." *Id.* A collective action serves an important remedial purpose; through it, a plaintiff who has suffered only small monetary harm can join a larger pool of similarly situated plaintiffs. *Id.* at 586. (citing *Hoffman–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). "That pool can attract effective counsel who knows that if the plaintiffs prevail, counsel is entitled to a statutorily required reasonable fee as determined by the court." *Id.*

There are two requirements for a collective action under Section 216(b) brought on behalf of an employee and others similarly situated. *Comer v. Wal–Mart Stores,* 454 F.3d 544, 546 (6th Cir.2006). First, the plaintiffs must be "similarly situated" to each other and to putative plaintiffs. *Id.* Second, the putative plaintiffs must signal their affirmative consent to participate in the suit in writing. *Id.* "The district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Id.* (citing *Sperling,* 493 U.S. at 169).

**\*4** Courts generally employ a two-stage approach to determine whether the opt-in and named plaintiffs are "similarly situated" for purposes of certifying a collective action. *See Wlotkowski,* 267 F.R.D. at 217; *Noble v. Serco, Inc.,* No. 3:08–76–DCR, 2009 WL 3154252, at \*1 (E.D.Ky. Sept.28, 2009). At the "notice stage"—which takes place at the beginning of discovery—"the court determines whether the suit should be 'conditionally certified' as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate." *Serco,* 2009 WL 3154252, at \*1 (*citing Comer,* 454 F.3d at 546). "The final certification decision is made at the second stage, 'after all of the opt-in forms have been received and discovery has concluded.' " *Id.* (quoting *Comer,* 454 F.3d at 546–47).

The FLSA does not define "similarly situated;" neither has the Sixth Circuit. *O'Brien,* 575 F.3d at 584. "However, district courts have based their final certification decisions on a variety of factors, including the 'factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action.' " *Id.* (quoting 7B Wright, Miller, & Kane, *Federal Practice and Procedure* § 1807 at 497 n. 65).

Named plaintiffs bear the burden to show that the opt-in plaintiffs are similarly situated to them. *Id.* The burden at the notice stage—the stage at which this motion comes—is "fairly lenient;" at this stage courts typically conditionally certify a representative class because the court has only minimal evidence before it–the pleadings and affidavits submitted by the parties. *Morisky v. Pub. Serv. Elec. and Gas Co.,* 111 F.Supp.2d 493, 497 (D.N.J.2000); *see also Serco,* 2009 WL 3154254, at \*2 ("Because the conditional-certification decision is generally made prior to or early in discovery, the plaintiff's evidentiary burden at this stage is not a heavy one."). This burden is less stringent than that required for class certification under Fed.R.Civ.P. 23. *Wlotkowski,* 267 F.R.D. at 217.

At the notice stage, the plaintiffs must show that there is a reasonable basis for their claim that there are other similarly situated employees. *Serco,* 2009 WL 3154254, at \*2. "However, only a 'modest factual showing' is required to authorize notice to potential plaintiffs...." *Id.* (quoting *Comer,* 454 F.3d at 547). "The plaintiffs must show only that their position is similar, not identical, to the positions of the putative class members." *Id.* "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir.2010) (emphasis in original) (internal citations omitted). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

**\*5** Although the Sixth Circuit and the FLSA do not define "similarly situated," the Sixth Circuit teaches that at the notice stage, plaintiffs are similarly situated when they allegedly all suffer from a single, FLSA-violating policy. *O'Brien,* 575 F.3d at 585; *see also Olivo v. GMAC Mortg. Corp.,* 374 F.Supp.2d 545, 548 (E.D.Mich.2004) (to show

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

that they are "similarly situated" to putative plaintiffs for notice purposes, plaintiffs can demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law). However, showing a unified common policy that violates the FLSA is not required. *O'Brien,* 575 F.3d at 584. In addition, to be similarly situated, it is sufficient-though not necessary-if the plaintiffs' claims are unified by common theories of defendants' statutory violations, even if the proofs of those theories are individualized. *Wlotkowski,* 267 F.R.D. at 217.

At this first stage, courts do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations. *Id.* at 219. "Rather, those tasks are addressed at the second stage." *Id.*

### B. Plaintiff Shipes

Defendants say Plaintiffs' proposed class is too broad. To the extent Plaintiffs include both hourly and salaried (allegedly FLSA-exempt) employees of Amurcon in one class, the Court agrees. As an hourly Leasing Agent, Shipes is not similarly situated to her salaried counterparts. Amurcon does not argue that Shipes is covered by the executive, administrative, or professional employee exemption. Plaintiffs seem to acknowledge this; in their response to Defendant's supplemental brief, they say the Court can create multiple classes to resolve the problems inherent in maintaining a large, broad class which includes all hourly and salaried employees.

The reasoning of *Mathews v. ALC Partner, Inc.* applies here:

> ALC notes that the Managers and Assistant Managers were classified as exempt from overtime, whereas the Technicians were not. This, argues ALC, means that the claims of these two groups of employees are simply too different for them to be similarly situated. The Court agrees. The Technicians' claims in this suit will be simply that they were not paid for some of the hours they worked. By contrast, employees who were classified as exempt will have to show not only that they worked uncompensated hours, but also that the substance of their work was not, in fact, predominantly managerial. This major difference between the two types of claims leads the Court to

conclude that, in this context at least, exempt and non-exempt ALC employees are not "similarly situated" within the meaning of the FLSA. Furthermore, due to the varying job duties of Managers and Assistant Managers, both of which will be relevant to the propriety of their managerial classifications, the Court concludes that even these two groups of employees cannot be included in a single class.

**\*6** No. 2:08–CV–10636, 2009 WL 2591497, at *5 (E.D.Mich. Aug.24, 2009); *accord Prater v. Commerce Equities Mgmt. Co., Inc.,* No. H–07–2349, 2007 WL 4146714, at *7 (S.D.Tex. Nov.19, 2007) ("The record supports certification of a class of hourly employees and a class of allegedly misclassified salaried employees.").

Jull and other salaried employees are exempt from the FLSA's overtime payment requirements, says Amurcon, and so the merits of their claims require a fact-intensive analysis of their job requirements and duties in light of the FLSA and its implementing regulations. This is especially so where employees who perform some nonmanagement and non-discretionary functions can still be considered exempt under the regulations. *See* 29 C.F.R. §§ 541.100, 541.200. Jull and those she purports to represent will need to show that the substance of their work was not *predominantly* managerial or administrative. Thus, the salaried employees are not suitable for class treatment with clearly non-exempt employees paid on an hourly basis.

However, this Court has the discretion to re-shape the class in an appropriate manner. *See, e.g., Vasquez v. Vitamin Shoppe Indus., Inc.,* No. 10 Civ. 8820, 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011) (narrowing a proposed nationwide conditional collective class of all former and current store managers of the defendant's retail shop to a class of all store managers employed at any of the seven Vitamin Shoppe stores identified by the plaintiff in his reply declaration); *Mathews,* 2009 WL 2591497, at *5 (dividing a proposed conditional collective class consisting of managers, assistant managers, and technicians employed at American Laser Centers into three distinct classes based on job title/duties and exempt/non-exempt status); *Prater,* 2007 WL 4146714, at *7 (dividing a proposed conditional collective class of employees who worked as apartment office employees, including leasing agents, leasing managers, assistant property directors, and marketing directors into two classes of apartment office employees—hourly employees and allegedly misclassified salaried employees).

Shipes does make the minimal showing required for

conditional collective action certification of a class of hourly Amurcon employees. Shipes alleges—and provides concrete evidence of—a FLSA-violating policy and/or practice of making "adjustments" to "hours worked" so that non-exempt employees are not paid overtime wages, (*see* Doc. # s 17–7, 17–8; Exs. F and G to Plaintiff's Motion for § 216(b) Certification). She claims that she and others similarly situated regularly worked more than forty hours per week and were not compensated accordingly. Company emails attached as exhibits bolster this claim; they are evidence that certain hourly employees' overtime hours were reversed. (*See* Doc. # 17–9; Ex. H to Plaintiffs' Motion for § 216(b) Certification).

Defendant points out that the hourly employees at Amurcon hold different job titles, and likewise perform different job duties. For example, while Shipes is a Leasing Agent, the company employs hourly workers in other capacities, such as Human Resources Specialist and Maintenance. These distinctions are not dispositive at this early stage. *See, e.g., Wlotkowski,* 267 F.R.D. at 219 ("Defendants arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review.").

**\*7** Courts observe that " 'disparate factual and employment settings of the individual plaintiffs' should be considered at the second stage of the analysis." *White v. MPW Indus. Servs., Inc.,* 236 F.R.D. 363, 373 (E.D.Tenn.2006) (quoting *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1108 (10th Cir.2001), *cert. denied,* 536 U.S. 934, 122 S.Ct. 2614, 153 L.Ed.2d 799 (2002)). Once plaintiffs meet their burden at the notice stage, a defendant cannot overcome their showing by arguing that individual issues predominate. *Id.; Vasquez,* 2011 WL 2693712 at \*4 n. 3 ("[I]t is well settled that the existence of certain individual claims or defenses does not preclude the conditional certification of an FLSA collective action.") (citations and quotation marks omitted). If, after notice to the putative plaintiffs, it appears that individual issues do in fact dominate, the defendant may move to decertify. *Id.; accord Ray v. Motel 6 Operating Ltd. P'ship,* No. 3–95–828, 1996 WL 938231, at \*3 (D.Minn. Mar.18, 1996) (discussing individualized factors that support decertification at the second stage).

At this stage, "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien,* 575 F.3d at 585; *see also Comer,* 454 F.3d at 546–47 (6th Cir.2006) (certification at the notice stage is

conditional, not final, and plaintiff must show only that his position is similar, not identical, to the positions held by putative class members); *Vasquez,* 2011 WL 2693712, at \*4 ("Courts will certify broad classes where there is some showing that all members of the putative class performed the same job duties ... *or* that the employer had uniform company-wide employment practices.") (citations omitted) (emphasis added).

Although proof of class members' claims will inevitably be individualized, these claims will be "unified by common theories of defendants' statutory violations," that is, "improperly editing time sheets." *O'Brien,* 575 F.3d at 585 (concluding that plaintiffs were similarly situated despite the lack of a single, FLSA-violating policy by the allegation that the defendant employed two common means to cheat the plaintiffs out of their overtime pay).

