UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOES 1, 2 and 3, individually
and on behalf of all other similarly situated,

       Plaintiffs,

v.

Civil Case No. 17-12212
Honorable Linda V. Parker

THE COLISEUM BAR & GRILL, INC.,
ABCDE OPERATING, LLC d/b/a The
Penthouse Club, M & M ZIN ENTERPRISES,
INC., JOHNI SEEMA, AND ALAN
MARKOVITZ,

       Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION (ECF NO. 38)

This lawsuit arises from the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Michigan Minimum Wage Law ("MWL"), MCL 408.382, *et seq*. Plaintiffs allege Defendants misclassified them and similarly situated workers as independent contractors to circumvent the protections of federal and state wage laws. Presently before the Court is Plaintiffs' motion for conditional certification, filed January 16, 2018. (ECF No. 38.) The motion has been fully briefed. Finding the legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral arguments pursuant to L.R. 7.1(f)(2). For the reasons that follow, this Court grants Plaintiffs' motion for conditional certification.

**I.      Factual and Procedural Background**

Plaintiffs are current or former exotic dancers who have worked at Defendants the Coliseum Bar and Grill, Inc. (the "Coliseum") or ABCD Operating, LLC d/b/a the Penthouse Club (the "Penthouse") (collectively "the Clubs") in the last three years.  (ECF No. 38 at Pg ID 403.)  According to Plaintiffs, Defendants Johni Seema, Alan Markovitz, and M&M Zin Enterprises, Inc. ("M & M") own and operate the Clubs and employ over 700 employees.  (*Id.* at Pg ID 402.)  Defendants classified them and the putative class members as independent contractors, despite having no control over their employment.  Defendants control the amounts of payments required for each shift, the amounts and types of penalties assessed during each shift, the lengths and times of the shifts, the times required to perform, the minimum tip for private dances, and the format of performances.  (*Id.* at Pg ID 403.)  Plaintiffs allege that Defendants misclassified them and other similarly situated employees, including bartenders, shot girls, bouncers, and DJs, as independent contractors.  (*Id.*)

According to Plaintiffs, customers' tips and the split tips were the only sources of income.  (*Id.* at Pg ID 404.)  Plaintiffs allege that many employees were not paid minimum wage or for all of the hours worked and required to split customers' tips with non-tipped employees.  (*Id.*)  Further, Defendants demanded all gratuities and even retained portions, as well as unlawfully deducted rents, fines

and penalties, referred to as "tip-outs." (*Id.* at Pg ID 401.) The tip-outs were mandatory and included: a house fee minimum of $25.00 per shift; a VIP fee minimum of $50.00 per shift; a house mom fee of $10 per shift; and a valet fee of $7.00 per shift. Defendants also assessed penalties and fines when employees were late, missed or rescheduled dances, and when weight or physical appearance were not in conformance with the Clubs' policy. (ECF No. 45 at Pg ID 405.) Defendants also assessed penalties for chewing gum, talking, or using a cell phone. (*Id.*) The fines and penalties were final and could not be challenged. (*Id.*) Finally, Plaintiffs contend that although the employees worked at different locations and times, the unlawful pay practices and systems of payment were consistent throughout the shifts and the Clubs.

On July 16, 2017, Plaintiffs filed this lawsuit against the Clubs and Markovitz. (ECF No.1.) Plaintiffs later amended their complaint on August 28, 2017 to add Defendants M &M and Seema. (ECF No. 16.) On September 18, 2017, Defendants filed a motion to dismiss based upon an alleged mandatory arbitration agreement that each dancer was required to sign before working at the Clubs. (ECF No. 23.) Plaintiffs filed a response on October 9, 2017, claiming the arbitration agreement was invalid because it contained an invalid collective action waiver. On May 31, 2018, Defendants filed a request for an immediate hearing on the motion to dismiss in light of the United States Supreme Court's decision in

*Epic Sys. Corp. v. Lewis*, No. 16-285, 2018 WL 2292444 (U.S. May 21, 2018). (ECF No. 59.) This Court held a hearing on the motion to dismiss on June 20, 2018 and denied the motion without prejudice. Presently before the Court is Plaintiffs motion for conditional certification, filed January 16, 2018. (ECF No. 38.) The motion has been fully briefed. In the motion, Plaintiffs seek to represent the following workers in this action:

> All exotic dancers, shot girls, bouncers, DJs and any other individuals who worked for Defendants and were misclassified by Defendants as independent contractors at any time in the past three years.

## II. Applicable Law

The FLSA requires all qualifying employers to pay employees no less than the minimum wage and to compensate employees for hours worked in excess of forty per workweek at a rate not less than one-and-a-half times the regular rate of pay. 29 U.S.C. §§ 206(a)(1), 207(a)(1). The statute authorizes collective actions to recover damages for unpaid wages provided two conditions are satisfied: (1) the employees are "similarly situated" and (2) all plaintiffs provide written consent to becoming a party and such consent is filed with the court. 29 U.S.C. § 216(b). "This section provides a mechanism that is 'something akin to a class action.'" *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316, 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2006) (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 386

4

(W.D.N.Y. 2005)). Nevertheless, there are differences between a FLSA collective action and a class action certified under Federal Rule of Civil Procedure 23:

> (1) the collective action binds only potential plaintiffs who "opt-in," whereas Rule 23 requires class members to opt-out, if they wish not to be included; and (2) FLSA only requires employees be "similarly situated," whereas Rule 23 requirements are more detailed. *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318, at *4 (S.D.N.Y. Apr. 24, 2006).