In *Donahue v. Francis Servs., Inc.,* No. Civ.A. 04–170, 2004 WL 1161366 (E.D.La. May 24, 2004), a district court in Louisiana drew the same conclusion. There, plaintiffs were current and former employees of defendant Francis Services ("Francis") who were allegedly denied overtime payments due them as a result of two Francis policies. *Id.* at \*1. The defendant argued that the plaintiffs were not similarly situated because the proposed class included individuals who held different positions that involved different job descriptions, duties, pay rates, pay scales, pay practices and/or work locations. *Id.*

**\*8** The Court rejected this argument. *Id.* at \*2. It held, "[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations." *Id.* It was enough that "[t]he named plaintiffs and putative collection action members [were] current and former non-exempt Francis employees, who allege[d] that they were not paid overtime for hours worked in excess of 40 per week, and also, that when they were paid overtime, their base rates were improperly calculated due to a Francis policy of classifying part of their base pay as a discretionary bonus." *Id.*

The *Francis* court noted that the named plaintiffs did not allege that they were singled out; rather, "that all hourly employees who worked overtime and/or were paid discretionary bonuses not included in their base pay for calculation of overtime, were affected by the company's policy." *Id.; see also Purnamasidi v. Ichiban Japanese Rest.,* No. 10cv1549, 2010 WL 3825707, at \*1–\*4 (D.N.J. Sept.24, 2010) (conditionally certifying a collective class of "servers, bussers, runners and other tipped food service workers" who allegedly worked more than forty hours per week but were not paid overtime nor paid the prevailing

minimum wage).

Furthermore, the Court is not persuaded by Amurcon's argument that Plaintiffs must provide evidence that other employees wish to opt in before the Court conditionally certifies a collective class. While some courts, at least in the Eleventh Circuit, apply such a requirement, *see, e.g., Dybach v. State of Fla. Dep't of Corr.,* 942 F.2d 1562, 1567 (11th Cir.1991) (before providing notice to potential pot-in plaintiffs, the district court should satisfy itself that there are other employees who wish to opt-in), many other courts do not. *See, e.g., Jesiek v. Fire Pros, Inc.,* 275 F.R.D. 242, 247 (W.D.Mich.2011) ( "Plaintiffs' failure to provide evidence that potential opt-in plaintiffs ... desire to opt-in is not fatal to their motion."); *Lyons v. Ameriprise Fin., Inc.,* No. 10–503, 2010 WL 3733565, at *5 (D.Minn. Sept.20, 2010) ("The existence of more than one or two plaintiffs in an FLSA case at the time of the conditional-certification inquiry has been found sufficient to warrant collective-action treatment, even without a showing that other individuals wish to opt in."); *Heckler v. DK Funding, LLC,* 502 F.Supp.2d 777, 780 (N.D.Ill.2007) (determining that requiring plaintiffs to produce evidence that other employees wish to join the class before notice is sent "puts the cart before the horse" and "does not make sense" because it would force plaintiffs' attorneys to issue their own informal notice or otherwise solicit plaintiffs, undermining a court's ability to provide putative plaintiffs with "a fair and accurate notice," and would "leave significant opportunity for misleading the potential plaintiffs"); *Reab v. Elec. Arts, Inc.,* 214 F.R.D. 623, 629 (D.Colo.2002) (requiring plaintiffs to establish there are other plaintiffs who desire to opt in at the notice stage appears to conflict with the Supreme Court's admonition that the FLSA should "be liberally 'applied to the furthest reaches consistent with congressional direction.' " (quoting *Tony and Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985))).

**\*9** The Court agrees with the reasoning of these courts. Importantly, the Sixth Circuit has never required evidence that others will opt in before the certification decision can be made. Instead, it recognizes the "broad remedial goals" of the FLSA, *O'Brien,* 575 F.3d at 586, which would be undermined by a requirement that Plaintiffs produce evidence that other employees wish to join the class before notice is sent to putative plaintiffs. *Heckler,* 502 F.Supp.2d at 780.

Shipes meets her light burden to make a modest factual showing that she and other hourly, non-exempt employees of Amurcon are similarly situated. The Court can reexamine its ruling if discovery does not support the

allegations. Likewise, if some putative collective action members fail to allege they suffered from Amurcon's alleged unlawful policy and practice of editing time sheets, the Court can consider partial decertification. *See O'Brien,* 575 F.3d at 586.

### C. Plaintiff Jull

The more difficult question is whether Plaintiff Jull meets her burden to show that she is similarly situated to other allegedly exempt salaried Amurcon employees. If she does, the Court can certify two classes, one consisting of hourly, non-exempt employees and the other of salaried, allegedly exempt employees. The Court finds that she does not.

Many courts agree that it is not enough, even at the notice stage, to allege lead and opt-in plaintiffs are similarly situated simply because of the defendant's common scheme to misclassify them as exempt. *See Vasquez,* 2011 WL 2693712, at *4 (a named plaintiff is not similarly situated to a proposed plaintiff simply because she shares exempt status); *Morisky,* 111 F.Supp.2d at 498 (denying conditional collective action certification where the plaintiffs made no showing that the job responsibilities of the named plaintiffs were the same or similar to those of the remaining members of the proposed class, or that the opt-in plaintiffs could be properly classified as non-exempt and where the only common thread was the defendant's classification of plaintiffs and proposed plaintiffs as exempt under the FLSA).

An Arizona district court explained the reason for this:

> As a matter of both sound public policy and basic common sense, the mere classification of a group of employees-even a large or nationwide group-as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes. If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality and quantity of evidence that had been produced in the form of declarations

and supporting exhibits. Such a rule would run counter to the long established law governing § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact specific inquiry.

**\*10** *Colson v. Avnet, Inc.,* 687 F.Supp.2d 914, 927 (D.Ariz.2010).

In misclassification cases, " 'similarly situated' must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt." *Id.; accord Morisky,* 111 F.Supp.2d at 498. Entitlement to compensation depends on an individual, fact-specific, case-by-case analysis of each employee's job duties under the relevant statutory exemption. *Colson,* 687 F.Supp.2d at 927. A collective action is only appropriate where the plaintiffs make a modest factual showing that the nature of the work performed by all class members is at least similar to their own. *Morisky,* 111 F.Supp.2d at 498; *see also Myers,* 624 F.3d at 555 ("In a FLSA exemption case, plaintiffs [meet their burden at the first stage] by making some showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." (quoting *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1259 (11th Cir.2008))); *Prater,* 2007 WL 4146714, at *7 ("Collective action treatment is proper for misclassification claims when the employees have essentially the same basic job responsibilities.").

Jull, a former Staff Account, provides no evidence that other salaried employees performed similar job duties as she. Moreover, her description of her job responsibilities is patently dissimilar from that of Former Plaintiff and Community Manager Platz. It is presumably dissimilar from other non-Staff Account exempt employees.

The Court is mindful that while Plaintiff's burden at this stage is not stringent, certification is by no means automatic. *Colson,* 687 F.Supp.2d at 925. Jull provides nothing more than mere allegations that she and others like her were improperly classified as FLSA-exempt. These allegations lack factual support (such as the written policies and emails that support a class of hourly, non-exempt plaintiffs) and are not enough to meet her burden at this stage.

While her affidavit suggests she may have been subjected

to FLSA-violating practices, standing alone, this declaration does not establish a right to proceed collectively. *See, e.g., Bramble v. Wal-mart Stores,* No. 09–4932, 2011 WL 1389510, at *4 (E.D.Pa. Apr.12, 2011) ("The right to proceed collectively may be foreclosed where an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.") (citations and internal quotation marks omitted).

In *Colson,* the court concluded that the plaintiffs' three declarations and several exhibits "[did] not come close" to establishing a sufficient evidentiary basis that all Sales and Marketing Representatives (SMRs) at the defendant corporation "performed similar tasks and were, as a discernable class, potentially misclassified as employees exempt from over-time pay requirements." 687 F.Supp.2d at 928. The court noted that plaintiff Colson's affidavit revealed she had minimal contact with SMRs outside of her home state, even though the proposed class was nationwide. *Id.* The court observed:

> **\*11** To the extent Ms. Colson has provided information relating to Defendant's employment practices with SMRs outside the state of Oregon, it is based on nothing more than her opinions, which are vague and appear to be based on unspecified hearsay from unidentified sources. This is readily apparent from Ms. Colson's declaration, which makes reference to "discussions ... with [unidentified] co-workers," unspecified "company communications," and undocumented "interactions with other SMR employees and Avnet clients." Her allegations also lack specificity with regards to time or place, and her filing is filled with statements that lack personal knowledge. While Ms. Colson's declaration has some value in describing her own experience, it has no probative value in establishing that she, along with other SMRs across the country, "were together the victims of a single decision, policy, or plan." (Citation omitted). Essentially, Ms. Colson's declaration describes the experience of one former Avnet employee in one office who is claiming to have not been paid the overtime wages she was entitled to.

*Id.* at 928–29.

Jull provides even less than the plaintiff in *Colson.* Her bare-bones affidavit states only, "I know of other individuals who regularly worked overtime hours for Amurcon." (Doc. # 17–6; Ex. E to Plaintiffs' Motion for § 216(b) Certification). She does not even say whether these other, unspecified individuals were paid for their hours of overtime.

Jull fails to make the requisite modest factual showing that

they and other allegedly exempt employees are similarly situated. Her showing is in stark contrast to that made by plaintiffs in *Wlotkowski,* a case Plaintiffs rely on for support. There, eleven named plaintiffs, joined by sixty opt-in plaintiffs, who were all former or current "Outside Plant Engineers" at defendant Michigan Bell Telephone Company, filed a collective action alleging the defendant misclassified them as FLSA-exempt employees. 267 F.R.D. at 214. In certifying a conditional class, the court observed that the motion was supported by thirty-five declarations from named and opt-in plaintiffs. *Id.* at 215. The court noted that although the job title could be broken down to four different positions, the declarations revealed: the employees shared one primary job duty; their work was governed by standards and technical specifications over which they had no control; and they worked alongside each other every day, watched each other work, could perform each other's jobs, and consulted each other about their work. *Id.* at 215–16.