*Torres*, 2006 WL 2819730, at *7.

Courts within the Sixth Circuit and in other Circuits generally apply a two-step procedure for determining whether a FLSA case should proceed as a collective action. *See, e.g., Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015); *Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 561 (M.D. Tenn. 2014); *see also Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006) (describing the two-step process). At the initial stage, the Court applies a fairly lenient standard because it has minimal evidence. *Olivio v. GMAC Mortgage Co.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. April 1, 2004).

At the first stage, commonly referred to as the notice stage or conditional certification, "the plaintiff must only 'make a modest factual showing' that [the plaintiff] is similarly situated to the other employees he [or she] is seeking to notify." *Waggoner*, 110 F. Supp. 2d at 764 (quoting *Comer*, 454 F.3d at 546-47.) The plaintiff is required to show only that his or her position is similar, not

identical to the other employees. *See Heibel v. U.S. Bank, N.A.*, No. 2:11-cv-00593, 2012 U.S. Dist. LEXIS, at * 11 (S.D. Ohio Sept. 27, 2012). Although, neither FLSA nor the Sixth Circuit has defined "similarly situated," the court will generally find Plaintiffs may be similarly situated where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009); *see also Olivio*, 374 F. Supp. 2d at 548 (Plaintiffs must show "they and potential plaintiffs together were victims of a common policy or plan that violated the law."). However, showing a "'unified policy' of violations is not required." *O'Brien*, 575 F.3d at 584.

This "'certification is conditional and by no means final.'" *Comer*, 454 F.3d at 546 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). Finally, at this stage of the litigation, the court does not consider the merits, evaluate credibility, or resolve factual disputes. *See Heibel*, 2012 U.S. Dist. LEXIS 139510, at *8.

At the second stage, the court "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. The court's focus is on whether the individuals who have opted into the litigation are similarly situated. *See Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d

279, 297, (S.D.N.Y. 2015). The court may decertify the class if it determines at the second step that the plaintiffs are not similarly situated.

### III. Analysis

### A. Conditional Certification

Plaintiffs request a collective action class defined as:

> All exotic dancers, shot girls, bouncers, DJs and any other individuals who worked for Defendants and were misclassified by Defendants as independent contractors at any time in the past three years.

(ECF No. 38 at Pg ID 402.) Plaintiffs refer the Court to the three factors from *O'Brien* to assist in evaluating whether Plaintiffs are similarly situated to the potential class members: (1) factual and employment settings of individual Plaintiffs; (2) different defenses Plaintiffs could be subject to on an individual bases; and (3) degree of fairness and procedural impact of certifying the action. *See O'Brien*, 575 F.3d at 584.

Plaintiffs allege that all of the Plaintiffs and potential class members are exotic dancers, shot girls, bouncers, DJs, and any other individual who worked for the Clubs within the last three years. According to Plaintiffs, they all suffered from Defendants' uniform policy of not paying wages to their employees. However, Defendants contend that the putative class members are not similarly situated to Plaintiffs. Specifically, Defendants argue that "any other employee" is vague, and the work hours, locations, and duties of bouncers, waitresses, and shot

7

girls are vastly different from exotic dancers. (ECF No. 49 at Pg ID 857.) Alternatively, Defendants request that the Court allow limited discovery on whether the putative class members are similarly situated.

In their reply, Plaintiffs maintain that they are only required to make a "modest factual showing" that the putative class members are similarly situated to Plaintiffs, not identical. (ECF No. 55 at Pg ID 985.) Contrary to Defendants' position, Plaintiffs argue that there is no requirement that all putative class members hold the same job title, perform the same duties, and work the same hours. *See Wlotkowski v. Mich. Bell*, 267 F.R.D. 213, 219 (E.D. Mich. 2010); *see also Comer*, 454 F.3d at 547. Rather, all Plaintiffs must show is that the members suffered from a single, FLSA violation, which, in this case, is Defendants' failure to pay wages. Finally, Plaintiffs contend that discovery is not necessary because Defendants have not identified a sufficient reason to engage in discovery.