It is clear that the plaintiffs in *Wlotkowski* presented much more evidence to support their claim of similar situation than Jull. Importantly, from the thirty-five declarations of the *Wlotkowski* lead and opt-in plaintiffs, the court was able to discern that they held the same job title, performed similar duties, and shared the same primary job duty. Plaintiffs' Complaint simply states that "Plaintiffs and putative class members worked performing *various job duties* throughout Defendant's places of business, including but not limited to its principal office in Oakland County." (Doc. # 1; Complaint and Jury Demand at 1) (emphasis added). It does not indicate whether all salaried, allegedly exempt employees performed similar job duties. Nor do Plaintiffs inform the Court of the various job titles of employees allegedly misclassified as exempt.

**\*12** Community Manager and Staff Accountant are two job titles; presumably there are others. The *Wlotkowski* plaintiffs all shared the same job title. Jull's affidavit does not suggest that she could step into a Community Manager's shoes. Nor does it suggest she could step into the shoes of any other non-Staff Accountant salaried employee. It reveals she worked in a different location than former Plaintiff and Community Manager Platz and suggests she did not watch Platz work, did not consult with Platz about their jobs, and did not fill in for Platz.

While creating a class of all Staff Accountants (rather than all salaried employees) is one option, the Court still has no basis to believe that there are others similarly situated to Jull within this category. Amurcon employs approximately 250 workers and is headquartered in Oakland County, but there are other offices. Jull does not reveal how many of Amurcon's 250 workers were

classified (or misclassified) as exempt Staff Accountants, or which offices other Staff Accountants worked in. She does not say she has personal knowledge—for example, from watching other Staff Accountants perform their job duties—that these employees performed similar work herself and each other. These distinctions make *Wlotkowski* inapposite.

However, the Court will give Jull a second opportunity to seek conditional certification after she has had a chance to conduct discovery. *See, e.g., Arrington,* 2011 WL 3319691, at \*6 ("Because the plaintiffs' showing is not sufficient to warrant conditional certification, the Court will deny the motion at this time. However, when courts deny such motions at this stage of the proceedings, the court still may permit discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and notice to opt in.") (citation and quotation marks omitted). Therefore, while the Court declines to conditionally certify a class with Jull in it, this portion of Plaintiffs' motion is denied without prejudice. Plaintiffs should also conduct discovery on whether there is a conflict in having Staff Accountants represented by the same counsel as their hourly employees. *See, e.g., Mathews,* 2009 WL 2591497, at \*6–\*7.

### D. Plaintiffs' Proposed Notice, Discovery Request and Opt-in Period

Plaintiffs attach a proposed notice to their motion as Exhibit A. (*See* Doc. # 17–2; Pls' Ex. A). In *Hoffman–La Roche,* 493 U.S. at 169, the Supreme Court held that district courts have discretion to implement § 216(b) by facilitating notice to putative plaintiffs. The Court acknowledged "the propriety, if not necessity" in some circumstances, "for court intervention in the notice process." *Id.* at 170. Plaintiffs also request a list of all potential class members and a ninety-day opt-in period.

In *Wlotkowski,* the district court explained the reasons for court-facilitated notice to putative plaintiffs in an FLSA collective action:

> **\*13** Judicial notice is appropriate here for several reasons. First, unlike class actions under Rule 23, conditional certification of a collective action under § 216(b) of the FLSA does not toll the statute of limitations for potential plaintiffs.... Accordingly, an employee who does not opt-in by filing a signed consent with the Court cannot recover. *See* 29 U.S.C. § 216(b).

Thus, judicial notice protects these claims by informing similarly situated employees of the facts needed to make an informed decision whether to opt-in.... Second, judicial notice promotes judicial economy, helps avoid "multiplicity of duplicative suits" inherent in these types of lawsuits, and notifies putative plaintiffs of an economically feasible litigation option.

267 F.R.D. at 219 (citations omitted).

Defendants do not make any specific objections to Plaintiffs' proposed notice. However, the notice must be amended in light of the Court's denial of Plaintiff Jull's motion for conditional certification and former Plaintiffs' (Kade and Jull) dismissal. All reference to salaried workers must be removed from the notice. The conditional class includes all hourly persons employed by Amurcon within three years of this Order, who were eligible for but did not receive overtime wages. Shipes must submit an amended notice for Court review within seven (7) days of this Order. Defendant will then have three (3) days within which to object before the Court makes its decision.

The Court grants Plaintiffs' request to obtain a list of "all potential class members." (Doc. # 17 at 11). Because Jull's motion is denied without prejudice, she is entitled to discovery to determine whether to re-file a motion for conditional certification with respect to all Staff Accountants. Thus, in addition to providing Plaintiffs with a list of all hourly persons employed at Amurcon within three years of the date of this Order, Defendant must also furnish a list of all Staff Accountants of Amurcon during the relevant time period. These lists must include the information requested, *i.e.,* the names, last known addresses and telephone numbers, all job titles held, and dates and locations of employment of all hourly and salaried employees (and former employees) of Amurcon, employed within the relevant time period. Defendant has fourteen (14) days after the date of this Order to provide this information.

Finally, the Court believes a ninety day opt-in period is reasonable and grants Plaintiffs' request.

## IV. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for § 216(b) Certification and Notice to Potential Class Members.

The motion, to the extent it seeks conditional collective action certification of a class of hourly employees, is **GRANTED.** Likewise, to the extent the motion seeks judicial notice of the action to all hourly employees, and a ninety-day opt-in period, it is **GRANTED.**

To the extent the motion asks for certification of a class of salaried employees misclassified as exempt under the FLSA, it is **DENIED WITHOUT PREJUDICE.**

**\*14** Plaintiffs' request for discovery is **GRANTED.**

**IT IS ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 995362

---

End of Document   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

PAGE SEPARATOR

Swinney v. Amcomm Telecommunications, Inc., Not Reported in F.Supp.2d (2013)

2013 WL 4507919
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Robert SWINNEY, Plaintiff,
v.
AMCOMM TELECOMMUNICATIONS, INC.,
Defendant.

No. 12–12925.
|
Aug. 23, 2013.

**Attorneys and Law Firms**

Edward A. Macey, David M. Blanchard, Nacht, Roumel, Salvatore, Blanchard & Walker, P.C., Ann Arbor, MI, Elizabeth Ann Tully, Harold Lichten, Lichten And Liss–Riordan, P.C., Boston, Ma, for Plaintiff.

David B. Timmis, Timothy J. Connaughton, Vandeveer Garzia, Troy, MI, for Defendant.

**Opinion**

*OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S SECOND
MOTION FOR CONDITIONAL CERTIFICATION [46]*

NANCY G. EDMUNDS, District Judge.

**\*1** Plaintiff Robert Swinney has filed a Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, claim against his employer Defendant AMcomm Telecommunications, Inc., alleging that Defendant misclassified him as an "independent contractor," when he was performing the same work as Defendant's employees, and therefore entitled to overtime pay and other benefits.[1] (Dkt.1, Compl.)

On September 18, 2012, Plaintiff filed his first motion for conditional class certification. The Court denied Plaintiff's motion without prejudice. (Dkt.21.) The Court found that Plaintiff failed to meet the lenient standard for conditional certification and instead only made conclusory allegations in support of certification.

Plaintiff now files this second motion for conditional certification. (Dkt.46.) Defendant again opposes. (Dkt.50.)

Since the first motion, Plaintiff has conducted limited discovery. He conducted depositions of several of Defendant's managers and served interrogatories on Defendant. He uses that discovery, along with his supplemental affidavit, Leslie Wardell's original affidavit and supplemental affidavit, and Appie Cook's new affidavit, to support his argument that he has met the lenient standard for conditional class certification for his FLSA claim. (Pl.'s 2d Mot. at 4–5.) In his reply, Plaintiff adds four additional declarations of former Defendant's employees. (Dkt.56.) Based on this additional evidence, Plaintiff alleges that he has demonstrated that a class of over one hundred technicians were classified as independent contractors who were actually working as employees. (Pl.'s 2d Mot. at 5.) He therefore again argues that he is entitled to conditional certification of the following class:

> All persons who, at any time since September 17, 2009(1) have worked as cable installation technicians for AMcomm Telecommunications, Inc. within the state of Michigan; (2) have been classified as "independent contractors"; and (3) have not been paid time and a half for hours worked over forty in a workweek.

The Court finds that Plaintiff has now met the lenient standard necessary for conditional certification of a class based out of the White Lake warehouse. While the Court recognizes that Defendant has submitted affidavits and evidence that attack and discredit Plaintiff's evidence, the Court's function on this motion is not to weigh the evidence, but simply to evaluate whether Plaintiff has made the necessary allegations for conditional certification. The Court finds that he has.

For the reasons more fully explained below, the Court GRANTS in PART Plaintiff's motion.

**I. Analysis**

Plaintiff alleges that Defendant violated the FLSA because he and the other independent contractors were actually employees entitled to overtime pay. "Section 207(a) of the FLSA requires employers to pay time-and-a-half for employee labor exceeding forty hours per week." *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 545 (6th Cir.2006). The FLSA exempts certain types of employees and workers associated with an employer from the statutory

Swinney v. Amcomm Telecommunications, Inc., Not Reported in F.Supp.2d (2013)

overtime payment requirement. *Id., see* 29 U.S.C. § 213.

### A. Conditional class certification-general principles

**\*2** Plaintiff seeks conditional class certification and judicial notice of a collective action as allowed under § 216(b) of the FLSA. Section 216(b) provides that:

> An action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added). As the Sixth Circuit has observed, "[u]nlike class actions under [Rule] 23, collective actions under FLSA require putative class members to opt into the class," and "[t]hese opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action." *O'Brien v. Ed Donnelly Enter., Inc.,* 575 F.3d 567, 583 (6th Cir.2009). Suits brought under § 216(b) of the FLSA are thus called "collective actions," not class actions. *See Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006).

Section 216(b) "establishes two requirements for a representative action" brought by employees "in their own behalf and for 'similarly situated' persons." *Id.* First, "the [named] plaintiffs must actually be 'similarly situated,' " and second, "all plaintiffs must signal in writing their affirmative consent to participate in the action." *Id.* (citing 29 U.S.C. § 216(b) and *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 167–68, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). The district court's task is to "first consider whether plaintiffs have shown that the employees to be notified" of the collective action "are, in fact, 'similarly situated.' " *Id* . If the plaintiffs meet this burden, then "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Id.*

Although the phrase "similarly situated" is undefined, "the Sixth Circuit has recognized that district courts typically 'follow[ ] a two-stage certification process ... to determine whether the opt-in plaintiffs and lead plaintiffs [are] similarly situated.' " *Noble v. Serco, Inc.,* No.

3:08–76–DCR, 2009 WL 3154252, \*1 (E.D.Ky. Sept.28, 2009) (quoting *O'Brien,* 575 F.3d at 583 and citing *Comer,* 454 F.3d at 546). The first stage of § 216(b) certification, also known as the "notice stage," takes place early in the litigation; i.e., "at the beginning of discovery." *Comer,* 454 F.3d at 546. At this notice stage "the court determines whether the suit should be 'conditionally certified' as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate." *Noble,* 2009 WL 3154252 at \*1. The second stage occurs later, "after all of the opt-in forms have been received and discovery has been concluded." *Comer,* 454 F.3d at 546 (internal quotation marks and citation omitted).

**\*3** Plaintiff's motion here involves this first or "notice" stage and seeks only conditional, not final, certification. "The lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien,* 575 F.3d at 584. Plaintiff's burden under the FLSA is less stringent than that required for class certification under Rule 23 of the Federal Rules of Civil Procedure. *Id.* (observing that the district court erred when it "applied a Rule 23–type analysis" and found "that the plaintiffs were not similarly situated because individualized questions predominated."). To be considered "similarly situated," it is sufficient if plaintiffs' "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct." *Id.* at 585. This common theory is a sufficient, but not a necessary, condition for a finding that a group of employees is similarly situated. *Id.* Moreover, as the Sixth Circuit observed in *Comer,* "[t]he plaintiff must show only that his position is similar, *not identical,* to the positions held by the putative class members." *Comer,* 454 F.3d at 546–47 (internal quotation marks and citations omitted and emphasis added). District courts generally allow the lead plaintiffs to "show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Olivo v. GMAC Mortgage Corp.,* 374 F.Supp.2d 545, 548 (E.D.Mich.2004) (internal quotation marks and citations omitted). *See also Brasfield v. Source Broadband Servs., LLC,* 257 F.R.D. 641, 642 (W.D.Tenn.2009) (same).

This "first stage" or notice standard is "fairly lenient," requiring only that Plaintiff "submit evidence establishing at least a colorable basis for [his] claim that a class of 'similarly situated' plaintiffs exists." *Olivo,* 374 F.Supp.2d at 548 (internal quotation marks and citation omitted). "[T]he Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield,* 257 F.R.D. at 642.

Swinney v. Amcomm Telecommunications, Inc., Not Reported in F.Supp.2d (2013)

See also *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 2012 WL 5392621, at *6 (6th Cir.2012 Nov. 6, 2012).

When a court has afforded limited discovery to a plaintiff, he may not rest on the unsupported allegations in his complaint, but must put forth a "modest factual showing" that the putative plaintiffs are similarly situated. *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242 (W.D.Mich.2011) (Maloney, C.J.) (citations omitted). *See also Wade v. Werner Trucking Co.*, 10–00270, 2012 WL 5378311 (S.D.Ohio Oct.31, 2012). (discussing modest-plus standard when some conditional class discovery has taken place). *And see Bacon v. Eaton Aeroquip, LLC*, 11–14103, 2012 WL 6567603, at *3 (E.D.Mich. Dec.17, 2012) (Drain, J.) (finding that, because the parties had engaged in limited discovery and the plaintiff had filed motions to compel discovery that the court must enact a "more exacting review of [the plaintiff's] factual support for granting class certification.").

**B. Plaintiff's factual showing**
**\*4** In Plaintiff's second motion for conditional certification, he resubmits his affidavit and Leslie Wardell's affidavit, who now wishes to rejoin this case.[2] Plaintiff and Wardell have submitted supplemental affidavits in support of this second motion as well. Plaintiff has also submitted Appie Cook's affidavit and four other declarations to show that Defendant's independent contractors often worked over forty hours per week and were not paid overtime. Plaintiff finally offers an exhibit setting forth an arguably loosely calculated table of independent contractors who worked more than forty hours per week.

**1. Plaintiff's affidavit and supplemental affidavit**
Plaintiff has submitted an affidavit in support of his motion for condition certification. (Pl.'s Mot., Ex. C, Pl.'s Aff.)

Plaintiff worked at Defendant from approximately October, 2010 until March, 2012 out of Defendant's White Lake, Michigan location. (Pl.'s Aff. ¶¶ 1, 2.) Plaintiff stated that he worked as an "independent contractor." (*Id.*) As an independent contract, Plaintiff stated that "[a]ll the work [he] performed was related to the installation and repair of high-speed internet, cable television, and telephone services for customers of Bright House Networks." (*Id.* ¶ 3.)

Plaintiff stated that Defendant trained its independent contractors. (Pl.'s Aff. ¶ 4.) Plaintiff explained that Defendant required him to train with installation technicians for two weeks to learn how Defendant "wanted [ ] each job order carried out, and [ ][was] trained by [Defendant] on how to perform such installations and repairs." (*Id.*) Plaintiff added that Defendant never paid him for the time he spent training. (*Id.*)

Plaintiff stated that, for most of the time he worked at Defendant, he would arrive at the White Lake warehouse by 7 a.m. (Pl.'s Aff. ¶ 5.) Plaintiff stated that "[a]pproximately 50 other technicians who were allegedly 'independent contractors' would report to [White Lake] on a daily basis around 7:15." (*Id.*) Plaintiff added that there were other technicians who installed for Charter, who had to arrive much earlier, around 6 a.m. (*Id.*) Plaintiff stated that he did not know how many of these Charter technicians there were. (*Id.*)

While working at Defendant, Plaintiff stated that Defendant would give work out to carry out cable installation services for the various cable company customers. (Pl.'s Aff. ¶ 6.) Plaintiff stated that Defendant's supervisors assigned the work orders. (*Id.*) And Plaintiff added that the independent contractors were required to have signage of Defendant and the cable company for which they were performing work on their vehicles, and that they were required to wear Defendant shirts and badges. (*Id.*)

Plaintiff alleged that the independent contractors had no "discretion other than to follow the work order given to [them] by [Defendant] and to perform the work assigned at the times assigned." (Pl.'s Aff. ¶ 7.) Plaintiff stated that his job assignment times ranged from 8 a.m. to 10 p.m. (*Id.* ¶ 8.) He maintained that he was required to stay until the job was completed. (*Id.*)

**\*5** Plaintiff stated that Defendant knew where he was at all times, because Defendant tracked all of its trucks by GPS. (Pl.'s Aff. ¶ 9.) Plaintiff stated that, "if [he] was called to do a last-minute job, [he] felt that [he] could not decline to take the job." (*Id.*) Plaintiff added that Defendant knew where its trucks had been and that it checked to see if the cable installation technicians "arrived to assigned jobs on time." (*Id.*)

Plaintiff explained that "Quality Control" inspected the jobs he performed. (Pl.'s Aff. ¶ 10.) Plaintiff further explained that, if Quality Control "did not like the quality of the job," Defendant would deduct a "charge back" from his pay. (*Id.*) Plaintiff stated that the Quality Control person was a Bright House employee, but Defendant deducted the charge back from his paycheck. (*Id.*) Plaintiff added that the "charge back" for any quality issue was

$100.00, regardless of whether the job completed was worth less. (*Id.*) Plaintiff stated that he did not have the right to contest the reasons for his charge backs and that he was only told that he had to sign the charge back paperwork, which then resulted in the deduction. (*Id.*)

Plaintiff stated that Defendant paid the independent contractors on a perjob basis and gave a set amount for each job. (Pl.'s Aff. ¶ 12.) Plaintiff added that the independent contractors did not have the ability to negotiate the amount of their payments. (*Id.*)

Plaintiff stated that he and "virtually all of the cable installation technicians who worked for [Defendant], worked more than 40 hours each week." (Pl.'s Aff. ¶ 13.) Plaintiff also stated that he and the other technicians would have to work five days a week, "between 60 and 80 hours a week and on no occasions were [they] ever paid overtime." (*Id.*) If a technician left early, Plaintiff stated, he would be penalized by "being given low-value work, and/or [he] would be backcharged." (*Id.* ¶ 14.)

Plaintiff alleged that, during the time he and other contractors performed work for Defendant "there was virtually no opportunity to work for any other cable installing company or to perform any other telecommunications work." (Pl.'s Aff. ¶ 15.) Plaintiff gave two reasons for not having the opportunity to work anywhere else. (*Id.*) He first stated that the independent contractors "were required to work all the time for [Defendant,] there was no time to [work for anyone else.]" (*Id.*) The second reason, Plaintiff stated, was because he and the other contractors "were informed that [they] could not work for both a competitor of [Defendant] and [Defendant.]" (*Id.*)

Plaintiff maintained that, while working for Defendant, "all of the equipment which [he and the other contractors] installed or repaired was provided [by Defendant.]" (Pl.'s Aff. ¶ 16.) Plaintiff added that, if he and the other contractors needed tools, they could get them from Defendant's warehouse and then Defendant would take the costs of the tools out of their paychecks. (*Id.*) Plaintiff also added that they had to rent and return some of the specialized tools on a daily basis. (*Id.*)

**\*6** Plaintiff then stated that, if Defendant "did not believe a technician was doing a good job, [it] would simply terminate the technician without notice. [Defendant] could also terminate technicians for no reason at all." (Pl.'s Aff. ¶ 17.)

Plaintiff has submitted a supplemental affidavit. (Pl.'s 2d Mot., Ex. 8, Pl.'s 2d Aff.) In this affidavit, Plaintiff

provides additional information as to how he knows that other "technicians" were performing work for Defendant for more than forty hours per week. (*Id.*)

### 2. Leslie Wardell's affidavit and supplemental affidavit

Wardell stated that he worked as an independent contractor for Defendant from 2008 until 2011. (Wardell Aff. ¶¶ 1, 3.) Wardell explained that Defendant routed him work from various cable companies, including Bright House, WOW, and Charter Telecommunications. (*Id.* ¶ 3.) He also explained that he had to receive specialized training for each provider and that he never received payment for the time he spent training. (*Id.* ¶ 4.)

For most of his time working for Defendant, Wardell stated that he showed up at work at 7 a.m. (Wardell Aff. ¶ 5.) He said that he would arrive to the White Lake warehouse along with one hundred other technicians who were "allegedly" independent contractors. (*Id.*) There, Defendant would give the independent contractors work orders to carry out cable installation services for various cable company customers. (*Id.*) Wardell said that Defendant required the independent contractors to have AMcomm signage on their cars and to wear AMcomm shirts. (*Id.*)

Wardell stated that, when Defendant assigned him a work order, he had no discretion to not accept it. (Wardell Aff. ¶ 6.) He said he had worked until 10 p.m. sometimes. (*Id.* ¶ 7.) Wardell then explained the "charge back" fees for Bright House and WOW. (*Id.* ¶¶ 10, 11.)

Wardell stated that Defendant paid him on a per job basis. (Wardell Aff. ¶ 14.) He said that he and virtually all of the cable installation technicians worked more than forty hours per week, typically for six days per week. (*Id.* ¶ 15.) He added that he and the independent contractors never received overtime. (*Id.*) He stated that, if he left early or did not work a day, Defendant would penalize him by giving him low-value work or no work the subsequent days, or Defendant would back charge him. (*Id.* ¶ 16.)

The rest of his affidavit mirrored Plaintiff's affidavit.

Leslie Wardell provided a supplemental affidavit similar to Plaintiff's—explaining the factual basis surrounding his knowledge about the allegations in his original affidavit. (Pl.'s 2d Mot., Ex. 9, Wardel 2d Aff.)

### 3. Appie Cook's affidavit

In 2001, Defendant hired Cook to perform cable installation. (Pl .'s 2d Mot., Cook Aff. ¶ 4.) Cook stated that, beginning in 2007, he and other installation technicians working for Defendant, began reporting to Defendant's warehouse in White Lake, Michigan. (*Id.* ¶ 5.) Cook added that he reported to the White Lake warehouse every day between 7:00 and 8:00 a.m. (*Id.*) Cook explained that the warehouse had Defendant's name and logo on the side of the building and that the Defendant's managers and supervisors were in charge of the warehouse. (*Id.*) Prior to 2007, Cook stated that he and the other contractors who worked for Bright House would report directly to the Bright House warehouse to pick up routes and equipment. (*Id.* ¶ 6.) In 2007, Cook stated that Defendant's owner, Matt Schultz, met with all the cable installers and told them to no longer report to Bright House and to instead report to Defendant's warehouse because Defendant "did not want the independent contractors ... to interact with the employed installers working at Bright House directly." (*Id.* ¶ 7.)

**\*7** Cook stated that, while working for Defendant, he was an "independent contractor," and all the work he performed was related to the installation and repair of high-speed internet, cable television, and telephone services for customers of Bright House. (Cook Aff. ¶ 8.) Cook added that he provided work for Defendant and that Defendant's employees directed him and other technicians how to perform the work for Defendant's clients. (*Id.* ¶ 9.) Cook explained that, when he and other technicians received work orders for the day, they had no discretion "other than to follow the work order given to [them] by [Defendant] and to perform the work assigned at the times assigned." (*Id.*) The jobs, Cook added, were scheduled in two-hour windows, starting at 8 a.m. and going until 8 p.m. (*Id.* ¶ 10.) Cook also added that Defendant instructed him as to which residences he would work on and what services he could provide to the customers. (*Id.* ¶ 11.) If a customer asked for an additional service that Defendant did not offer, Cook stated that he and other technicians had to turn the customer down. (*Id.* ¶ 12.) Cook explained that, if he did any work outside of work for Defendant, Defendant would subject him to certain fees. (*Id.*)

Cook maintained that Defendant told him that he could no longer work for Bright House because Defendant allegedly said that he was soliciting people for his own personal business while on Defendant's time. (Cook Aff. ¶ 12.)

Cook stated that, from 2007 through December, 2012, he reported to Defendant's offices every morning between 7 and 8 a.m. to receive his work orders. (Cook Aff. ¶ 14.) He added that Defendant employed at least seventy to one hundred other technicians "like" him whom Defendant

classified as independent contractors and did not pay overtime. (*Id.*) While working for Defendant, Cook stated that Defendant did not permit him and the other technicians to solicit additional work independent of the services that they provided for Defendant. (*Id.* at 15.)

Cook explained how Defendant paid him. (Cook Aff. ¶ 17.) He said that Defendant paid him on a per job/task basis and gave him a set amount for each job. (*Id.*) He also said that he had no ability to negotiate the amount of payment, and that Defendant did all of the billing to the customer, and then paid the independent contractors. (*Id.*)

Cook stated that, between 2009 and 2012, he attended meetings with other independent contractors that Defendant's management ran. (Cook Aff. ¶ 19.) He added that the meetings would include between fifteen and one hundred people, depending upon whether Defendant's technicians who worked for Charter Telecommunications were also present. (*Id.* ¶ 20.) Cook explained that approximately fifteen to twenty-five technicians worked for Bright House, while seventy to one hundred technicians worked for Charter. (*Id.*) Cook stated that the meetings involved issues related to independent contractors. (*Id.* ¶ 21.) Also at the meetings, Cook said that Defendant and the other contractors discussed the possibility of shifting the contractors to employees. (*Id.* ¶ 22.) Cook recounted that Defendant told him and the other installers that, if they switched to being employees, they would not have to pay for Defendant's vehicles, gas, or phones. (*Id.* ¶ 23.)

**\*8** Cook explained that he had the choice to use his own car or one of Defendant's vehicles to perform installation. (Cook Aff. ¶ 29.) Cook stated that, if he used one of Defendant's vehicles, Defendant would deduct $75.00–125.00 from his paycheck every week. (*Id.* ¶ 32.) If he were to use his own vehicle, he stated that he would have to purchase a Defendant decal for the car, which cost $50.00, if he needed to replace it. (*Id.* ¶ 33.) Cook added that Defendant required every technician to purchase shirts that had Defendant's name on the front and back to wear while working. (*Id.* ¶ 35.) If the contractors were not wearing a shirt, Cook stated that Defendant would not give them work that day. (*Id.* ¶ 36.) Cook also stated that he and the other contractors had to purchase special tools to perform the installations and that they could purchase the tools directly from Defendant's warehouse. (*Id.* ¶ 37.) Cook stated that he and the other technicians were required to record the amount of time they took on each job. (*Id.* ¶ 38.) He said that his pay per job ranged from $8.00 to $100.00. (*Id.* ¶ 40.) If the jobs had quality control issues, Cook stated that Defendant would charge a "back charge" that ranged from $50.00 to $100.00, depending upon the

issue. (*Id.* ¶ 41.) Cook maintained that, even if Defendant found a small error, Defendant would charge him, even if the error did not result in any negative effect on the customer. (*Id.*) Cook said that Defendant charged him these back charges between five and ten times. (*Id.* ¶ 42.) He added that sometimes, Defendant would charge $100.00 on an $8.00 job. (*Id.* ¶ 43.) Cook explained that Defendant would charge back charges if the technicians drove outside of the service area or had unapproved people in Defendant's vehicle with them. (*Id.* ¶ 44.) Back charges for driving outside the service area were $100.00; for unapproved people, $200.00. (*Id.*)

Cook stated that "[v]irtually all the cable installation technicians and [he] worked more than 40 hours each week for [Defendant.]" (Cook Aff. ¶ 45.) Cook added that the technicians worked at least six days per week and performed between sixty and eighty hours of work a week, without ever receiving overtime pay. (*Id.* ¶¶ 45, 46.) Cook maintained that there were weeks that he would work seven straight days without receiving overtime pay. (*Id.* at 47.) When he worked seven days, he stated that he would see three to eight Bright House technicians reporting to work for a seventh day, as he did. (*Id.* ¶ 48.)

Cook stated that he knew that other technicians were working over forty hours per week for a variety of reasons, including:

• he would see other technicians' work orders when he would report to work each morning;

• he was able to determine, based on his experience, that Defendant assigned work for longer than an eight-hour period; and

**\*9** • he would regularly discuss, with other technicians, the hours they were working for Defendant.

(Cook Aff. ¶¶ 50–52.)

Cook stated that Matthew Schultz told the technicians that the pay rate for technicians was the same for all jobs based on which cable company the technician worked for. (Cook Aff. ¶ 53.)

Cook revealed that the technicians would "regularly" trade work orders or fill in for each other if one technician could not do a job for some reason. (Cook Aff. ¶ 54.) Cook stated that, in these interactions, he was able to see the other technicians' work orders and see that the jobs would take longer than eight hours per day. (*Id.*) He also stated that he knew others were working more than eight hours per day and over forty hours per week because he would pass them

late at night when he had seen them at the warehouse early in the morning. (*Id.* ¶ 54.)

Cook asserted that, in the summer of 2009, Defendant told him that he could not take a vacation; and that if he did take a vacation, Defendant would no longer permit him to work for it. (Cook Aff. ¶ 56.) In December, 2012, Cook stated that Defendant told him that he could no longer work for Bright House, but that he could still work for Defendant. (*Id.* ¶ 57.) Cook chose not to work, he explained, because Defendant would pay him less and required him to be at work even earlier. (*Id.* ¶ 58.)

### 4. Plaintiff's additional evidence

Plaintiff has submitted four declarations from workers. (Pl.'s Reply, Exs. 6–9.) In these declarations, four former/current workers of Defendant state that they worked as installation technicians, were classified and compensated as independent contractors, "almost always worked more than 40 hours per week" and did not receive overtime for the hours they worked over forty hours. (*Id.*) They stated that they performed installation services for Charter Communications and WOW. (*Id.*)

Plaintiff has also submitted Jacob Clark's affidavit. (Pl.'s Reply, Ex. 2, Clark Aff.) Clark, an intern at Plaintiff's counsel's firm, has submitted a list a sample weeks in which independent contractors worked over forty hours per week for Defendant. (*Id.* ¶ 5.) Clark compiled the list from Charter Communications and Bright House Networks documents. (*Id.* ¶ 7.) Clark assumed a 7:30 a.m. start time for each of the workers, because Michael Smith testified that that time was when the independent contractors arrived to the warehouse to start work. (*Id.* ¶ 9.) Assuming that start time, Clark looked to the end times of the work orders to calculate the total number of hours worked daily and weekly. (*Id.* ¶ 10.) Clark stated that, once he found one week in which the independent contractor worked over forty hours, he did not determine whether the contractor worked any other over-forty work weeks. (*Id.* ¶ 11.) Clark's compilation shows that over ten independent contractors worked over forty hours for at least one week.

**\*10** Plaintiff offers the numbers of independent contractors that have worked for Defendant for the last four years:

• 2009: 131

• 2010: 126

• 2011: 130

• 2012: 81

(Pl.'s 2d Mot., Ex. 2.)

### C. Michael Smith's deposition testimony

Plaintiff took Michael Smith's deposition. Smith's testimony directly contradicts many of Plaintiff's assertions in the affidavits. Smith is Defendant's operations manager. (Pl.'s 2d Mot ., Ex. 1, Smith Dep.)

Smith stated that the employees and contractors both report to the White Lake office. (*Id.* at 8.) He added that there are more employees than contractors. (*Id.*) His duties, he explained, consisted of being in charge of daily operations, billing, and how the work is routed. (*Id.*) Smith stated that he was operations manager of several cable companies through AMcomm, Charter and Bright House. (*Id.* at 9.)

Smith explained the process of assigning jobs to independent contractors. Smith stated that he received work orders from Bright House, approximately ninety percent of its field work, the night before the work is needs to be completed. (Smith Dep. at 14.) Smith explained that he assigned jobs to the in-house technicians first and then to the contractors. (*Id.*)

Smith stated that contractors work as much as they want, and that he did not "force them to do anything." (Smith Dep. at 18.) He explained that contractors could work seven days per week if they chose to. (*Id.*) He said no contractors worked seven days, though, but that some worked six days per week. (*Id.* at 18–19.)

Smith testified that the work employees and contractors do is the same, although they have different pay rates. (Smith Dep. at 22.)

Smith stated that Defendant did not hold meetings for contractors to inform them about new developments and technology. (Smith Dep. at 21.) He explained that contractors received this type of information from literature. (*Id.*)

Smith stated that Defendant only requires technicians to wear IDs. (Smith Dep. at 32–33.) Smith stated that Defendant did not require the independent contractors to wear shirts with Defendant's logo on them. (*Id.* at 33.)

Smith also testified that Defendant had locations in Coldwater, Kalamazoo, and Mount Morris, in addition to White Lake. (Smith Dep. at 23.) There are contractors at those other facilities as well. (*Id.*)

### D. Plaintiff now has met the lenient standard to certify a conditional class

With his renewed motion, affidavits, and exhibits, the Court finds that Plaintiff has met the lenient standard for condition class certification. The Court will therefore conditionally certify a class; but the Court limits the class to the White House, Michigan independent contractors, for Plaintiff has not provided an affidavit or any evidence showing that there were similarly situated independent contractors in Defendant's other locations.

Plaintiff argues that now the affidavits do more than what they did before. (Pl.'s 2d Mot. at 10.) Plaintiff maintains that he has offered evidence that he more than simply "believes" other independent contractors subject to Defendant's practices exists; he now states that he and the other affiants have established that they have personal knowledge about the overtime and classification of independent contractors. (*Id.*)

**\*11** In its second response, Defendant points out inconsistencies with Plaintiff's affidavits and the other affidavits. Defendant also offers its own affidavits to refute Plaintiff's offered assertions. And Defendant even goes so far as to allege that Plaintiff himself rarely worked five days per week. Because of these inconsistencies and factual differences, Defendant maintains that Plaintiff is not entitled to conditional class certification.

The Court agrees with Plaintiff. Given the additional affidavits, and because the Court does not resolve factual disputes on a motion for conditional certification, the Court finds that Plaintiff has met his burden. Plaintiff has produced evidence that Defendant scheduled those people whom it called independent contractors for over forty hours of work per week without paying them overtime. The Court notes that that class is a general one, where Defendant is arguing for a more specific class.[3] But the Court finds that Defendant's arguments are more suited for the second stage of conditional certification. *See Pacheco v. Board's Head Provisions Co., Inc.,* 671 F.Supp.2d 957 (W.D.Mich.2009) (citation omitted) ("The standard applied at the second stage considers a variety of factors, including the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action.").

Plaintiff points to *Lee v. Gab Telecom, Inc.,* 12–14104, 2013 WL 1632552 (E.D.Mich. Apr.16, 2013) (Drain, J.), a case brought by Plaintiff's counsel in another court in this district. There, the court granted the plaintiff's request for conditional certification. *Id.* at \*1. The facts and claims are

similar to this case's facts and claims. There, four plaintiffs, cable installation technicians, alleged that the defendant cable company violated the FLSA by not paying the plaintiffs time-and-a-half when they worked more than forty hours per week. *Id.* The court noted that the defendant cable company paid the technicians on a perjob basis. *Id.* The court also noted that the defendant had originally classified the technicians as independent contractors, but then classified them as employees. *Id.* In support of conditional certification, the plaintiffs stated that they had personal knowledge of the defendant's treatment of other technicians by: (1) observing other technicians' assignments; (2) speaking with other technicians about the amount of hours they worked; (3) attending staff meetings where the defendant's owner and manager discussed compensation for technicians in general terms; and (4) observing other technician's' billing statements. (*Id.*)

The *Gab* court held that the plaintiffs alleged that they were similarly situated in the following ways: they worked exclusively for the defendant as cable installation technicians; (2) they were paid a flat rate for each installation they completed; (3) the defendant misclassified them as independent contractors; and (4) they worked over forty hours per week without receiving overtime pay.2013 WL 1632552, at *2.

**\*12** The *Gab* court distinguished this Court's first order denying Plaintiff's motion for conditional certification. 2013 WL 1632552, at *3. The court stated that the plaintiffs "alleged personal knowledge of the characteristics shared with the putative class." *Id.* And the court noted how the plaintiffs alleged a plausible account of how they acquired personal knowledge that the other technicians worked more than forty hours per week. *Id.* The court found this information, along with the plaintiffs' supplemental affidavits, was sufficient for conditional class certification. *Id.* at *4.

The Court finds that *Gab* is analogous and illustrative.

Here, as in *Gab,* the Court is not addressing this case's merits, the Court only looks to the affidavits to see if Plaintiff has made sufficient allegations and a modest factual showing. Plaintiff has done so.

Defendant argues that the Court must impose a more rigid standard in evaluating the affidavits that Plaintiff has submitted since the Court has afforded Plaintiff the ability to conduct limited discovery. (Def.'s 2d Resp. at 14.) Defendant argues that it has pointed out inconsistencies in Plaintiff's offered affidavits and that the Court must discredit the affidavits and rule that there is not a similarly situated class. (*Id.*) *See Pacheco v. Boar's Head Provisions*

*Co., Inc.,* 671 F.Supp.2d 957, 965 (W.D.Mich.2009) (finding that the plaintiffs failed to meet the modest burden in proving that the potential opt-ins were similarly situated because the plaintiffs' affidavits and deposition testimony contradicted each other.). Here, though, unlike in *Pacheco,* Defendant did not examine Plaintiff and the potential opt-ins, Defendant is mostly pointing to inconsistencies between the different affidavits. That difference, the Court finds, is enough to remove this case from *Pacheco* 's reasoning and holding.

Defendant also argues that the fact that Plaintiff has not offered more affidavits from other individuals "is clear evidence that none [of the individuals] wish to participate and there is no reason to certify this as a collective action." (Def.'s 2d Resp. at 9.) But Plaintiff need not provide evidence that other employees wish to opt in before the Court conditionally certifies a collective class. *See Shipes v. Amurcon Corp.,* 10–14943, 2012 WL 995362, at *8–9 (E.D.Mich. Mar.23, 2012) (Roberts, J.) (collecting cases and stating, "the Sixth Circuit has never required evidence that others will opt in before the certification decision can be made. Instead it recognizes the 'broad remedial goals' of the FLSA ... which would be undermined by a requirement that [a plaintiff] produce evidence that other employees wish to join the class before notice is sent to putative plaintiffs.").

Plaintiff has met the lenient standard for conditional certification.

## IV. Conclusion

For the above-stated reasons, the Court GRANTS in PART Plaintiff's motion. The Court conditionally certifies the following class:

> **\*13** All persons who, at any time since September 17, 2009(1) have worked as cable installation technicians for AMcomm Telecommunications, Inc. out of the White Lake, Michigan warehouse; (2) have been classified as "independent contractors"; and (3) have not been paid time and a half for hours worked over forty in a workweek.

SO ORDERED.

## All Citations

Swinney v. Amcomm Telecommunications, Inc., Not Reported in F.Supp.2d (2013)

Not Reported in F.Supp.2d, 2013 WL 4507919

Footnotes

1    Defendant is a telecommunications company involved in telephone and cable and internet installation. Defendant states that its employees perform 80% of the work involved with the company's business. It further states that it utilizes independent contractors for overflow work and that these independent contractors "sign independent contractor agreements [that] specifically set forth the nature of the relationship as that of an independent contractor as opposed to an employee." (Def.'s Resp. at 1.)

2    Plaintiff explains that Mr. Wardell has elected to rejoin the case. (Pl.'s 2d Mot. at 9, n. 4.) Plaintiff states that Mr. Wardell asked Defendant for his job back with Defendant. (*Id.*) Plaintiff explains that Defendant's owner, Matt Schultz, conditioned Mr. Wardell's reemployment on his withdrawing from the suit. (*Id.*) Plaintiff adds that Mr. Wardell now desires to join the case again and that Mr. Wardell has filed a new case against Defendant. (*Id.*)

3    Defendant, in its second response, offers that Plaintiff, Wardell, and Cook differ with respect to: pay; job duties; chargebacks; use of equipment; types of jobs assigned; cable companies for whom work is performed; clothing worn on the job; vehicles used on the job; Amcomm offices to which the contractors report, and even whether they report; and frequency and days worked. (Def.'s 2d Resp. at 5.)

---

**End of Document**                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

PAGE SEPARATOR

2012 WL 5378311
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Eastern Division.

Malcolm WADE, Plaintiff,
v.
WERNER TRUCKING COMPANY, Defendant.

No. 2:10–CV–00270.
|
Oct. 31, 2012.

**Attorneys and Law Firms**

David K. Stein, Beth Jennifer Nacht, Lance Chapin, Richard F. Chambers, II, Stein Chapin & Associates LLC, Columbus, OH, for Plaintiff.

Jeremy Young, Stephen Douglas Jones, Roetzel & Andress LPA, Columbus, OH, Anthony J. Romano, Robert John Hingula, Polsinelli Shughard PC, Kansas City, MO, for Defendant.

**Opinion**

### OPINION AND ORDER

EDMUND A. SARGUS, JR., District Judge.

**\*1** This matter is before the Court for consideration of Plaintiff Malcolm Wade's Motion to Extend Notice. (ECF No. 75.) Additionally, the Court will consider Defendant Werner Trucking Company aka Werner Enterprises, Inc.'s Motion to Strike, or in the Alternative, For Leave to File Sur–Reply. (ECF No. 79.) For the reasons that follow, Plaintiff's Motion to Extend Notice is **GRANTED** in part and **DENIED** in part. Defendant's Motion to Strike is **GRANTED** to the extent that the Court has considered the attached Sur–Reply.

### I. BACKGROUND

Plaintiff brings this action on behalf of himself and all others similarly situated as a collective action against Defendant for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").[1] Defendant is a Nebraska corporation that supplies transportation and logistics services to various entities and provides such services throughout the state of Ohio. (Am. Compl. ¶¶ 7–9, ECF No. 30.) Plaintiff worked as a fleet coordinator for Defendant, and asserts that his primary duties consisted of organizing and coordinating transportation for Defendant's trucks. (Id. at ¶ 22.) Plaintiff maintains that both he and other similarly situated individuals were not paid overtime despite working greater than forty hours in a work week in non-exempt positions. (Id. at ¶ 13.)

After engaging in discovery for the purposes of identifying class members, Plaintiff moved for conditional class certification pursuant to 29 U.S.C. § 216(b). In support of his Motion, Plaintiff submitted his own affidavit; affidavits of other fleet coordinators; deposition testimony; multiple job descriptions of different fleet coordinator positions; and salary information for various classes of fleet coordinators. (See Opinion & Order 5–6, ECF No. 65.) Upon review, the Court held that Plaintiff met the modest factual showing required for conditional class certification as to other fleet coordinators. (Id. at 6.) The parties subsequently submitted a Joint Proposed Notice, which the Court approved. The Notice defined the conditional class as follows:

> Any and all dedicated and non-dedicated day and night fleet coordinators employed by Defendant Werner Enterprises, Inc. from September 8, 2007, to the present and/or any and all Werner employees employed during the relevant time period who had the same job duties as Plaintiff and were paid as exempt employees under the FLSA.

(ECF No. 70–1.)

Plaintiff's counsel avers that after sending notice of the conditional class she was contacted by employees of Defendant with the job titles of fleet manger, JT coordinator, and load planner.[2] (Nacht Aff. ¶ 2, ECF No. 75–1.) According to Plaintiff's counsel, these individuals did not receive notice, but described their job duties as being similar to, or the same as, the duties of fleet coordinators. (Id. at ¶¶ 4–5.) As a result of this information, Plaintiff requested and received job descriptions for fleet managers, JT coordinators, and load planners.[3] (Id. at ¶¶ 7–8.) Plaintiff's counsel further avers that Defendant refused to provide the identities and contact information for employees fitting these job descriptions.[4]

**\*2** Plaintiff filed the current Motion to Extend Notice on October 3, 2012. Plaintiff maintains that fleet managers, JT coordinators, and load planners are similarly situated to fleet coordinators and, therefore, the Court should order notice to be sent to these categories of employees. In support of this Motion, Plaintiff initially produced job descriptions for the different positions as well as the Affidavit of Jared Pitts.[5] Mr. Pitts avers that he was a fleet manager for Defendant; that he performed the same basic duties as a fleet coordinator; and that he and other fleet managers did not receive overtime pay despite working more than forty hours per week. (Pitts Aff. ¶¶ 3–4, 6, ECF No. 77–1.) Defendant opposes extension of class certification to the proposed job classifications. Defendant specifically maintains that Plaintiff has failed to submit sufficient evidence that the positions in question involved the same job duties that Plaintiff performed.

Plaintiff submitted its reply briefing on October 11, 2012. On the same day, Plaintiff submitted the Affidavits of Jodi Wyman and Mark Canady. Ms. Wyman states that she was a JT coordinator for Defendant; that she performed the same job duties as a fleet coordinator; and that she and other JT coordinators worked over forty hours per week and did not receive overtime compensation. (Wyman Aff. ¶¶ 2, 4, 6, ECF No. 77–1.) Likewise, Mr. Canady avers that he was a load planner for Defendant; that he performed similar duties to those of a fleet coordinator; and that he and other load planners worked greater than forty hours per week and did not receive overtime compensation. (Canady Aff. ¶¶ 2, 4, 6, ECF No. 77–1.) Defendant subsequently moved to strike Plaintiff's newly submitted evidence filed with the Reply.

## II. ANALYSIS

### A. Motion to Strike or File Sur–Reply
As a preliminary matter, the Court must consider whether to strike the evidence Plaintiff submits in conjunction with his Reply. Defendant maintains that by attaching two new affidavits for the first time with his Reply, Plaintiff has deprived Defendant of the ability to adequately respond. In the alternative to striking these documents, Defendant requests leave to file the Sur–Reply that it attaches to its Motion to Strike. (ECF No. 79–1.) Plaintiff maintains that because of the time-sensitive nature of the issue, he was attempting to bring the matter before the Court as quickly as possible. Plaintiff, however, does not object to Defendant's Sur–Reply.

The Court has the inherent authority and discretion to strike filings and materials that do not comply with the Court's rules. *Ogle v. SAC Home Loans Servicing LP,* No. 2:11–cv–540, 2011 WL 3838169, at \*2 (S.D.Ohio Aug.29, 2011). Pursuant to S.D. Ohio Civ. R. 7(d) it is generally impermissible for a party to submit non-rebuttal evidence for the first time with a reply memorandum. Here, the Court does not condone the timing of Plaintiff s submissions. Moreover, the Court has already cautioned Plaintiff at least once in this action against submitting additional evidence for the first time with his reply. (*See* Order, ECF No. 56.) For these reasons, the Court will permit, and has considered, Defendant's Sur Reply.[6] (ECF No. 79–1.)

### B. Conditional Certification Standard
**\*3** Under the FLSA:

> An action to recover the liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Accordingly, "[s]ection 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006). The United States Supreme Court has held that under 29 U.S.C. § 216(b) a district court may "facilitat[e] notice to potential plaintiffs." *Hoffman–La Roche Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The decision whether to conditionally certify a class, and therefore facilitate notice, is within the discretion of the trial court. *See id.*

The United States Court of Appeals for the Sixth Circuit has implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action. *In re HCR ManorCare, Inc.,* No. 11–3866, 2011 WL 7461073, at \* 1 (6th Cir. Sept.28, 2011); *see also Swigart v. Fifth Third Bank,* 276 F.R.D. 210, 213 (S.D.Ohio 2011) (applying the two-step procedure). "First,

in what is referred to as the initial notice stage, the Court must determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Swigart,* 276 F.R.D. at 213 (internal quotations omitted). "At the second stage of the proceedings, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims." *Id.*

At the first stage, "Plaintiffs must only make a modest showing that they are similarly situated to the proposed class of employees." *Lewis v. Huntington Nat. Bank,* 789 F.Supp.2d 863, 867 (S.D.Ohio 2011). This standard is " 'fairly lenient ... [and] typically results in conditional certification.' " *Id.* at 868 (quoting *Comer,* 454 F.3d at 547); *see Lacy v. Reddy Elec. Co.,* No. 3:11–cv–52, 2011 WL 6149842, at *2 (S.D.Ohio Dec.9, 2011) ("[C]ollective actions have been certified based on no more than a couple of declarations and a deposition transcript."). During this stage, the Court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart,* 276 F.R.D. at 214.

Neither the FLSA nor the Sixth Circuit have explicitly defined the meaning of "similarly situated." *O'Brien,* 575 F.3d at 584. This Court has emphasized that at the initial notice stage, a plaintiff "[']need only show that [his] position [is] similar, not identical, to the positions held by the putative class members.' " *Lewis,* 789 F.Supp.2d at 867–68 (quoting *Pritchard v. Dent Wizard Intern. Corp.,* 210 F.R.D. 591, 595 (S.D.Ohio 2002)) (alterations in original); *see also Watson v. Surf–Frac Wellhead Equipment Co., Inc.,* No. 4:11–cv–843, 2012 WL 5185869, at *2 (E.D.Ark. Oct.18, 2012) (explaining that in misclassification cases job duties are relevant to the similarly situated inquiry because "job duties relate to whether they were correctly classified as exempt from the FLSA's overtime requirements.") (internal quotations omitted). Furthermore, "[t]he Court should consider whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis,* 789 F.Supp.2d at 868 (internal quotations omitted).

*4 The Sixth Circuit has provided that one example of an appropriate FLSA collective action is where the potential plaintiffs are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien,* 575 F.3d at 585. The Sixth Circuit has further explained that the Court should not apply a "Rule–23 type analysis" as to whether "individualized questions will predominate." *Id.*

at 585–86.

Defendant contends that because Plaintiff has received some discovery relating to class membership the Court should apply a heightened standard in considering class certification.[7] As Defendant notes, at least some district courts within this circuit have required a heightened factual showing for conditional certification when a plaintiff has received class-membership discovery. *See, e.g., Creely v. HCR ManorCare, Inc.,* 789 F.Supp.2d 819, 826–27 (N.D.Ohio 2011) (applying a "modest 'plus' factual showing" standard combining "the lenient standard with some consideration of the stage-two factors" when a plaintiff had received class-membership discovery). Even assuming that such a hybrid standard is proper under certain circumstances, the Court does not find it applicable here. Although the Court has allowed some discovery, Plaintiff maintains that he did not receive information regarding the job descriptions in question during this discovery despite his requests for identification of positions that performed similar duties. Moreover, the briefing indicates that Defendant has only provided job descriptions with regard to the positions in question. Under such circumstances, the Court will only require Plaintiff to meet the modest factual showing generally required at the conditional certification stage. *Cf. Lacy,* 2011 WL 6149842, at *3–4 (holding that any heightened conditional certification standard was inapplicable where only Defendants had received the opportunity for discovery regarding certification).

### C. Fleet Managers

The Court will first assess whether Plaintiff has satisfied its burden with regard to the fleet manager position. To support the assertion that fleet managers are similarly situated to fleet coordinators, Plaintiff offers detailed company job descriptions for fleet managers.[8] (Mot. Extend Not. Ex. 1, ECF No. 75–1.) Additionally, as noted above, Mr. Pitts, a former fleet manager for Defendant, states that he and other fleet managers worked over forty hours per week, but did not receive overtime compensation.[9] (Pitts Aff. ¶¶ 4, 6, ECF No. 77–1.)

In ultimately determining whether an employee is exempt from the FLSA the Court must focus on "the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations." *Schaefer v. Indiana Michigan Power Co.,* 358 F.3d 394, 400 (6th Cir.2004). This does not mean, however, that a company's own job descriptions are irrelevant in considering, at the initial notice stage, whether a potential putative class is similarly situated. Although there is conflicting case law

on the topic, numerous courts have recognized the probative value of company job descriptions in considering whether employees are similarly situated for the purpose of conditional certification. *See, e.g., McNelley v. ALDI, Inc.,* No. 1:09 CV 1868, 2009 WL 7630236, at *3 (N.D.Ohio Nov.17, 2009) (approving conditional class certification in part because a job description reflected that store managers performed the same basic duties); *Titchenell v. Apria Healthcare Inc.,* No. 11–563, 2012 WL 3731341, at *4–5 (E.D.Pa. Aug.29, 2012) (expanding conditional certification to additional job titles based largely on substantial overlap between job descriptions); *Ruffin v. Avis Budget Car Rental, LLC,* No. 11–01069, 2012 WL 2514841, at *3 (D.N.J. June 28, 2012) (noting, in granting conditional certification, that although the defendant maintained that shift managers performed differing duties, there was no evident variation in their job descriptions); *but see, Pickering v. Lorillard Tobacco Co., Inc.,* No. 2:10–CV–633, 2012 WL 314691, at *12 (M.D.Ala. Jan. 30, 2012) ("[A] standardized job description is insufficient to justify a nationwide collective action based upon a claim that the employer improperly classified a category of employees as exempt."); *Forney v. TTX Co.,* No. Civ.A. 05 C 6257, 2006 WL 1030194, at *3 (N.D.Ill. Apr.17, 2006) ("Whether similarly situated employees exist depends on the employees' actual qualifications and day-to-day duties, rather than their job descriptions.").

**\*5** In this case, the Court finds that Plaintiff has met his initial burden of demonstrating that fleet managers are similarly situated to Plaintiff and other fleet coordinators. First, the evidence before the Court reflects that fleet managers share a unified common theory of FLSA violation with fleet coordinators; the improper denial of overtime pay. Mr. Pitt's states that although fleet managers routinely worked over forty hours they did not receive overtime wages. The job descriptions before the Court also indicate that Defendant uniformly classified fleet managers as exempt employees. (*See* Mot. Extend Not. Ex. 1, ECF No. 75–1.)

Moreover, a comparison of job descriptions supports the notion that fleet managers and fleet coordinators are similar positions. The company job descriptions Plaintiff submits are relatively detailed, including both a general job summary as well as a list of essential job functions and qualification requirements. A comparison of the job descriptions reflects that the purposes and functions of fleet managers and coordinators are similar, if not the same. In particular, both categories of positions primarily manage and dispatch truck fleets. Perhaps most tellingly, the job description for "Fleet Manager 1" is nearly identical to the position of "Weekend Fleet Coordinator," a position included within the initial conditional certification. (*Compare* Mot. Extend Not. Ex. 1, ECF No. 75–1; *with* Opp'n Mot. Extend Not. Ex. 2, ECF No. 76–2.) Although worded somewhat differently, the description of "Fleet Manager" is also substantially similar to the "Weekend Fleet Coordinator" position. (*Compare* Mot. Extend Not. Ex. 1, ECF No. 75–1; *with* Opp'n Mot. Extend Not. Ex. 2, ECF No. 76–2.) Given these circumstances, and considering also the evidence Plaintiff submitted with his initial conditional certification motion, including multiple fleet coordinators descriptions of their duties, the Court finds that Plaintiff has made a modest factual showing that fleet managers and fleet coordinators are similarly situated.

**D. JT Coordinators and Load Planners**

Plaintiff also seeks class certification with regard to JT coordinators and load planners. As with fleet managers, Plaintiff submits job descriptions for these positions. Additionally, as detailed above, Plaintiff provides the Affidavits of Ms. Wyman, JT coordinator, and Mr Canady, a fleet manager.

The Court is not convinced, based on the evidence Plaintiff submitted, that JT coordinators and load planners are similarly situated to fleet coordinators. Like the positions of fleet coordinator and fleet manager, Plaintiff asserts that Defendants improperly classified JT coordinators and load planners as exempt from overtime pay. The current record, however, fails to show that these positions are similar enough to fleet coordinators to allow for a manageable class. Specifically, the evidence does not reflect that these positions perform the same or similar duties as fleet coordinators. Rather, the job descriptions state that the primary role of JT coordinators is to develop strategic action plans to assure on time delivery of truck loads. (Mot. Extend Not. Ex. 1, ECF No. 75–1.) In addition to developing action plans, JT coordinators monitor the pick-up and delivery of loads and perform customer service duties. (*Id.*) The main purpose of load planners is logistical planning for assigned territories, rather than the managing of specific truck fleets. (*Id.*) Load Planners also engage in communication with customers regarding freight planning. (*Id.*) Admittedly, there is some minimal overlap between the functions of the various positions in questions. Nevertheless, a fair reading of the job descriptions indicates that JT coordinators and load planners perform different roles in comparison to fleet coordinators. Accordingly, at least based on the job descriptions alone, Plaintiff has not established that employees within these positions are similarly situated.

**\*6** Moreover, the Affidavits of Ms. Wyman and Mr. Canady do not establish that JT coordinators and load

planners are similarly situated to fleet coordinators. These affiants offer, in conclusory fashion, that they performed the same or similar job duties to fleet coordinators. (Wyman Aff. ¶ 2, ECF No. 77–1; Canady Aff. ¶ 2, ECF No. 77–1.) Neither Affidavit, however, contains any detail regarding the employees' actual job duties. *See Lacy,* 2011 WL 6149842, at *4 (indicating that conclusory declaration stating that other employees were similarly situated was insufficient to support conditional certification). Additionally, given the conclusory nature of the Affidavits, the record does not disclose whether either affiant has established personal knowledge of the specific duties of fleet coordinators. Accordingly, even considering job descriptions in combination with Plaintiff's submitted Affidavits, Plaintiff has not established that the positions in question are similarly situated.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Extend Notice is **GRANTED** in part and **DENIED** in part. (ECF No. 75.) Defendant's Motion to Strike is **GRANTED** to the extent that the Court has considered the attached Sur–Reply. (ECF No. 79.) The parties are **DIRECTED** to confer and submit a revised proposed notice and notice procedure within **SEVEN (7) DAYS** of this Opinion and Order.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2012 WL 5378311

Footnotes

1    Wade also asserts state law violations of the Ohio Minimum Fair Wage Standards Act.

2    Plaintiff mailed notices to individuals within the original class definition on August 22, 2012. Accordingly, pursuant to this Court's August 17, 2012 Order, potential putative class members had until October 22, 2012 to provide Consent Forms to the Court. (*See* Order, ECF No. 71.)

3    Plaintiff maintains that during the initial class-membership discovery it requested that Defendant identify—and provide job descriptions for—all positions with similar job duties to fleet coordinator. (Mot. Extend Not. 2, ECF No. 75.) According to Plaintiff, Defendant did not reveal the employee classifications at issue in the instant Motion. (*Id.* at 5.)

4    As part of a potential compromise between the parties, Defendant apparently offered to produce information regarding JT coordinators and load planners, but refused to provide the requested information for fleet managers. (*See* Nacht Aff. ¶ 10; Opp'n Mot. Extend Not. 3 n. 1, ECF No. 76.) According to Defendant, Plaintiff refused this proposal. (Opp'n Mot. Extend Not. 3 n. 1.) Defendant emphasizes that it has not conceded that either JT coordinators or load planners perform the same duties as Plaintiff.

5    The Affidavit attached to Plaintiff's Motion to Extend Notice was unsigned. (Mot. Extend Not. Ex. 2, ECF No. 75–1.) Plaintiff explained, within the Motion, that he was in the process of obtaining a signed copy and that he intended to supplement the Affidavit. (Mot. Extend Not. 3 n. 1.) Plaintiff submitted a signed copy of Mr. Pitts' Affidavit in conjunction with his Reply. (Pitts Aff., ECF No. 77–1.)

6    Under these circumstances, the Court would be justified in striking the Affidavits of Jodi Wyman and Mark Canady. By allowing a sur-reply, however, the Court has given Defendant a chance to respond to this evidence. Cf. *Mauer v. Deloitte & Touche, LLP,* 752 F.Supp.2d 819, 824 (S.D.Ohio 2010) (permitting a sur-reply to address new evidence that a party produced after the completion of briefing). Moreover, as described further below, even considering these Affidavits, Plaintiff fails to make a modest factual showing that JT coordinators and load planners are similarly situated to fleet coordinators.

7    Defendant also implies that Plaintiff must go beyond the similarly situated requirement and demonstrate that the employees with the positions in question perform the same job duties as Plaintiff. The Court disagrees with this implication. In its August 2, 2012 Opinion and Order, this Court held that Plaintiff met his burden of showing that the potential class was similarly situated. The parties then, through joint effort, addressed a notice to fleet coordinators and other employees with the same job duties as Plaintiff. Plaintiff now seeks to expand class notice based on newly discovered information. Under these circumstances, the Court finds no reason to deviate from the similarly situated requirement that generally applies to conditional certification. Of course, similarity of job duties is a relevant factor in this analysis.

[8]   Plaintiff submitted job descriptions for the various fleet coordinator positions within his earlier Motion for Class Certification. (*See* Opp'n Mot. Extend Not. Ex. 2, ECF No. 76–2.)

[9]   Mr. Pitts also states, albeit in conclusory fashion, that he performed the same job duties as fleet coordinators. (Pitts Aff. ¶ 2, ECF No. 77–1.)

---

**End of Document**                                                         © 2018 Thomson Reuters. No claim to original U.S. Government Works.