Plaintiffs provide declarations from Plaintiffs and a number of opt-in Plaintiffs attesting to Defendants' policy of not paying wages. (*See generally* ECF Nos. 38-2–38-10 & 55-1.) The declarations are from former and current exotic dancers, a shot girl/waitress, and a DJ. Each declarant worked at the Clubs at various times spanning from 2007 through 2017, working 7 to 8 hour shifts, three or more times a week. (*Id.*) All of the dancers, including a former waitress and shot girl were required to check out with the DJ at the end of their shift or at

8

closing to pay tip-outs. (*Id.*) The DJ also stated that he was required to tip-out. (ECF No. 55-1 at Pg ID 998.) Defendants argue that the alleged tip-outs are specific to the dancers and undermine any showing that Plaintiffs are similarly situated to other employees. Although the dancers were specific about how their tip-outs were allocated, the allocation of the tip-outs are irrelevant to determining if Plaintiffs are similarly situated to the class members. Relevant to the Court's inquiry is that the class members were subject to Defendants' policy of not paying wages, which, at this time, appears consistent among the workers. Defendants are correct that the tip-out descriptions are dancer specific. However, a full-time DJ and former dancer/shot girl/waitress also attested to being subject to tip-outs and no wages. Therefore, for purposes of conditional certification, the Court finds that Plaintiffs are similarly situated to the putative class members.

**B.     Class Notice**

Defendants argue that the class is overly broad because it includes vague language such as "other individuals"; workers do not hold the same position or perform the same function; there is no indication as to where the putative plaintiffs worked; and the term "misclassify" implies Defendant engaged in wrongful conduct. (ECF No. 49 at Pg ID 866.) Defendants also object to Plaintiffs' proposed notice, which includes a reference to "tow truck operators"; it fails to include that employers who signed an arbitration agreement would be compelled to

arbitrate their claims in an individualized proceeding; and it fails to include language that if Defendants prevail, Plaintiffs would be responsible for Defendants' attorneys' fees if they acted in bad faith. (*Id.* at Pg ID 867-68.)

In response, Plaintiffs agree to replace the reference to "other individuals" with "bouncers" and to replace "misclassified" with "classified." (ECF No. 55 at Pg ID 988.) Additionally, Plaintiffs agree to identify the specific clubs. (*Id.*) Finally, Plaintiffs agree that the reference to tow truck operators is a typographical error that will be corrected. (*Id.*) However, Plaintiffs argue that including language referencing any arbitration agreement would be confusing and is a legal defense that must be litigated. (*Id.*) Likewise, Plaintiffs argue that including language that if Defendants prevail, Plaintiffs would be responsible for attorneys' fees if Plaintiffs acted in bad faith could deter potential class members from opting into the litigation. (*Id.* at Pg ID 989.)

The Court declines to include language referencing attorneys' fees and the arbitration agreement. Through discovery, it will become clear who is subject to the arbitration agreement, and those who are will not be permitted to participate in this litigation. As to the attorneys' fees, FLSA does not mandate that employees pay attorneys' fees to the prevailing party if the employees acted in bad faith. *See* 29 U.S.C. § 216(b); *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 U.S. Dist.

10

LEXIS 61381, at * 17 (E.D. Mich. May 2, 2012). As such, the Court will not require the class notice to include the language Defendants suggest.

As to the replacement of "other individuals," Plaintiffs' replacement suggest that the proposed class would be "All exotic dancers, shot girls, bouncers, DJs and any other bouncers." The Court disagrees that "other individuals" is too broad, but the Court does find that the overall description of the class is overly broad. The notice should specifically identify the conduct that makes Plaintiffs similarly situated to the potential class members. Only those who were subject to Defendants' unlawful pay practices of failing to pay wages will be allowed to participate in the litigation.

## IV. Conclusion

Accordingly, for the reasons stated above, the motion is granted

**IT IS ORDERED** that Plaintiffs' motion (ECF No. 38) is **GRANTED**; and

**IT IS FURTHER ORDERED** that the Court conditionally certifies this action as a collective action on behalf of:

> All exotic dancers, shot girls, bouncers, DJs and any other individuals who worked at the Penthouse or the Coliseum Bar and Grill, who were not paid minimum or overtime wages and were classified by Defendants as independent contractors at any time in the past three years.

**IT IS FURTHER ORDERED** that the Court approves Plaintiffs' proposed notice, with the modifications as discussed above, and consent forms to be sent *via* U.S. Mail and e-mail; and

**IT IS FURTHER ORDERED** that the Court appoints Pitt, McGehee, Palmer, and Rivers, P.C. and Fagan McManus, P.C. as class counsel; and

**IT IS FURTHER ORDERED** that Defendants are to serve the Claims Administrator with a computer-readable and exportable data file containing the full name, last known address, last known telephone number, employee ID number and last known e-mail of all putative class members identified above within thirty (30) days from the date of the entry of this Order; and

**IT IS FURTHER ORDERED** that the Court authorizes the Claims Administrator to promptly disseminate the approved notice and consent form to all Collective Group Members pursuant to the "opt-in" mechanism for collection class actions authorized by the Fair Labor Standards Act, 29 U.S.C. § 216(b); and

**IT IS FURTHER ORDERED** that the Court requires the Claims Administrator to file all opt-in consent forms they receive within ninety (90) days of sending the court-approved notice; and

**IT IS FURTHER ORDERED** that this Court is requiring Defendants to refrain from communication with the Collective Group Members concerning this

lawsuit or the underlying issues.

**IT IS SO ORDERED.**

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: July 16, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 16, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager